IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ABDUL HAMID ABDUL SALAM AL-GHIZZAWI )<br>    Detainee, )<br>    Guantanamo Bay Naval Station )<br>    Guantanamo Bay, Cuba; )<br>     )<br>     )<br>    *Petitioner*, )<br>     )<br>     )<br>     )<br>     )<br>     )<br>v.      )<br>     )<br>     )<br>     )<br>GEORGE W. BUSH, et. al. ) | **Emergency Motion for**<br>**Entry of the Protective**<br>**Order, Sanctions and**<br>**Other Relief**<br>(Expedited consideration<br>requested)<br>No.  05 cv  2378 |

**EMERGENCY MOTION FOR ENTRY OF THE PROTECTIVE ORDER,
SANCTIONS AND OTHER RELIEF TO RENDER ACCESS TO CLIENT
MEANINGFUL**

    Now comes Abdul Hamid Abdul Salam Al-Ghizzawi, (hereinafter Al-Ghizzawi) by and through his counsel, and asks this Court to grant Petitioners Emergency Motion for Entry of the Protective Order, Sanctions for the contumacious conduct of the Department of Justice (pursuant to this Court's inherent power) and other relief, as described herein:

**I. The Government's Refusal to Stipulate to the Entry of the Protective Order**:

1. On December 12, 2005, Counsel filed a Petition for Habeas Corpus on behalf of Mr. Al-Ghizzawi pursuant to a written request from another Detainee who stated that Mr. Al-Ghizzawi requested an attorney and was willing to sign a document regarding the representation. Counsel filed a motion seeking to amend that petition on February 24, 2006 after receiving a direct request signed by her client urgently seeking representation. As shown by the document, Mr. Al-Ghizzawi has been at Guantanamo for more than four years, during which time he claims his health has become very poor and continues to deteriorate each day. Mr. Al-Ghizzawi is also

1

    very concerned about his family and about the fact that, as a Libyan, he could be sent back to a country that he knows will persecute him. (Ex. A)

2. Petitioner, Al-Ghizzawi, has been *desperately* seeking counsel's assistance for more than one year. Many of the attorneys that have gone to Guantanamo have reported back to the Center for Constitutional Rights (CCR) of the anxious cry for an attorney from Mr. Al-Ghizzawi. (Ex. B)

3. Although Counsel now represents Mr. Al-Ghizzawi, she has not been allowed to communicate with him in any manner and has no information about the reasons for his detention, his health problems, nor has she been able to receive any information about the whereabouts of his family.

4. In preparation for a trip to Guantánamo, Counsel sent an email on January 30, 2006 to DOJ attorney Andrew Warden asking to have the Protective Order entered. DOJ attorney Warden responded to the email on February 1, 2006 stating that they would not consent to the entry of the Protective Order "in light of the Detainee Treatment Act of 2005". On February 1, 2006, Counsel for Petitioner sought clarification regarding the government's position on the Protective Order. In response, DOJ attorney Warden stated that while the Protective Order was governing counsels' access to Guantánamo they would oppose any motion seeking to enter the Protective Order in my case. Mr. Warden also claimed that Counsel could not arrange a visit to the base without the Protective Order in place, despite the fact that visits by other counsel are continuing every day under that same Protective Order. (Ex. C)

5. Although Counsel for Petitioner has still not had her security clearance finalized, as explained in Ex. B, attorneys at CCR who are *of counsel* in this proceeding have a trip to Guantánamo scheduled beginning March 8, 2006. As those counsel have security clearances, they would be able to visit with Petitioner if the Protective Order were entered. Counsel for Petitioner would like her client to know that he does have counsel fighting on his behalf and she would like to learn details about his physical and mental health, the facts surrounding his detention and other matters. This meeting cannot take place without entry of the Protective Order

**The Government's Refusal to Tender CSRT Documents to Counsel:**

6. On February 2, 2006, Counsel for Petitioner received an email from the U.S. Navy announcing that counsel could provide input regarding their clients for the review and consideration of the Administrative Review Board no later than February 24, 2006 for use in the 2006 ARB

determinations. This procedure is especially important because the ARB only meets one time per year regarding each detainee. The email went on to state *"The Privilege Review Team must receive your submission no later than 24 February 2006; OARDEC cannot guarantee that materials received after that date will be included in the ARB hearings."* (Ex. D)

