# EXHIBIT A

DO NOT WRITE BEYOND HEAVY LINES

ABDUL HAMID ABDUL SALAAM AL GHAZZAWI

ISN 654    LIBYAN

Completed a form allowing you to represent him. The form was from you via Jamal (RICHARD B.........) Unfortunately he has not received any correspondence from u till now.

He is in desperate need of a lawyer like u. Because; i) It is the right of evil detainees.

ii) He's already spent 4 yrs without legal representation.

iii) He is of a libyan nationality whose government is reknown for political persecution.

iv) He is in very poor health, which deteriorates day after day (Details to be discussed with u in person)

should be not be detained in such poor health.

(V) He has a family that is in desperate need of him

(VI) Would like to thank you fo all your effort to restore our rights.

Awaits & Hopes for a reply as soon as possible.

Signed: _____

ABDUL HAMID ABDUL SALAAM

/10/05

I JAMAL ABDULLAH KIYEMBA have translated and written this statement which I heard directly from ABDUL HAMID. This statement is his direct request for a lawyer.

Kiyemba

13/12/05

Reverse of DA FORM 2667-R, May 82

FOUO 1/06/06

# EXHIBIT
# B

February 23, 2006


Administrative Review Board
c/o Privilege Review Team-REF-ARB Submissions
U. S. Department of Justice
Litigation Security Section
20 Massachusetts Ave., NW, Suite 5300
Washington DC 20530


### ARB hearing for Abdul Hamid Abdul Salam Al- Ghizzawi. ISN # 654


DEAR MEMBERS OF THE BOARD:

I submit this letter in response to an email I received on February 2, 2006 from Teresa A. McPalmer of the US Navy (attached as Ex. A). That email informed me of the "opportunity" to provide input regarding my client within three weeks. My client has been held in detention for more than four years and it is fundamentally unfair to provide counsel with a mere three weeks to provide input that could possibly be important in securing an innocent man's release.

Let me start out by stating that I have not yet been allowed to meet with my client or communicate with him in any manner, nor have I received any information from the government as to the reasons why my client has been held these four plus years. Without knowing the reasons for Mr. Al-Ghizzawi's detention, it is impossible to address those reasons or the factual basis for continuing to detain him. When I have the opportunity to see my client and learn of the reasons (or more likely the lack thereof) for his detention I will supplement this submission and I expect that the supplement will be reviewed in a timely manner and Mr. Al-Ghizzawi will be released (unless, that is, he is released sooner).

**PERSONAL INFORMATION**
The only personal information I have regarding Mr. Al-Ghizzawi (other than his name and ISN number) is that he is a native of Libya, he has been held for more than four years, he desperately wants an attorney to consult with, he is in poor health and his health is worsening and that he has a family that needs him. (Ex. B)  It is also clear from Ex. B that Mr. Al-Ghizzawi does not want to be sent back to Libya.

**PROCEDURAL BACKGROUND**

On December 12th , 2005 the District Court received the Habeas Petition I filed on behalf of Mr. Al-Ghizzawi and on January 20th, 2006 I submitted the paperwork for my security clearance. On January 30th, I contacted Mr. Andrew Warden, at the *Department of Justice* by email, regarding the entry of the Protective Order that was entered in the other Guantánamo cases. The protective order allows us access to our clients and classified information subject to certain restrictions and procedures. I wanted to be prepared to go to Guantánamo and visit with my client as soon as the security clearance was completed. I was informed by Mr. Warden in a responsive email that the *Department of Justice* will no longer consent to the entry of the protective order "in light of the Detainee Treatment Act of 2005" (he did not offer an explanation as to what the Detainee Treatment Act of 2005 had to do with the protective order). (Ex. C) Upon further inquiry, Mr. Warden stated that I could not begin the process of arranging a visit with my client until the protective order is entered and that the government would oppose any motion to have the protective order entered. (Ex. D)

On February 2, 2006, after I received the email from the U.S. Navy requiring submissions no later than February 24th, 2006, (Ex. A) I again emailed Mr. Warden and requested the CSRT for my client on an expedited basis so that I would at least have some information regarding my client to submit in response to the Navy's request. Mr. Warden refused my request, stating that I didn't need that information for this process and anyway it was too burdensome for the *Department of Justice* to photocopy the document. (Ex. E) The fact that the *Department of Justice* thinks it is too burdensome to explain why someone is being held in indefinite detention will be left for another day, but to claim it is too burdensome to photocopy a small document that is readily available to the government is complete nonsense.

To date, I have not obtained any record of the Combatant Status Review Tribunal for my client. I can tell you however, that I have reviewed the public version of the Tribunals (which was obtained by the Associated Press under FOIA) and the "process" that was afforded my client and the other detainees in those tribunals is abhorrent. In many of the hearings there was not even an attempt to clarify dates (and dates of course were crucial in many of the instances) because no one was available to translate the Gregorian calendar from the Arabic calendar. The CSRT's show the great injustice that was done in the sweeps that landed these men in Guantánamo. Examples include, the illiterate goat farmer who was picked up while he was trying to apprehend one of his wayward goats, an amputee who had been in various hospitals for the several months before his arrest trying to get a leg that fit and a medical student who was trying to get his religious studies completed cheaply and quickly so he could move on with his studies. It was clear from those proceedings that many of the detainees were picked up for a bounty and were not on any "battlefield" (unless we are declaring the entire Middle East a battlefield). It was also clear that there were no reliable witnesses who saw the individual detainees do anything against our country or our interests, and the witnesses that the detainees sought, attempting to prove their innocence, were most

often not available.  Couple that with the torture and inhumane conditions that my client and the other detainees have been, and continue to be, subjected and you find what we here in Chicago call "justice, Texas style".


**DUE PROCESS FAILURES**

While I understand that the ARB hearings are not designed to revisit "enemy combatant" determinations, the procedures used in the CSRT process clearly failed to provide even the most basic elements of due process of law.  This fact was reiterated by the United Nations in its recent report on the "Situation of Detainees at Guantánamo Bay" (February 15, 2006).

To the extent that this Board relies on any information not made available to me as counsel for Mr. Al-Ghizzawi, such as the CSRT record or any other proceedings, I demand that this information be made available to me immediately. The use of "secret" information to justify my client's ongoing detention follows the worst traditions in the gulags of the former soviet regime and the totalitarian regimes from which we had so proudly distinguished ourselves until so very recently.


**CONCLUSION**

The detainment of Mr. Al-Ghizzawi at Guantanamo Bay Cuba has been a grave injustice.  The most basic of human liberties, physical freedom, has been denied my client for over four years.  Having read most of the public CSRT's, it is clear that Mr. Al-Ghizzawi and the other detainees pose no harm or threat to the United States, its people or its allies and it is impossible for the detainees to have any intelligence value for the United States. Mr. Al-Ghizzawi should be released immediately.

As Counsel for Mr. Al-Ghizzawi, I have not been provided a meaningful opportunity to consult on the ARB submission or to rebut factual and legal assertions and conclusions with which my client would most certainly fundamentally disagree. On behalf of Mr. Al-Ghizzawi, I reserve the opportunity to respond in full after obtaining all information in the government's possession regarding my client and the accusations against him, I also reserve all rights to challenge the legality and adequacy of the CSRT and ARB procedures under U.S. law and International law.

I look forward to your response.

Very Truly Yours,


H. Candace Gorman


/Enclosures