UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ABDUL HAMID ABDUL SALAM
AL-GHIZZAWI,

    Petitioner,

    v.

GEORGE W. BUSH, et al.,

    Respondents.

Civil Action No. 05-2378 (JDB)

## MEMORANDUM OPINION & ORDER

Abdul Hamid Abdul Salam Al-Ghizzawi, a citizen of Libya who is detained by the United States at the United States Naval Station in Guantanamo Bay, Cuba ("Guantanamo") and who has challenged the legality of his confinement by a petition for a writ of habeas corpus, has requested, through counsel, an order compelling respondents to provide him with a "factual return" detailing the basis for his confinement. The Court has held this motion in abeyance for more than five months, in anticipation of rulings by higher courts relating to whether detention of the Guantanamo detainees violates any source of law and whether recent legislation divested this Court of jurisdiction to entertain habeas actions such as Al-Ghizzawi's. See Detainee Treatment Act of 2005 ("DTA"), Pub. L. No. 109-148, § 1005(e), 119 Stat. 2680, 2742 (providing that "no court, justice, or judge shall have jurisdiction to hear or consider ... an application for a writ of habeas corpus filed by or on behalf of an alien detained by the Department of Defense at Guantanamo Bay, Cuba" and vesting in the United States Court of Appeals for the District of Columbia Circuit "exclusive jurisdiction to determine the validity of any final decision of a

-1-

Combatant Status Review Tribunal [('CSRT')] that an alien is properly detained as an enemy combatant").

Although the Supreme Court recently held that the DTA's *jurisdiction-stripping* provision does not apply to habeas cases, such as this one, that were "pending on the date of the DTA's enactment," Hamdan v. Rumsfeld, 126 S. Ct. 2749, 2769 n.15 (2006), it left unresolved the question whether the DTA's *jurisdiction-vesting* provisions might nonetheless limit this Court's power over pending habeas cases, see id. at n.14 ("There may be habeas cases that were pending in the lower courts at the time the DTA was enacted that ... qualify as challenges to 'final decision[s]' within the meaning of subsection (e)[] .... We express no view about whether the DTA would require transfer of such an action to the District of Columbia Circuit.").[1] Respondents have taken the position that the "exclusive jurisdiction" of the D.C. Circuit under the DTA precludes this Court from taking any action with respect to petitioner's motions, and they have urged the Court to defer ruling on such motions until the D.C. Circuit determines the extent of its (and hence this Court's) jurisdiction over claims brought by Guantanamo detainees.

The Court is keenly aware that, as a court of limited jurisdiction, it may not adjudicate cases or controversies unless it has assured itself of its authority to do so -- and, in keeping with that fundamental principle, the Court has steadfastly refrained from taking substantive action in these cases while threshold issues such as jurisdiction have been pending in the related appeals. But the present situation also calls to mind the admonition of Voltaire that "[t]he best is the enemy of the good." See Nat'l Ass'n of Regulatory Utility Comm'rs v. FCC, 737 F.2d 1095, 1147

---

[1] Indeed, the D.C. Circuit panel before which the appeals are pending recently ordered supplemental briefing on this jurisdictional issue.

(D.C. Cir. 1984) (quoting <u>Dictionnaire Philosophique</u> (Dramatic Art) (1794) ("Le mieux est l'ennemi du bien.")).  Because the Court has concluded that the outcome sought by petitioner through the present motion would ultimately be achieved regardless of the disposition of the jurisdictional question, and because this motion does not approach the merits of petitioner's challenge to the legality of his detention, the Court will rule on the motion without resolving respondents' jurisdictional challenge.  To do otherwise could unnecessarily prejudice petitioner's ability to timely and meaningfully communicate with counsel and advance his claims, given the logistical difficulties and limitations associated with attorney-client communications in this unique detention setting.

  The Court has previously considered -- and granted -- motions by other Guantanamo detainees who sought production of their factual returns (which respondents describe as the records of petitioners' proceedings before the CSRT), and the Court will resolve this motion in a manner consistent with its prior rulings.  Because "the factual return[] appear[s] necessary for ... counsel effectively to represent petitioner[]" and "even initial conversations [between counsel and client] may be very difficult without access to that basic factual information," <u>Al-Anazi v. Bush</u>, 370 F. Supp. 2d 188, 200 (D.D.C. 2005), the Court will require respondents to produce the factual return to petitioner's counsel -- consistent with any applicable conditions imposed by this Court's protective orders -- within sixty days.  In ordering production of the factual return, the Court takes note of the fact that, even if respondents' interpretation of the DTA's exclusive jurisdiction provision is correct, petitioner would be entitled to a review by the D.C. Circuit of "the status determination of the Combatant Status Review Tribunal," <u>see</u> Pub. L. No. 109-148, § 1005(e)(2)(C)(i), 119 Stat. 2680, 2742, and completion of any such judicial review would

necessitate that petitioner's counsel have access to the CSRT records.  Indeed, respondents have indicated that they "do not anticipate objecting to production of petitioners' CSRT records for review in Court of Appeals' proceedings pursuant to section 1005(e)(2)."  Resp'ts' Resp. to Court's Aug. 3, 2006, Order at 2.[2]  Furthermore, it is possible that resolution of the jurisdictional question would require fact-finding -- that is, a determination whether this habeas petition is, in actuality, a challenge to "the validity of any final decision of a Combatant Status Review Tribunal," within the meaning of the DTA, and thus properly within the exclusive jurisdiction of the D.C. Circuit.  If such fact-finding were necessary, production of the factual return to petitioner's counsel might similarly be imperative.  Hence, the Court can see no compelling reason to further delay production of this essential information to petitioner's counsel, beyond providing respondents with sufficient time to conduct a "review of information in the return[] ... to ensure that any information disclosed to counsel is in accordance with all applicable statutes, regulations and Executive Orders."  See Resp'ts' Status Report in Resp. to Court's July 19, 2006, Minute Order at 6.

    Accordingly, it is this 9th day of August, 2006, hereby

    **ORDERED** that [5] petitioner's motion to compel production of the government's factual return is **GRANTED IN PART** and **DENIED IN PART**;[3] and it is further

    **ORDERED** that respondents shall transmit factual returns to the Court and petitioner's counsel within sixty (60) days of the date of this order -- that is, by not later than October 9,

---

[2] In other words, respondents have no non-jurisdictional basis for opposing production of the factual return.

[3] Insofar as petitioner's motion also seeks entry of protective orders, the motion is denied as moot in light of this Court's Order of June 13, 2006.

2006.

/s/ John D. Bates<br>
JOHN D. BATES<br>
United States District Judge

Copies to:

H. Candace Gorman
LAW OFFICE OF H. CANDACE GORMAN
542 South Dearborn, Suite 1060
Chicago, IL  60605
Email: hcgorman@igc.org

*Counsel for petitioner Al-Ghizzawi*


Terry Marcus Henry
UNITED STATES DEPARTMENT OF JUSTICE
P.O. Box 883
20 Massachusetts Avenue, NW, Suite 7144
Washington, DC  20044
Email: terry.henry@usdoj.gov

*Counsel for respondents*