# EXHIBIT 3

**HOOD DECLARATION**

## DECLARATION OF MG JAY W. HOOD

Pursuant to 28 U.S.C. § 1746, I, JAY W. HOOD, hereby declare under penalty of perjury under the laws of the United States that to the best of my knowledge, information, and belief, the following is true, accurate, and correct:

1. I am a Major General in the United States Army, with 30 years of active duty service. I currently serve as Commander, Joint Task Force-Guantanamo, Guantanamo Bay, Cuba (JTF-GTMO). I have served in that position since March 2004. JTF-GTMO conducts detention and interrogation operations in support of the Global War on Terrorism, coordinates and implements detainee screening operations and supports law enforcement and war crimes investigations. Our detention mission is conducted in a humane manner that protects the security of both detainees and JTF personnel at GTMO. In my capacity as Commander, I am responsible for all aspects of detainee operations at Guantanamo Bay, Cuba to include medical care and I oversee the operation of the detention hospital that provides medical care to the detainees being held at Guantanamo. Currently, there are in excess of 500 detainees being held at Guantanamo Bay, Cuba.

2. Consistent with Department of Defense policy the JTF will prevent unnecessary loss of life of detainees through standard medical intervention, including involuntary medical intervention when necessary to overcome a detainee's desire to commit suicide, using means that are clinically appropriate. Although the principles of autonomy and consent for medical treatment are well established in medical care and are applicable to detainees, there are also clearly recognized exceptions in areas such as communicable disease treatment, occupational health, and

1

prison medical care, especially to prevent unnecessary loss of life.

3. The U.S. Department of Justice regulations for the Bureau of Prisons (Title 28 of the Code of Federal Regulations, Section 549.65) establishes explicit procedures for involuntary feeding of prison inmates engaged in hunger strikes when necessary to prevent an imminent threat of death or permanent impairment. That program was used as the model for Department of Defense detainee program operations in this area discussed in this declaration.

4. In keeping with the above guidance, it is JTF-GTMO's standard operating procedure (as approved by the Deputy Assistant Secretary of Defense – Detainee Affairs and the Assistant Secretary of Defense – Health Affairs) to avert death from hunger strikes and failure to drink, as well as to monitor the health status of detainees who are fasting voluntarily. Every attempt will be made to allow detainees to remain autonomous up to the point where failure to eat or drink might threaten their life or health.

5. Security forces at JTF-GTMO monitor each detainee's daily intake of meals and water. If a detainee has missed nine consecutive meals or has declined food and water for more than two days, personnel at the detention hospital are notified and a medical evaluation of the detainee is conducted. This evaluation includes a complete medical records review, as well as physical and mental health examinations and testing. Medical personnel on a regular and frequent basis then monitor the detainee.

6. If medical personnel have reason to believe that the continuation of a voluntary fast or hunger strike could endanger a detainee's health or life, the detainee will be admitted to the detention hospital. His food and water intake are again monitored, and his medical condition is

continuously observed. Medical Staff counsel the detainee regarding the risks associated with not following our medical advice directing him to eat life-sustaining food and to drink fluids. We also explain the alternatives available to him, including oral food and fluid, oral rehydration solutions, oral nutritional supplements and intravenous hydration.

7. If the detainee elects to voluntarily begin eating/drinking, the detention hospital follows specific protocols designed to ensure the detainee's health and well being as he increases his caloric and liquid intake.

8. If the detainee continues to refuse to eat and/or drink and if a medical officer determines that the detainee's health or life might be threatened if treatment is not initiated immediately, consideration is given to involuntary medical treatment of the detainee. Interventions of an involuntary manner are deferred, however, until there is a clear medical determination by the attending physician that continued fasting would impair the health seriously or jeopardize the life of a detainee. When, after reasonable efforts, or in an emergency preventing such efforts, a medical necessity for immediate treatment of a life or health threatening situation is determined by the physician to exist, I will authorize doctors to administer treatment without the consent of the detainee. This can include the use of intravenous means or a feeding tube. No request for such authorization has been denied, and where sought, such authorizations have been provided in a timely manner without exacerbating the medical situation of a detainee.

    I declare under penalty of perjury that the foregoing is true and correct.

Dated: 9 September 2005

_____
JAY W. HOOD
Major General, USA