IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ABDULLA THANI FARIS AL-ANAZI, *et al.*, <br><br> Petitioners, <br><br> v. <br><br> GEORGE W. BUSH, <br> President of the United States, *et al.*, <br><br> Respondents. | Civil Action No. 05-345 (JDB) |
| ABDUL HAMID ABDUL SALAM AL-GHIZZAWI,, *et al.*, <br><br> Petitioners, <br><br> v. <br><br> GEORGE W. BUSH, <br> President of the United States, *et al.*, <br><br> Respondents. | Civil Action No. 05-2378 (JDB) |

**RESPONDENTS' OPPOSITION TO PETITIONERS' MOTIONS
TO RESTORE LEGAL MAIL PRIVILEGES AND TO COMPEL
<u>COMPLIANCE WITH THE PROTECTIVE ORDER</u>**

Respondents hereby oppose Petitioners' Motion For Restoration of Petitioners' Mail Privileges In Accordance With The Protective Order, filed in <u>Al-Anazi v. Bush</u>, 05-CV-0345 (JDB) (dkt. no. 64), and Petitioners' Emergency Motion To Compel Respondents' Compliance With The Terms Of The Protective Order, filed in <u>Al-Ghizzawi v. Bush</u>, 05-CV-2378 (JDB) (dkt. no 31). Petitioners' allege that their ability to send and receive legal mail has been denied

or restricted in violation of the protective order and counsel access regime governing the Guantanamo habeas litigation.  Petitioners' motions demand that the Court order respondents to restore petitioners' legal mail privileges in accordance with the protective order.

Petitioners' allegations are without merit.  Petitioners have not been prohibited from communicating with their counsel through the legal mail channels established by the protective order.  Petitioners are permitted to send and receive legal mail, they have access to blank paper and pens for sending such mail, and there is no restriction on the amount of legal mail petitioners may send.  Further, petitioners are not deprived of access to review legal mail they receive.

Contrary to petitioners' allegations, which are based exclusively on hearsay and snippets or characterizations of communications that petitioners notably fail to present to the Court, Guantanamo personnel are respectful of detainees' attorney-client materials.  Legal mail that arrives at Guantanamo is delivered directly to the detainee by specially trained personnel who do not open the mail.  Guards at Guantanamo do not open or deliver legal mail packages. While guards do have limited contact with legal mail during the course of routine cell searches and in the course of providing detainees with their legal materials, guards are not permitted to read legal mail, and their contact is limited solely to looking in envelopes, or paging through loose papers, to determine whether the documents may conceal physical contraband, consistent with Guantanamo's legal prerogative and responsibility to ensure security within the detention facility.  Petitioners in the above-captioned cases are entitled to the full range of legal mail privileges, consistent with the protective order and their disciplinary status, and they have not been denied the ability to communicate with their counsel through legal mail.

For these reasons, as explained more fully below, petitioners' motions should be denied.

## BACKGROUND

On November 8, 2004, Senior Judge Joyce Hens Green, in the context of the then-pending and coordinated Guantanamo Bay detainee habeas cases, entered an Amended Protective Order and Procedures for Counsel Access to Detainees at the United States Naval Base in Guantanamo Bay, Cuba ("Protective Order"), followed shortly thereafter by certain supplementary orders clarifying and detailing certain matters involving the Protective Order.  See In re Guantanamo Detainee Cases, 344 F. Supp. 2d 174 (D.D.C. Nov. 8, 2004); Order Supplementing and Amending Filing Procedures Contained in November 8, 2004 Amended Protective Order in In re Guantanamo Detainee Cases, No. 02-CV-0299, et al. (D.D.C. Dec. 13, 2004); Order Addressing Designation Procedures for "Protected Information" in In re Guantanamo Detainee Cases, No. 02-CV-0299, et al. (D.D.C. Nov. 10, 2004).  The Protective Order was entered by Judge Green after the parties had engaged in lengthy negotiations, after certain issues had been litigated, and after Judge Green considered a proposed protective order and counsel access procedures and made her own revisions to them.[1]

