Cleared for Public Filing

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ABDUL HAMID ABDUL SALAM AL-GHIZZAWI )<br>    Detainee, )<br>    Guantanamo Bay Naval Station )<br>    Guantanamo Bay, Cuba; )<br> )<br>*Petitioner*, )<br> )<br>v. )<br> )<br>GEORGE W. BUSH, *et al.*, )<br> )<br>*Respondents*. )<br> ) | Civil Action No. 05-cv-02378<br><br>Judge John B. Bates |

**PETITIONER'S MOTION TO RECONSIDER THIS COURT'S ORDER DENYING PETITIONER'S MOTION TO COMPEL ACCESS TO MEDICAL RECORDS AND TO REQUIRE EMERGENCY MEDICAL TREATMENT**

PLEASE TAKE NOTICE that on such date as the Court shall determine, Petitioners, by and through undersigned counsel, shall move for this Court to reconsider Its order denying Petitioner's access to Petitioner's medical records and to require emergency medical treatment as set forth in the accompanying Memorandum in Support of Petitioners' Motion.

Dated: October 4, 2006                          /s/ H. Candace Gorman

                                                                H. Candace Gorman


H. Candace Gorman (IL Bar #6184278)
Elizabeth Popolis  (IL Bar #6285095)
Law Office of H. Candace Gorman
542 S. Dearborn – Suite 1060
Chicago, IL 60605
Tel:  (312) 427-2313
Fax: (312) 427-9552

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ABDUL HAMID ABDUL SALAM AL-GHIZZAWI )<br>    Detainee, )<br>    Guantanamo Bay Naval Station )<br>    Guantanamo Bay, Cuba; )<br>    )<br>                 *Petitioner*, )<br>    )<br>       *v.* )<br>    )<br>GEORGE W. BUSH, *et al.*, )<br>    )<br>                *Respondents.* ) | Civil Action No. 05-cv-02378<br><br>Judge John B. Bates |

**MEMORANDUM IN SUPPORT OF PETITIONER'S MOTION TO RECONSIDER THIS COURT'S ORDER DENYING PETITIONER'S MOTION TO COMPEL ACCESS TO MEDICAL RECORDS AND TO REQUIRE EMERGENCY MEDICAL TREATMENT**

Petitioner Abdul Hamid Abdul Salam Al-Ghizzawi (hereinafter Al-Ghizzawi), by and through undersigned counsel, states the following in support of his motion to Reconsider this Court's Order denying Petitioner's motion to compel Respondents to provide his counsel with access to his medical records and to require emergency medical tests and treatment:

1. On Oct 2, 2006, this Court issued an order denying Petitioner's Emergency Motion to Compel Access to Medical Records and to Require Emergency Medical Treatment on the grounds that Petitioner

1

        failed to demonstrate that his medical care at the base has been deficient to the point of violating his rights because, according to the Court's analysis, the declarations and affidavits submitted by the parties show at most a "difference of opinion" as to what tests and treatments Petitioner should receive. The Court also found that Petitioner failed to show that he would suffer irreparable harm absent the requested relief because he did not specifically deny receiving the treatment and tests described in Respondents' Declarations.

2.     In finding that Petitioner has failed to demonstrate irreparable harm, this Court overlooked the fact that the government concedes that Mr. Al-Ghizzawi has Hepatitis B and that Mr. Al-Ghizzawi has tuberculosis, but is not being treated for either condition.

3.     In addition, the Court's finding that Mr. Al-Ghizzawi "has not specifically denied receiving" the treatment alleged by Respondents, ignores the fact that that Petitioner's counsel was not able to consult with Petitioner regarding the accuracy of these claims until after Petitioner's reply memorandum was due.[1] (Memorandum Opinion and Order, p. 9-10) When counsel was finally able to speak with Petitioner

---

[1] Counsel visited Petitioner at the base on September 19 and September 20 and discussed the contents of Respondents' declaration with him at that time. (Ex. F, HCG Affidavit, ¶ 2-3) However, counsel is still not able to present Petitioner's full response to this Court as her notes from those meetings are still with the Privilege Review Team awaiting classification review. (Id. at 6) The account contained in this motion is based upon counsel's best recollection of what Mr. Al-Ghizzawi told her regarding his health and tests at those meetings, subjects that are not classified or "protected."

