IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ABDUL HAMID ABDUL SALAM AL-GHIZZAWI, | ) ) ) ) | |
| Petitioner, | ) ) | |
| v. | ) ) | Civil Action No. 05-2378 (JDB) |
| GEORGE W. BUSH, *et al.*, | ) ) ) | |
| Respondents. | ) ) | |

**RESPONDENTS' OPPOSITION TO PETITIONER'S
MOTION TO RECONSIDER THE COURT'S MEMORANDUM OPINION AND
ORDER DENYING PETITIONER'S MOTION TO COMPEL ACCESS TO MEDICAL
RECORDS AND TO REQUIRE EMERGENCY MEDICAL TREATMENT**

Respondents hereby oppose petitioner Abdul Hamid Abdul Salam Al-Ghizzawi's motion (dkt. no. 49) to reconsider the Court's prior October 2, 2006 denial[1] of petitioner's emergency motion for access to petitioner's medical records and for emergency medical treatment (dkt. no. 29).[2] Petitioner continues to seek extraordinary court intervention into and governance of the medical care provided petitioner at the United States Naval Base at Guantanamo Bay, Cuba ("Guantanamo"). As explained below, however, no basis exists for reconsideration of the Court's prior, well-reasoned denial of petitioner's requested relief. Contrary to petitioner's allegations, and as demonstrated in the declarations of Captain Ronald L. Sollock, M.D., Ph. D., Commander, U.S. Navy Hospital, Guantanamo Bay, Cuba, and Joint Task Force Surgeon for Joint Task Force - Guantanamo Bay, Cuba, submitted herewith and in

---

[1] *See* Memorandum Opinion and Order (dkt. no. 47) ("Mem. Op. & Order").

[2] Petitioner's motion for reconsideration shall be referred to herein as "Petr's Recon. Motion."

respondents' opposition to petitioner's original preliminary injunction motion,[3] petitioner has received and continues to receive thorough, responsible, and attentive medical care. His diagnoses and options for care have been discussed with him on multiple occasions, and he regularly is offered and receives testing and monitoring appropriate for his situation and condition. There is simply no legitimate factual or legal bases for the extraordinary relief sought by petitioner. Petitioner's motion for reconsideration, therefore, should be denied.

## ARGUMENT

**I.    RECONSIDERATION STANDARD**

Petitioner's motion is devoid of any discussion of the legal standard applicable to a motion for reconsideration. A court should reconsider an interlocutory order, however, only where "justice requires" it, in the sense that reconsideration may be appropriate when the court has "'patently misunderstood a party, has made a decision outside the adversarial issues presented to the Court by the parties, has made an error not of reasoning but of apprehension, or where a controlling or significant change in the law or facts [has occurred] since the submission of the issue to the Court.'" *See Singh v. George Washington Univ.*, 383 F. Supp. 2d 99, 101 (D.D.C. 2005) (Lamberth, J.) (citing *Cobell v. Norton*, 224 F.R.D. 266, 272 (D.D.C. 2004)). "Errors of apprehension may include a Court's failure to consider 'controlling decisions or data that might reasonably be expected to alter the conclusion reached by the court.'" 383 F. Supp. 2d at 101 (citing *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)). Importantly, "'the

---

[3] The declaration submitted herewith is submitted consistent with Court's October 6, 2006 Minute Order directing respondents to "respond to . . . petitioner's motion for reconsideration by filing a memorandum and any supplemental affidavits addressing petitioner's medical care or policies governing such care by not later than October 16, 2006."

district court's discretion to reconsider a non-final ruling is, however, . . . subject to the caveat that where litigants have once battled for the court's decision, they should not be required, nor without good reason permitted, to battle for it again.'" 383 F. Supp. 2d at 101 (citing *In re Ski Train Fire*, 224 F.R.D. 543, 546 (S.D.N.Y. 2004) (internal quotation marks and citation omitted)). *Cf. In re Foster*, 283 B.R. 917, 920 (Bankr. E.D. Wis. 2002) (explaining that purpose of motion for reconsideration under FED. R. CIV. P. 60(b) is "not to give the moving party another 'bite at the apple' by permitting the arguing of issues and procedures that could and should have been previously raised").

