UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ABDUL HAMID ABDUL SALAM AL-GHIZZAWI,<br><br>Petitioner,<br><br>v.<br><br>GEORGE W. BUSH, et al.,<br><br>Respondents. | Civil Action No. 05-2378 (JDB) |

## MEMORANDUM OPINION & ORDER

Petitioner Abdul Hamid Abdul Salam Al-Ghizzawi has moved for reconsideration of the Court's October 2, 2006, Memorandum Opinion & Order denying his emergency motion to compel access to medical records and to require emergency medical treatment. See Al-Ghizzawi v. Bush, No. 05-cv-2378 (D.D.C. Oct. 2, 2006) ("Al-Ghizzawi Mem. Op. & Order"). The facts underlying petitioner's original emergency motion are set forth fully in the Memorandum Opinion & Order. See id. at 2-6. The Court will only briefly review those facts here.

Petitioner is a Libyan citizen currently detained at the United States Naval Base in Guantanamo Bay, Cuba ("Guantanamo"). Id. at 1. He alleges that he is in ill health and that respondents have provided him with inadequate medical care. Id. at 2. In support of his emergency motion, petitioner submitted affidavits from two medical doctors who suggested additional medical tests they believe should be performed on petitioner. Id. at 5-6. Respondents submitted declarations in opposition to the emergency motion describing the medical care provided to detainees at Guantanamo generally and to petitioner specifically. Id. at 3-5. The

-1-

Court construed petitioner's emergency motion as a motion for a preliminary injunction. Id. at 6. As explained in the Memorandum Opinion, the Court concluded that petitioner has not demonstrated a likelihood of success on the merits of his claim because he has failed to show that his medical care at Guantanamo is deficient to the point of violating his rights, id. at 8-9, and that petitioner has not shown that he would suffer irreparable harm absent the requested relief, id. at 9-10. The Court accordingly denied the motion, and petitioner then immediately filed this motion for reconsideration on October 4, 2006.

There is no Federal Rule of Civil Procedure that expressly addresses motions for reconsideration. E.g., Computerized Thermal Imaging, Inc. v. Bloomberg, L.P., 312 F.3d 1292, 1296 n.3 (10th Cir. 2002); Lance v. United Mine Workers for Am. Pension Trust, 400 F. Supp. 2d 29, 31 (D.D.C. 2005). Courts typically treat motions to reconsider as motions to alter or amend a judgment under Federal Rule of Civil Procedure 59(e). E.g., Emory v. Sec'y of Navy, 819 F.2d 291, 293 (D.C. Cir. 1987); Lance, 400 F. Supp. 2d at 31. "'A Rule 59(e) motion is discretionary and need not be granted unless the district court finds that there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" Ciralsky v. Cent. Intelligence Agency, 355 F.3d 551, 671 (D.C. Cir. 2004) (quoting Firestone v. Firestone, 76 F.3d 1205, 1208 (D.C. Cir. 1996)). A Rule 59(e) motion "is not simply an opportunity to reargue facts and theories upon which a court has already ruled." New York v. United States, 880 F. Supp. 37, 38 (D.D.C. 1995). Nor is it "a vehicle for presenting theories or arguments that could have been advanced earlier." Burlington Ins. Co. v. Okie Dokie Inc., 439 F. Supp. 2d 124, 128 (D.D.C. 2006); see also Kattan v. District of Columbia, 995 F.2d 274, 276 (D.C. Cir. 1993).

Petitioner's arguments do not fall neatly into the Rule 59(e) framework. It is clear, however, that petitioner has not shown an intervening change in controlling law--indeed, petitioner's motion does even not make any arguments with respect to controlling law--and the Court sees no reason to reconsider its decision on that basis.[1] It is also clear that the supplemental affidavits of Dr. Jensen and Dr. Reichen, which petitioner has submitted to challenge the accuracy of the medical tests conducted on petitioner, present evidence that could have been advanced earlier. See Petr.'s Mem. Supp. Mot. Recons. ("Petr.'s Mem.") Ex. G (Suppl. Aff. of Dr. Juerg Reichen) ¶ 19; Petr.'s Mem. Ex. H. (Suppl. Aff. of Dr. Donald Jensen) ¶ 22. For example, the journal articles submitted in support of both affidavits were published in 2004 and 2005. See Suppl. Aff. of Dr. Juerg Reichen ¶¶ 20, 21; Suppl. Aff. of Dr. Donald Jensen ¶ 24.