7. Immediately after receiving the Navy's email, Counsel for Petitioner sent an email to DOJ attorney Warden asking for all of her client's CSRT (Combat Status Review Tribunal) documents on an expedited basis so that she could respond in a timely manner to the request. The information contained in the CSRT is of the highest importance in attempting to provide representation for Petitioner. DOJ Attorney Warden responded to Counsel's request, stating that the DOJ would not agree to provide Petitioner's CSRT documents for use in the ARB proceeding, and he claimed that the government has consistently opposed motions for production of the CSRT records because of the stay of proceedings and "the burdens" associated with the production. (Ex. E)

8. On February 23, 2006, one day before the ARB submission was due, Counsel for Petitioner learned that the Government had decided not to appeal Judge Rakoff's Order in *Associated Press v. Department of Defense* (05-3941 (SDNY)), in which that Court had ordered *unredacted* CSRT's be provided to the Associated Press. Immediately upon learning of the Government's position, Counsel for Petitioner sent an email to DOJ Attorney Warden renewing her request for the immediate turnover of the CSRT documents for her client. Counsel sought the immediate production of the CSRT so that she could provide a substantive response to the ARB rather than asking for more time based on the fact that she had no information regarding her client. Attorney Warden responded to that email by stating that, although it was true that the Government had in fact decided not to appeal Judge Rakoff's Order, nevertheless, the DOJ was not in a position to supply CSRT records "*in the Context of this Litigation.*" In other words, the Government was willing to provide unredacted CSRT's to the Associated Press, making the information readily available to the public, but refused to provide that same information to Counsel for Petitioner's counsel who had an immediate need for the information. (Ex. F, *emphasis added*)

9. As Counsel for Petitioner has never been allowed to communicate with her client and has no information from the Government regarding the

accusations, if any, against her client[1], Counsel was forced to file a response to the ARB on February 23, 2006 seeking additional time to respond and demanding that she be allowed to supplement the submission after she has had the opportunity to confer with her client and to review any and all documents in the Government's possession which relate to her client. (Ex. G)

10. Counsel for Petitioner would like this Court to immediately order the DOJ to turn over all of the CSRT documents regarding Petitioner to Counsel, and to sanction the Government for their conduct in refusing to tender documents "in the context of this litigation," while at the same time agreeing to provide *these same* materials to the Associated Press. This contumacious conduct can only be perceived as stonewalling of the worst kind, and has resulted in an unknown delay and damage to the Petitioner's hearing before the ARB.

11. The conduct of the Respondents in refusing to stipulate to the entry of the Protective Order, in refusing to turn over documents necessary for Petitioner to respond to Government inquiries, and then refusing to tender documents to Petitioner's Counsel while at the same time agreeing to provide those documents to the Associated Press, are blatant attempts by the Government not only to stonewall in these proceedings, but also to interfere with and undermine the attorney client relationship between Counsel and Petitioner. As the court held in *Lipsig v. National Student Marketing Corps.*, 663 F2d 178, 182 (D.C. Cir. 1980), "Advocacy simply for the sake of burdening an opponent with unnecessary expenditures of time and effort clearly warrants recompense for the extra outlays attributable thereto."

WHEREFORE Petitioner ask this Court to enter the Protective Order in this case, to order Respondent to produce to Counsel in Chicago, Illinois the complete CSRT documents, to sanction the Respondent for its blatantly obstructive tactics, and to grant any further relief this Court seems just and proper.

Respectfully Submitted,

s/ H. Candace Gorman
Counsel for Petitioner

H. Candace Gorman (IL Bar #6184278)

---

[1] Counsel has reviewed the 3000 plus pages of *redacted* CSRT's but is unable to tell from those documents which detainee is her client as all personal information is deleted.

Elizabeth Popolis  (IL Bar #6285095)
Law Office of H. Candace Gorman
542 S. Dearborn  Suite 1060
Chicago, IL 60605
Tel:  (312) 427-2313

5