The Protective Order, inter alia, establishes a regime for the protection, handling, and control of classified and otherwise protected information in light of the unique circumstances of these Guantanamo habeas cases, which involve individuals detained as enemy combatants in an overseas military detention facility during wartime.  The Revised Procedures for Counsel Access to Detainees at the U.S. Naval Base in Guantanamo Bay, Cuba, ("Access Procedures"), which are

---

[1] The Protective Order and supplemental orders were entered in Al-Anazi on April 21, 2005 (dkt. no. 21) and in Al-Ghizzawi on June 2, 2006 (Minute Order).

annexed to the Protective Order as Exhibit A, in turn, set certain terms, conditions, and limitations for habeas counsel's access to properly represented detainees, including procedures and requirements with respect to information, papers, and mail exchanged by counsel and detainees "for purposes of litigating the cases in which this Order is issued." See Access Procedures § I.

      The Access Procedures permit privileged counsel visits and privileged "legal mail" between counsel and a represented detainee, subject to various requirements and restrictions in recognition of the unique wartime setting of these cases and detentions. See Access Procedures § III (listing requirements for access to and communications with detainees). Because all communications to and from the wartime detainees at Guantanamo are normally and appropriately subject to security and intelligence screening by the military, the special, privileged legal communications channels created under the Access Procedures are available only for "legal mail" sent solely "for purposes of litigating the cases in which th[e] Order is issued" between counsel and the detainee that counsel properly represents. Access Procedures §§ I, II. Privileged "legal mail" is, by definition, limited to:

> Letters written between counsel and a detainee that are related to the counsel's representation of the detainee, as well as privileged documents and publicly filed legal documents relating to that representation.

Id. § II.E. Detainees, however, are not permitted to use the privileged mail system for non-legal mail or for communications to or from others besides their counsel; the Access Procedures contemplate and require that such communications be routed through the normal mail process at Guantanamo Bay, which includes content screening for national security, intelligence, and physical and personnel security purposes. See id. § IV.B.4.-5. (counsel may not use legal mail

channels as conduit for non-legal mail; non-legal mail subject to review by military); see also id. § VI.C. (messages to others besides counsel to be processed as non-legal mail); § IV.A.5. (non-legal mail communications to detainees to be sent to detainee through normal, non-privileged mail channels).[2]

Pursuant to the legal mail procedures, counsel must send appropriately marked legal mail to the Privilege Team[3] at the secure work facility established for habeas counsel in the Washington, D.C. area.  Id. § IV.A.1, 2.  Upon receipt and following a search for physical contraband, the mail is forwarded to military personnel at Guantanamo within two business days. Id. § IV.A.3.  After the mail arrives at Guantanamo, military personnel deliver it to the detainee within two business days without opening the envelope or mailer.  Id. § IV.A.4.

---

[2] Also in recognition of the unique, wartime setting of these cases and detentions, including that information possessed by detainees could have national security or physical and personnel security implications warranting potential treatment of the information as classified information, the Access Procedures require that communications from detainees and information learned from them be treated as presumptively classified.  See Access Procedures §§ III.A., IV.A.6., VI.  Such information, including letters and materials reflecting communications to counsel from a represented detainee, may only be handled in a secure fashion and within the secure facility established for such purposes.  See Protective Order ¶ 26; id. ¶¶ 20-24.  Counsel, however, may submit such materials to the DoD Privilege Team for a "determination of its appropriate security classification."  See Access Procedures § VII.; see also id. § IV.A.6. (counsel required to treat information learned from a detainee, "including any oral and written communications with a detainee," as classified pending review by Privilege Team).