about the declaration attached to the Government's Response brief, he stated that he was never told he was diagnosed with Hepatitis B or Tuberculosis, that in fact counsel was the first person to confirm for him (at that Sept. meeting) his suspicion that he was in fact suffering from Hepatitis B. (Ex F, ¶ 4a) Mr. Al-Ghizzawi also told counsel that he never refused treatment for Hepatitis B, Tuberculosis or any other condition, because he was never told he had been diagnosed with any disease. (Id. at ¶ 4b) In fact, Petitioner Al-Ghizzawi stated that whenever he had seen the staff at the medical facility, he was told that there was nothing wrong with him. (Id. at ¶ 4c) This was despite the fact that he knows that his health continues to deteriorate. Additionally, he stated that on the few occasions that he received tests at the medical facility, he requested the results and was repeatedly told by the staff that they were not allowed to tell him the results of any medical tests. (Id. at ¶4d) He also stated that on one occasion several months ago, when the medical staff asked him if he would agree to additional tests, Petitioner Al-Ghizzawi asked if he could receive the results of his tests if he agreed to submit to these new tests. (Id at ¶4e) When the staff at the medical facility told him no, he declined the additional tests. (Id) His impression was that he was being used as some sort of guinea pig because his health continued to deteriorate and he was not being informed of or receiving any treatment for his

3

      condition; and unless they were going to tell him what the tests were for, what the results were and that they were going to treat him for his condition, he did not want to cooperate. (Id) Finally, when Petitioner saw a member of the medical staff in early September, the doctor expressed surprise and concern over how bloated and black his stomach area appeared. (Id at ¶ 4f)

4.   This Court has also held that Petitioners medical records cannot be turned over because the request was made "for purposes of obtaining second opinions from outside medical practitioners" (Op. at 10). The court's characterization of the reasons behind Petitioner's request is incorrect. Petitioner seeks those records (and the additional tests) to ascertain the severity of Mr. Al-Ghizzawi's medical condition and to show this Court that he is not receiving proper medical care. This Court's refusal to allow the medical records to be turned over has placed Petitioner in a "Catch-22" scenario. It is very difficult for Petitioner to show "deliberate indifference" or "irreparable harm" without the records. In holding that Petitioner cannot have his medical records because he cannot show that he will suffer irreparable harm[2] if he does not receive the proper medical care places Petitioner in a

---

[2] As described in paragraph 2 above Petitioner believes that the admissions of the Guantánamo doctor confirm the irreparable harm to Mr. Al-Ghizzawi.

4

        circular conundrum because he cannot further demonstrate that he will suffer irreparable harm *unless* he is given access to his medical records .

5.       In addition, counsel for Petitioner claimed that when she spoke to Mr. Al-Ghizzawi in July, he appeared jaundiced, but the Respondents claimed that his cmp was within normal limits.  Respondents should not be allowed to refute counsel's observation without releasing the results of a cmp taken around the time of her visit just as counsel cannot prove her observation was accurate without those test results. Similarly, the danger to Petitioner (and others) from his tuberculosis is impossible to prove or disprove without access to his medical records. Petitioner likewise cannot prove he suffers from cirrhosis of the liver nor can the government prove that he does not unless they are able to release the records substantiating that claim.  Finally, in her last meeting with Mr. Al-Ghizzawi, counsel carefully observed Mr. Al-Ghizzawi during their two day meeting and noted that he was still obviously jaundiced, drawn and in visible pain (constantly rubbing his back and chest).  (Id. at 5) In addition, Mr. Al-Ghizzawi had a difficult time focusing his eyes, at times appeared listless, and had a difficult time concentrating on the topics we were discussing. (Id.) He also had a lump near his rib cage on his right side that was causing him great discomfort. (Id.) These additional observations make it even more necessary for the government to provide proof that counsel's

5

observations are not supported by the results of Mr. Alghizzawi's medical tests.

6. As demonstrated above, Petitioner cannot prove irreversible harm without information from his medical records, but can only point to indications that he is in danger of irreversible harm by the admission from the government that he is suffering from Hepatitis B and has tuberculosis, but is receiving treatment for neither. The government claims that Mr. Al-Ghizzawi refused any treatment, but Petitioner informed counsel that he was never informed of his diagnosis or offered treatment for illnesses. Contrary to the government's claims, it is clear that Petitioner desperately wants treatment for his illnesses. Mr. Al-Ghizzawi has continuously been adamant in desiring a medical cure for his condition in his communications with counsel and he reminded counsel during their meetings on September 19th and 20th that his plea for an attorney was often couched in terms of his worsening medical condition. (Ex. F at ¶ 4g) A fact that has been mentioned in court pleadings since his Petition for Habeas Corpus was first filed. He expressed his hope that by having an attorney he would finally receive medical care. (Id.)