The Court denied petitioner's motion for preliminary injunction regarding medical care on the basis that petitioner had failed to show the likelihood either of irreparable harm or of success on the merits. *See* Mem. Op. & Order at 10-11. Petitioner offers no legitimate basis for reconsidering those conclusions, and, in any event, no legitimate basis for Court intervention into petitioner's medical care at Guantanamo or for production of medical records.

## II. PETITIONER HAS AGAIN FAILED TO ESTABLISH THAT HE FACES IMMINENT IRREPARABLE INJURY.

In his motion for reconsideration, petitioner claims that "the government concedes" petition has Hepatitis B and tuberculosis, and "is not being treated for either." Petr's Recon. Motion ¶¶ 2, 6. Further, petitioner claims, in essence, that he has never refused treatment because he has never been informed of his diagnoses. *Id.* ¶ 3. He also alleges that recently an examining physician at Guantanamo "expressed surprise and concern over how bloated and black his [petitioner's] stomach area appeared." *Id.* The claims made in petitioner's motion for

reconsideration, however, appear, at best, to represent a combination of counsel's lack of medical expertise and falsehoods conveyed by petitioner.

The Declaration of Captain Ronald L. Sollock, M.D., Ph.D., submitted as Exhibit 1 to respondents' opposition to petitioner's motion for preliminary injunction (dkt. no. 41) ("Sollock Decl."), explained the medical care facilities and resources available to Guantanamo detainees, as well as the extensive and individualized examination, diagnosis, testing, monitoring, and treatment provided petitioner, including in recent months.  The Second Declaration of Captain Ronald L. Sollock, M.D., Ph.D., submitted as Exhibit 4 ("Second Sollock Decl.") hereto, supplements, updates, and further explains the extensive and responsible care provided petitioner and refutes petitioner's allegations.

Petitioner's claims that he has never been informed of his diagnoses or counseled regarding testing and treatment related to Hepatitis B and tuberculosis are simply untrue.  As explained by Captain Sollock, the treatment standards used in the delivery of medical care for detainees are the same used for uniformed and civilian personnel at Guantanamo.  Second Sollock Decl. ¶ 1.  It is standard practice of medical providers at Guantanamo to discuss with detainees their diagnoses, using interpreters as necessary, and provide recommendations for further evaluation and treatment.  *Id.*  This includes counseling regarding risks and benefits of treatment and of a decision to reject care.  *Id.*

With respect to petitioner's Hepatitis B situation, petitioner revealed a possible history of Hepatitis B during an examination provided upon his arrival at Guantanamo, and after testing in August 2002 confirmed that petitioner had Hepatitis B, he was advised of the test results and of the screening and treatment options available to him.  *Id.* ¶ 2(d)-(e).  The testing gave results

consistent with inactive Hepatitis B carrier state, meaning that petitioner was not an active Hepatitis B carrier and his situation warranted only periodic liver testing. *Id.* ¶ 2(e). Petitioner was subsequently offered laboratory testing related to Hepatitis B, as well as ultrasound monitoring, on multiple occasions, and sometimes petitioner consented to such tests, while sometimes he did not.[4] *Id*. ¶¶ 2(f), 5; Sollock Decl. ¶¶ 12, 14-15. His test results and monitoring have not been indicative of liver disease or cancer. Second Sollock Decl. ¶¶ 2(f), 5; Sollock Decl. ¶¶ 12, 14-15. Guantanamo medical authorities, consistent with the thorough and responsible care provided Guantanamo detainees, continue to monitor petitioner, have ordered an additional ultrasound examination for petitioner, and are also considering whether further gastroenterological consultation may be warranted. Second Sollock Decl. ¶ 5.