Petitioner challenges the Court's irreparable-harm analysis on the basis of evidence that is arguably newly available. As noted in the Memorandum Opinion & Order, the "D.C. Circuit 'has set a high standard for irreparable injury. . . . The moving party must show [t]he injury complained of is of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm.'" Mem. Op. & Order at 9 (quoting Chaplaincy of Full Gospel Churches v. England, 454 F.3d 290, 297 (D.C. Cir. 2004)) (alteration in original). Petitioner asserts that the Court "overlooked the fact that the government concedes that Mr. Al-Ghizzawi has Hepatitis

---

[1] Petitioner argues that the Court incorrectly characterized his request for relief as being made for the purpose of obtaining a second medical opinion; instead, petitioner states that he requested the medical records and additional testing in order to demonstrate that he is not receiving adequate medical care. Petr.'s Mem. Supp. Mot. Recons. at 4-5. The Court is not persuaded that the difference in these characterizations of petitioner's purpose has any real significance. Moreover, under petitioner's reasoning, any person in custody would automatically be entitled to relief upon pleading allegations of inadequate medical care, a result inconsistent with the longstanding reluctance of courts to second-guess the medical care provided to prisoners by government officials. See Mem. Op. & Order at 3.

B and that Mr. Al-Ghizzawi has tuberculosis, but is not being treated for either condition." Petr.'s Mem. at 2.  But the impact of petitioner's Hepatitis B status on his medical treatment was fully considered in the Memorandum Opinion & Order.  See Mem. Op. & Order at 4, 5-6, 9.  The Court also noted in its opinion that petitioner was diagnosed with *latent* tuberculosis but, according to respondents, had refused treatment.  Mem. Op. & Order at 6 n.6 (citing Resp'ts' Opp'n Ex. 1 (Decl. of Captain Ronald L. Sollock, M.D., Ph.D. ("Sollock Decl.")) ¶ 13).

Petitioner now asserts that the Court "ignores the fact that [] Petitioner's counsel was not able to consult with Petitioner regarding the accuracy of these claims until after Petitioner's reply memorandum was due."  Petr.'s Mem. at 2.  Petitioner's counsel apparently did not review Captain Sollock's declaration with petitioner until September 19, 2006, six days after filing the reply memorandum in support of the emergency motion.[2]  See Petr.'s Mem. Ex. F (Aff. of H. Candace Gorman) ¶¶ 2-3.  Petitioner's counsel states that petitioner told her in the September 19th meeting that he had never been informed of his latent tuberculosis diagnosis and that he had never refused treatment for that diagnosis.  Id. ¶ 4.  Respondents, on the other hand, reassert that petitioner was specifically informed of both his latent tuberculosis diagnosis and his treatment options but has refused any form of treatment.  Resp'ts' Opp'n to Petr.'s Mot. to Recons. Ex.4 (Second Decl. of Capt. Ronald L. Sollock, M.D., Ph.D. ("2d Sollock Decl.")) ¶ 3.

The Court need not specifically resolve this issue because respondents also present

---

[2]The Court notes that prior to counsel's September 19, 2006, trip to Guantanamo, petitioner requested an extension of time to file a different reply with this Court in order to allow counsel to consult with Mr. Al-Ghizzawi regarding respondents' claims relevant to that other reply.  See [43] Petr.'s Mot. for Extension of Time to Reply to Resp'ts' Opp'n to Petr.'s Mot. to Compel Compliance (filed Sept. 18, 2006).  The Court granted the motion for an extension of time.  See Al-Ghizzawi v. Bush, No. 05-cv-2378 (D.D.C. Sept. 22, 2006) (Minute Order).

uncontroverted evidence leading the Court to reaffirm its earlier conclusion that petitioner has not sufficiently demonstrated irreparable harm.  Respondents present medical evidence that a diagnosis of latent tuberculosis indicates that the individual has been exposed to tuberculosis mycobacterium but has no symptoms or findings of active disease.[3]  2d Sollock Decl. ¶ 3(a).  Furthermore, respondents assert that petitioner did not have any symptoms of active tuberculosis at the time of his diagnosis.  Id. ¶ 3(b).  According to Captain Sollock, these symptoms include night sweats, cough, hemoptysis (coughing up blood), and weight loss.  Id.  Only one of these symptoms--weight loss--has been alleged by respondent, see Mem. Op. & Order at 2-3 (listing symptoms), and that allegation was rebutted by evidence stating that petitioner has gained over ten pounds during his detention, see id. at 3 (citing Sollock Decl. ¶ 11).  Respondent has not otherwise alleged that he currently has an active case of tuberculosis.  In other words, even assuming that petitioner is not being treated for his latent tuberculosis, the Court still cannot conclude that petitioner's health is in *immediate* danger from deficient medical treatment given the absence of any evidence of active tuberculosis.

Therefore, upon consideration of petitioner's motion and the entire record herein, and for the reasons stated above, it is this 2nd day of November, 2006, hereby

**ORDERED** that [49] petitioner's motion to reconsider is **DENIED**.

/s/ John D. Bates
JOHN D. BATES
United States District Judge

---

[3]Captain Sollock also explains that, "[a]lthough many people with latent Tuberculosis never develop active Tuberculosis," Guantanamo medical personnel recommend to detainees that they undergo nine months of treatment consisting of oral medication and Vitamin B6 supplements in order to destroy the tuberculosis mycobacterium.  2d Sollock Decl. ¶ 3(a).