[3] The Privilege Team is "comprised of one or more Department of Defense attorneys and one or more intelligence or law enforcement personnel who have not taken part in, and in the future, will not take part in, any domestic or foreign court, military commission or combatant status review tribunal involving the detainee."  See Revised Procedures for Counsel Access, ¶ II.D.  The primary function of the Privilege Team is to review correspondence and other documents generated by counsel and the detainees to determine its appropriate classification level while maintaining the privileged nature of the materials.  Thus, the Privilege Team is not permitted to disclose materials reviewed except with consent of the Court or petitioners' counsel or in certain situations implicating immediate national security threats.  See id. at ¶ VII.

Outgoing legal mail – mail sent from detainees to counsel – is processed in a similar fashion. Pursuant to the Access Procedures, all written communications from a detainee must be treated and handled as classified information, unless and until determined otherwise by the Privilege Team or a court. Id. § IV.A.6. Consequently, the detainee must label the correspondence appropriately and then turn it over to military personnel, who seal and send the correspondence to the Privilege Team at the secure facility in the manner required for classified materials. See id. § IV.B.1-3; Protective Order, ¶ 16. Counsel is notified once the letter arrives at the secure facility and the letter is held for inspection and review by appropriately cleared counsel who have complied with the protective order. Upon request, counsel may submit the correspondence to the Privilege Team for classification and status review of the information contained in the correspondence. See Access Procedures § VII.A.

## ARGUMENT

Petitioners' allegations seem to be variously that they or others are being denied pens and paper for writing legal mail, that their time for writing legal mail is being unduly limited, that they are bring deprived incoming mail, and that legal mail is being open and read by guards. As a threshold matter, petitioners have failed to produce any competent or reliable evidence that their legal mail privileges are being denied. In Al-Anazi, counsel provide only snippets of information from a letter purportedly authored by one of the four petitioners in the case who remain at Guantanamo,[4] but counsel neither identify the detainee nor supply the letter, even in redacted form. See Al-Anazi Motion at 5. Thus, respondents are left to guess to whom the

---

[4] Petitioner Adel Egla HussanAl-Nussairi (ISN 308) has been released from United States custody. See Notice of Transfer (dkt. no. 45).

allegations in petitioners' motion pertain.  Further, the text of the letter quoted in the motion is completely devoid of context, such that it is difficult to determine the precise nature of the complaints allegedly contained in it.[5]  Other portions of the motion recount counsel's hearsay summaries of the letter's contents.  See id. at 5, ¶¶ 2, 5.  The allegations also are internally consistent:  one of the snippets provided by counsel states that the detainee is being denied pen and paper by Guantanamo, yet obviously the detainee was able to write counsel a letter.  See id. at 5.  Similarly, the factual basis for the Al-Ghizzawi motion is counsel's hearsay summaries or characterizations of statements purportedly made by petitioner in a letter received by counsel on August 29, 2006.  See Al-Ghizzawi Motion at 2-3.  Counsel notably does not attach the letter to the motion, nor does counsel even quote the letter's contents.  Such "evidence" is insufficient to support the requested injunctive relief.

In any event, the Declaration of Colonel Wade F. Dennis, attached hereto as Exhibit 1, addressing Guantanamo's legal mail practices, refutes petitioners' arguments as to improprieties regarding legal mail processes.  Colonel Dennis is the Commander of the Joint Detention Group (JDG) for the Joint Task Force - Guantanamo Bay, Cuba (JTF-Guantanamo) and he is responsible for all aspects of detention operations for JTF-Guantanamo.  See Exhibit 1 ("Dennis Decl.") ¶ 1.  As explained by Colonel Dennis, petitioners have been provided with legal mail

---

[5] Indeed, it appears that petitioners may be attempting resurrect baseless allegations stemming from the impoundment of certain detainee materials by the Naval Criminal Investigative Service in connection with the investigation into the recent suicides at Guantanamo. See Response To Respondents' Motion For Procedures Related To Review Of Certain Detainee Materials And Request For Expedited Briefing at 6 (dkt. no. 53).  Respondents previously explained that these allegations are without merit.  See Respondents' Reply Memorandum In Support Of July 7, 2006 Motion For Procedures Related To Review Of Certain Detainee Materials And Opposition To Petitioners' Requests For Relief Associated With Impoundment Of Detainee Materials at 11 n.11 (dkt. no. 54).

privileges consistent with the protective order, and they have not been denied the ability to communicate with their counsel through legal mail.