7. Furthermore, this Court found that the affidavits and declarations from each party revealed at most a "difference of opinion" as to what

treatments and tests Petitioner needs.[3] (Op., p. 9)  This Court cited the Respondents' Declaration as evidence that he had received and was continuing to receive tests and treatments and was dissatisfied with the lack of explanation from Petitioner's affiants with respect to why the tests performed on Mr. Al-Ghizzawi by the government's physicians are inadequate and the tests recommended by affiants are necessary. (*Id*.) The affidavits of Dr. Jensen and Dr. Reichen, who are both world renowned experts, attest to the recognized practice in this area of medicine and the fact that the recognized practice is not being followed at Guantanamo.  (Ex. G, ¶ 20-22, Ex. H ¶ 22-24; *see also* Ex. D and E to Petitioner's Reply in Support of Motion to Compel Access to Medical Records) As Dr. Reichen  and Dr. Jensen explain in their supplemental affidavits, there is a high probability of error associated with the tests that the government relies on, and those tests therefore suffer from limited effectiveness and make it vital to employ multiple, complimentary tests. (Ex. G, ¶ 19; Ex. H, ¶ 22);   The ineffectiveness of the Government's approach is confirmed in the November 2005 issue of *Hepatology* which demonstrate that, far from offering a second, "differing" opinion, Dr. Jensen and Dr. Reichen, who are both world

---

[3] Petitioner acknowledges that the indifference standard is not met by merely stating differences in opinion between doctors, but Petitioner points out respectfully that this is the difference of opinion between two world-renowned hepatologists and a prison camp medical officer who has no expertise in the very difficult field of Hepatology.

        renowned experts in Hepatology were merely advocating for the recognized practice in this area of medicine. (Ex. 2 to Reichen affidavit, p. 1213-1214)

8. Finally, in consideration of the Court and Respondents' concerns and in keeping with the stated procedure that the Naval Base Hospital will bring in outside specialists if the care there is insufficient, Petitioner suggests that Dr. Jensen, who has expressed his willingness to make the trip, be allowed to visit the base to examine Petitioner and determine the necessary treatment themselves. (Ex. H, ¶ 25)

WHEREFORE, for the above-stated reasons and for any other reason that may become known to the Court, Petitioner respectfully request that this Court reconsider its Order denying Petitioner's Motion to compel access to medical records and for emergency medical treatment.

Dated:   October 4, 2006

                                            Respectfully Submitted,
                                            Counsel for Petitioner

                                            /s/ H. Candace Gorman
                                             H. Candace Gorman

LAW OFFICE OF H. CANDACE GORMAN
H. Candace Gorman
Elizabeth Popolis
542 S. Dearborn St., Suite 1060
Chicago, IL 60605
(312) 427-2313

# **CERTIFICATE OF SERVICE**

    I, H. Candace Gorman, certify that I today caused a true and accurate copy of PETITIONER'S MOTION TO RECONSIDER THIS COURT'S ORDER DENYING PETITIONER'S MOTION TO COMPEL ACCESS TO MEDICAL RECORDS AND TO REQUIRE EMERGENCY MEDICAL TREATMENT to be served upon the following persons by virtue of filing the above listed document with the U. S. Department of Justice Litigation Security Section:

        Terry Henry, Esq., Senior Trial Attorney
        Andrew I. Warden, Esq., Trial Attorney
        U.S. Department of Justice
        Civil Division, Federal Programs Branch
        20 Massachusetts Ave., NW, Room 7144
        Washington, DC  20530

This 4th day of October, 2006.

                              /s/ H. Candace Gorman
                              Counsel for Petitioner

Law Office of H. Candace Gorman
H. Candace Gorman (IL Bar #6184278)
Elizabeth Popolis (IL Bar #6285095)
542 S. Dearborn Street - Suite 1060
Chicago, IL 60605
Tel: (312) 427-2313