With respect to the tuberculosis diagnosis, as stated in Captain Sollock's prior declaration, petitioner was diagnosed with latent tuberculosis, which means that the body has been exposed to the tuberculosis mycobacterium, but has no symptoms or findings of active disease. *See* Second Sollock Decl. ¶ 3(a)-(b); Sollock Decl. ¶ 13.[5] In accordance with Guantanamo's practices, petitioner was specifically informed about his latent tuberculosis

---

[4] As recently as the September 5, 2006 evaluation of petitioner, petitioner at first consented to evaluative testing, and several tests were taken, but he subsequently refused to participate so that the "Hepatitis B DNA viral load" test could be taken. *See* Second Sollock Decl. ¶¶ 2(f), 5; Sollock Decl. ¶ 15.

[5] Previously, respondents provisionally designated the information in ¶ 13 of Sollock Declaration as "protected information" under ¶¶ 11, 35-45 of the Amended Protective Order in this case and redacted it from the publicly filed version of the declaration. Petitioner, however, has now chosen to discuss the information in ¶ 13 on the public record, and, thus, it would be appropriate for the information in that paragraph to be unsealed.

diagnosis and possible treatment.[6]  Second Sollock Decl. ¶ 3(b).  After having been explained the risk of developing an active case of the disease later in life, however, petitioner refused treatment.  *Id.* ¶ 3(b).

Just as petitioner's allegations that he has been kept in the dark by Guantanamo authorities concerning his diagnoses and testing and treatment options are untrue, likewise, his allegation that a Guantanamo physician "expressed surprise and concern" during an early September 2006 examination because petitioner's "stomach area was so bloated and blackened in color," is mere storytelling.  While petitioner was seen by medical personnel on September 5 and 6, 2006, those examinations did not find his stomach area to be bloated or blackened.  Second Sollock Decl. ¶ 4.

As explained above, counsel's assertion that petitioner has Hepatitis B and tuberculosis and "is not being treated for either" are misleading in the extreme.  Furthermore, petitioner's unsworn allegations that he has never been informed of his diagnoses and care options are simply false.  The allegations are refuted by the detailed declarations provided by respondents concerning the care provided by Guantanamo medical authorities.  Far from neglecting petitioner's health, Guantanamo medical personnel have provided and are providing petitioner with comprehensive and attentive medical care and are attempting to involve petitioner in the process.

Accordingly, reconsideration of the Court's prior conclusion that petitioner failed to demonstrate a likelihood of irreparable harm absent injunctive relief, *see* Mem. Op. & Order at

---

[6] The treatment regime consists of a nine-month regime of oral antibiotics and a certain vitamin.  *See* Second Sollock Decl. ¶ 3(a).

10-11, is not warranted.  Petitioner's waste, through his falsehoods and misrepresentations, of this Court's time and the time and resources of the Guantanamo medical and legal staff should not be countenanced.

### III.  PETITIONER HAS AGAIN FAILED TO ESTABLISH A LIKELIHOOD OF SUCCESS ON THE MERITS.

In his motion for reconsideration, petitioner claims that supplemental affidavits of Drs. Jensen and Reichen somehow demonstrate the "ineffectiveness of the government's approach," Petr's Recon. Motion ¶ 7, and warrant reconsideration of the Court's conclusion that petitioner failed in his original motion for a preliminary injunction to establish a "substantial likelihood of success," *see Katz v. Georgetown Univ.*, 246 F.3d 685, 687-88 (D.C. Cir. 2001), on his claims of inadequate medical treatment and for production of medical records.  *See*  Mem. Op. & Order at 10-11.  As explained below, however, petitioner once again has failed to demonstrate any likelihood of success, much less a substantial one.