With respect to incoming legal mail sent by counsel to detainees, such mail is sent from the Privilege Team in Washington, D.C., directly to the Staff Judge Advocate's office at Guantanamo.[6]  See Dennis Decl. ¶ 7.  Within two business days of receipt, specially trained personnel deliver the legal mail to detainees without opening the envelopes.  See id.  Guards do not open or deliver legal mail to petitioners.  Id.

Outgoing legal mail from detainees to counsel is processed in a similar fashion. Detainees are provided with blank paper for writing legal mail, and there is no limit as to the amount of legal mail a detainee may draft or send to counsel.  Dennis Decl. ¶ 6.  Consistent with the Access Procedures, outgoing legal mail is collected from the detainee no later than one business day after guards are notified that a detainee has outgoing legal mail to send.  Id. ¶ 2. Outgoing legal mail is sent no later than two business days after collection.  Id.  Detainees also are provided pens to write letters to counsel.  Detainees in cells who are not in disciplinary status are permitted to keep a pen in their cell throughout the day and night.  Id. ¶ 4.  In light of security and force protection concerns, however, JTF-Guantanamo conducts an inventory of all pens during the guard shift changes each morning and evening.  Accordingly, pens must be turned into the guards at these times.  Id.  Once the inventory is completed, the pens are reissued upon a detainee's request.[7]  Id.

---

[6] The Staff Judge Advocate's office provides legal advice and support to JTF-GTMO.

[7] Immediately following the detainee suicides on June 9/10, 2006, pens were withheld from detainees for approximately two weeks while a harm assessment related to force protection and detainee security was conducted.  See Dennis Decl. ¶ 9.  In rare cases, pens also may be

JTF-Guantanamo also has practices in place regarding storage and retrieval of legal mail for detainees in cells. Legal mail is stored in a covered plastic container located outside the detainee's cell. Dennis Decl. ¶ 3. Detainees who are not in disciplinary status are permitted to maintain up to twenty (20) pieces of mail in their cell at one time.[8] Id. Detainees have the option of selecting which 20 pieces of mail they want to keep in their cell. Id. Detainees may exchange or request pieces of mail at any time by notifying the guards. Id. In the event of an exchange or retrieval of documents, whether legal mail or other materials, guards are permitted to look in open mail envelopes for possible physical contraband. Id. ¶ 8. Guards are not permitted to read legal mail, however.[9] Id.

The disciplinary status of a detainee can affect certain aspects of the detainee's legal mail privileges. See Dennis Decl. ¶ 2. Detainees subject to disciplinary sanctions are not permitted to hold mail in their cells; the mail is stored in the covered plastic container outside the detainee's cell. Id. ¶ 5. Such detainees are permitted one hour per day to review and write legal mail.[10] Id. ¶ 5. However, detainees may request additional time to review and write legal mail; such

---

temporarily removed from some detainees when medical staff determine the detainee may use the pen to inflict self-harm.

[8] A piece of mail is defined as a single piece of paper. The 20-piece limit can include, together, legal mail, blank pages for writing legal mail, and up to 5 pieces of non-legal mail. See Dennis Decl. ¶¶ 3, 6.

[9] Similarly, when guards conduct routine cell searches, they are permitted to look in open envelopes and similar containers for physical contraband only. Also during these searches, any loose paper in the cell can be paged through to locate any hidden physical contraband. See Dennis Decl. ¶ 8.

[10] Detainees in disciplinary status are permitted to have a pen only during the time they are permitted to write letters. See Dennis Decl. ¶ 5.

requests to review legal mail are routinely granted, as are requests to write legal mail, if a detainee is actively drafting a letter. Id. The amount of legal mail that can be drafted or sent by detainees in disciplinary status, as with those not in disciplinary status, is not limited, however. See id. ¶ 6.