Petitioner appears to argue that the medical affidavits submitted with his motion to reconsider demonstrate that Guantanamo authorities "have exhibited 'deliberate indifference' to the prisoner's 'serious medical needs,'" the standard applied by the Court.[7]  *See* Petr's Recon. Motion ¶ 7; Mem. Op. & Order at 7-8 (citing cases).  As noted by the Court, however, under that

---

[7] Respondents have previously noted that whether the "deliberative indifference" standard applied in the domestic prison context translates without alteration to the context involved in this case, *i.e.*, the detention of enemy combatants by the military during a time of war, is debatable at best, and that separation of powers concerns would require satisfaction of an even more stringent standard before judicial intervention is warranted in a case like this.  *See* Resps' Opp. to Petr's Emerg. Motion for Access to Medical Records and For Emerg. Medical Treatment at 14 n.10 (dkt. no. 41); *cf. O.K. v. Bush*, 377 F. Supp. 2d 102, 112-13 n.10 (D.D.C. 2005) (Bates, J.) (noting that substantive due process analysis is dependent upon the precise circumstances involved and that "[n]o federal court has ever examined the nature of the substantive due process rights of a prisoner in a military interrogation or prisoner of war context").

standard "deliberate indifference is found where officials were 'knowingly and unreasonably disregarding an objectively intolerable risk of harm to the prisoners' health or safety.'" Mem. Op. & Order at 8 (citation omitted).  Mere allegations of "mistake or difference of opinion," or even "negligence," will not do, and courts are not to "sit as boards of review over the medical decisions of prison officials, and they will not second-guess the adequacy of a particular course of treatment." *Id*. (citations omitted).  Accordingly, the standard a litigant must meet in order to show a likelihood of success that would support Court intervention into medical care provided detainees is very high.  Petitioner's showing in his motion for reconsideration falls far short of that standard.

It should be noted that the supplemental affidavits of petitioner's experts submitted with the motion for reconsideration do little more than repeat what was already stated and considered by the Court in petitioner's reply brief in support of his motion for a preliminary injunction.  The affidavits call for production of petitioner's medical records for examination by the experts so that they can offer "second opinions," and for additional testing for Hepatitis C and Delta. *Compare* Petr's Reply Mem. (dkt. no. 38), Ex. D ¶ 18 (Supp. Aff. of Dr. Jensen) *with* Petr's Recon. Motion, Ex. H ¶ 24 (Second Supp. Aff. of Dr. Jensen) *and* Petr's Reply Mem. (dkt. no. 38), Ex. E ¶ 15 (Aff. of Dr. Reichen) *with* Petr's Recon. Motion, Ex. G ¶ 22 (Supp. Aff. of Dr. Reichen).  The affidavits also claim that Guantanamo is not following appropriate medical guidelines, but do not explain how.[8]  *See* Petr's Recon. Motion, Ex. G ¶ 20, Ex. H ¶ 23.  The

---

[8] This failure would appear to be especially damning in light of Captain Sollock's explanation that petitioner's laboratory testing reflects a pattern consistent with an inactive Hepatitis B carrier state, meaning that petitioner is not an active Hepatitis B carrier, as well as the fact that Guantanamo medical authorities adhere to prevailing medical standards in their care of detainees.  *See* Second Sollock Decl. ¶ 2(a)-(e).

Court considered these same assertions in its October 2, 2006 Memorandum Opinion and Order, as against the description of care provided petitioner by Guantanamo authorities, and rejected petitioner's assertions as a basis for relief. *See* Mem. Op. & Order at 9-10. Petitioner's argument in his motion for reconsideration, thus, boils down to an unelaborated contention that the Court got it wrong the first time around. *See* Petr's Recon. Motion ¶ 7. Such a contention does not justify reconsideration of the Court's prior decision.

As before, petitioner fails to make any legitimate showing supporting a finding that the Guantanamo staff has been deliberately indifferent to petitioner's health. To the contrary, the record demonstrates that petitioner has been provided high-quality, comprehensive medical care. Petitioner, through his motion for reconsideration, has basically renewed his request that the Court undertake to second-guess that care, a step that is improper under the law and particularly unwarranted in this case.