Petitioners in both Al-Anazi and Al-Ghizzawi have been afforded the full range of mail privileges in accordance with their disciplinary status and the terms of the Protective Order and Access Procedures. See Dennis Decl. ¶ 11. Since May 2006, petitioners in both cases have been placed on disciplinary status for various periods of time, see id. ¶ 11; thus, many of petitioners' allegations may be misleading exaggerations or distortions of the special practices applicable with respect to such status.[11] To the extent petitioners' complaints are directed at the actual measures pertaining to detainees in disciplinary status, their claims are without merit. As explained above, detainees are permitted to review and write legal mail while in disciplinary status.[12] And any limitations on the time for mail review and drafting (extensions of which are routinely granted), on keeping pens in cells, etc., are appropriate measures reasonably related to legitimate security and disciplinary objectives. See, e.g., Gregory v. Auger, 768 F.2d 28, 289-92 (8th Cir. 1985) (upholding prison policy restricting mail privileges of inmates placed in

---

[11] Petitioners' allegation that "Guantanamo had unilaterally imposed a rule forbidding correspondence by detainees to anyone for forty days," Al Anazi Motion at 5, however, is nothing more than an outlandish detainee myth lacking factual basis.

[12] Respondents are not aware of evidence to support petitioner Al Ghizzawi's allegation that he was forced to write legal mail on postcards instead of blank paper. See Dennis Decl. ¶ 10. Guantanamo staff is routinely trained on detainee legal mail handling procedures, and they are frequently reminded of the appropriate procedures. Id. In any event, even an isolated instance of error in the administration of a prison mail system does not warrant forward-looking injunctive relief. See Lingo v. Boone, 402 F. Supp. 768, 773 (N.D. Cal. 1975).

disciplinary detention); see also Turner v. Safley, 482 U.S. 78, 89 (1989) (prison regulation valid if it is "reasonably related to legitimate penological interests"). Moreover, the practices in no way violate the Protective Order and Access Procedures, which is the only basis of complaint petitioners have raised in their motions.

Furthermore, petitioners' complaints that guards do not allow detainees to read legal mail and that guards read legal mail before delivering it to petitioners are erroneous, as explained above. That guards can look in envelopes to search for physical contraband when providing them to detainees is a legitimate and appropriate security-related measure. See, e.g., Goff v. Nix, 113 F.3d 887, 892 (8th Cir. 1997) (upholding requirement that prison officials be permitted to scan privileged documents for contraband); see also Bell v. Wolfish, 441 U.S. 520, 548, 562 (1979) (explaining that the operation of even domestic "correctional facilities is peculiarly the province of the Legislative and Executive Branches of our Government, not the Judicial," and noting that prison administrators are to be accorded wide-ranging deference in adopting practices related to order, discipline, and security in detention institutions).

At bottom, as explained in the declaration of Colonel Dennis, petitioners have not been prohibited from communicating with their counsel through the legal mail channels, and there has been no systematic conspiracy to deprive detainees of their legal mail privileges in violation of the Protective Order.

## CONCLUSION

For the reasons stated above, respondents respectfully request that petitioners' motions be denied.

Dated: September 15, 2006                    Respectfully submitted,

                                                   PETER D. KEISLER
Assistant Attorney General

DOUGLAS N. LETTER
Terrorism Litigation Counsel

   /s/ *Terry M. Henry*
JOSEPH H. HUNT (D.C. Bar No. 431134)
VINCENT M. GARVEY (D.C. Bar No. 127191)
TERRY M. HENRY
JAMES J. SCHWARTZ
PREEYA M. NORONHA
ROBERT J. KATERBERG
ANDREW I. WARDEN
NICHOLAS J. PATTERSON
EDWARD H. WHITE
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W.
Washington, DC  20530
Tel:  (202) 514-4107
Fax:  (202) 616-8470

Attorneys for Respondents