Likewise, petitioner's arguments for production of petitioner's medical records do not warrant reconsideration of the Court's prior rejection of that request. As the Court previously noted, the request for records is improperly tied to a desire to use them "for the purpose of obtaining second opinions from outside medical practitioners." Mem. Op. & Order at 10. Petitioner claims that the Court's "characterization of the reasons behind Petitioner's request is incorrect." Petr's Recon. Motion ¶ 4. Petitioner states that the records are sought to ascertain petitioner's condition and "show . . . that he is not receiving proper medical care," claiming that he cannot demonstrate deliberate indifference and irreparable harm without the medical records. *See id.* ¶¶ 4-5.

Petitioner's argument, at bottom, is that Captain Sollock cannot be trusted, *i.e.*, that petitioner's medical records do not reflect what Captain Sollock says they do.  This not an appropriate basis upon which to seek reconsideration in this matter.  Captain Sollock is a physician and Captain in the U.S. Navy, who serves as the Task Force Surgeon for Joint Task Force-Guantanamo, and he has provided declarations under penalty of perjury.  There is no basis for the extraordinary step of rejecting out of hand the sworn declarations of such an officer, based upon the unsworn tale of a detainee, especially one who is held as an enemy combatant by the military during an ongoing war.  To require the production of medical records in such circumstances would essentially mean that any detainee who could concoct or imagine a sympathetic story would be able to force production of his medical records by military authorities.  Not only would such an arrangement ignore the burden of proof the law imposes upon a litigant who seeks injunctive relief, it is pregnant with the potential for mischief and the enabling of detainees' ability to impose, malevolently or otherwise, nuisance, burden, and unwarranted criticism upon military authorities, and it should be rejected.[9]

---

[9] Nor do, or should, the self-serving, subjective, and suggestive observations of petitioner's counsel, *see* Petr's Recon. Motion ¶ 5, change this conclusion.  As explained by Captain Sollock, recent examinations of petitioner by Guantanamo medical personnel are inconsistent with counsel's alleged observations.  *See* Second Sollock Decl. ¶¶ 4-5.  Petitioner's counsel, however, does not purport to be a medical expert, and she has admitted that she entered her recent meetings with petitioner with a willingness to believe her client and with the resulting view that he possibly suffers from serious liver disease, *see* Petr's Emerg. Motion for Access to Medical Records and For Emerg. Medical Treatment, Gorman Decl. ¶ 2.  Moreover, consideration of the record as a whole seems consistent with a propensity on petitioner's part for deceit, failed memory, or perhaps hypochondria.  This is apparent with respect to his description to his counsel of the medical care provided him so far; a performance for the benefit of counsel during meetings does not seem far-fetched.  In any event, petitioner's motion does not explain how counsel's observations demonstrate deliberate indifference in medical care warranting reconsideration of the Court's prior decision in this matter; at most, counsel want the medical records to investigate the issue further, *i.e.*, to obtain "second opinions from outside medical

Thus, petitioner has failed to demonstrate that reconsideration of the Court's prior conclusion that petitioner has failed to demonstrate a "substantial likelihood of success" is warranted.

## **CONCLUSION**

For the reasons stated above, as well in respondents' opposition to petitioner's prior motion for access to petitioner's medical records and for emergency medical treatment, petitioner's motion for reconsideration of the Court's October 2, 2006 Memorandum Opinion and Order should be denied.

Dated: October 16, 2006                              Respectfully submitted,

                                                    PETER D. KEISLER
                                                    Assistant Attorney General

                                                    DOUGLAS N. LETTER
                                                    Terrorism Litigation Counsel

                                                    [*signature block continued on next page*]

---

practitioners," a matter the Court has considered and rejected.  *See* Mem. Op. & Order at 10.

  /s/ *Terry M. Henry*
JOSEPH H. HUNT (D.C. Bar No. 431134)
VINCENT M. GARVEY (D.C. Bar No. 127191)
TERRY M. HENRY
JAMES J. SCHWARTZ
PREEYA M. NORONHA
ROBERT J. KATERBERG
ANDREW I. WARDEN
NICHOLAS J. PATTERSON
EDWARD H. WHITE
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W.
Washington, DC 20530
Tel: (202) 514-4107
Fax: (202) 616-8470

Attorneys for Respondents