IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ABDUL HAMID AL-GHIZZAWI**<br>    Detainee,<br>    Guantanamo Bay Naval Station<br>    Guantanamo Bay, Cuba;<br><br>*Petitioner,*<br><br>v.<br><br>**GEORGE W. BUSH**, *et al.,*<br><br>*Respondents.* | )<br>)<br>)<br>)<br>)<br>)  Civil No. 05-cv-02378<br>)<br>)  Judge John B. Bates<br>)<br>)<br>)<br>)<br>) |

### Notice of Intent to File DTA Petition in the Circuit Court of Appeals and Request for Stay and Abey Order

The petitioner, Abdul Al-Ghizzawi, through his attorney, H. Candace Gorman, notifies the Court that of the petitioner's intention to file a Petition pursuant to the Detainee Treatment Act of 2005 with the Court of Appeals for the District of Columbia. The DTA Petition is being filed in light of the statement of Justices Stevens and Kennedy on the denial of certiorari in *Boumediene v. Bush* regarding the exhaustion of available remedies under the DTA. 2007 WL 957363 (U.S., Apr. 2, 2007). The petitioner moves this Court to enter a "stay and abey" order while the DTA action is litigated in the appellate court. The DTA litigation will provide the petitioner and this Court requisite information regarding disputed jurisdictional questions pending before this Court, and may result in a remand to this Court based on the military's lack

Page 1   NOTICE OF DTA FILING IN THE CIRCUIT COURT OF APPEALS AND REQUEST FOR
         STAY-AND-ABEY ORDER



of initial jurisdiction over the petitioner, or lead to a limited remand to this Court for resolution of controverted facts, or render moot some or all of the claims pending before this Court.

A.  Where A Federal Habeas Petition Has Been Filed, And A Potential Remedy Remains To Be Exhausted, The Supreme Court Has Approved – And Under Circumstances Present Here Required – The Procedure Of Entering An Order Staying The Federal Habeas Proceeding And Holding The Case In Abeyance While The Potential Remedy Is Exhausted.

In *Rhines v. Weber*, 541 U.S. 269 (2005), the Supreme Court explicitly approved the stay-and-abey procedure in the context of federal habeas corpus proceedings. In that case, the prisoner had filed a mixed habeas petition in federal court – one containing both claims exhausted through the state court system and unexhausted claims. Given the major procedural risks of a dismissal order, the Court found that District Courts have discretion to enter stay-and-abey orders in the federal habeas case while the unexhausted claims are presented to the state court. The federal habeas corpus case is stayed and held in abeyance for a reasonable time while available state remedies are exhausted.

The *Rhines* court found three preconditions for, in effect, mandatory stay-and-abey. In the absence of intentional dilatory tactics by the petitioner, "it would likely be an abuse of discretion to deny a stay and to dismiss" a petition if the petitioner has good cause for the failure to exhaust and the unexhausted claims are potentially meritorious. *Rhines*, 544 at 278; *accord Pace v. DiGuglielmo*, 544 U.S. 408, 416-17 (2005). The conditions under which failure to stay-and-abey would constitute an abuse of discretion – no deliberate delay, good cause, and potentially meritorious claims – are abundantly present in this case.

First, the petitioner has done nothing to delay and everything to accelerate this case. The stay that has kept his case inactive, except for issues relating to access and attorney-client relations, resulted from the government's motion eighteen months ago. Council for petitioner's filed his petition for habeas corpus relief on December 9, 2005 Throughout the pleadings, the petitioner has repeatedly invoked the need for habeas relief to be prompt and has represented her client zealously. Unlike the death penalty cases that caused the Supreme Court concern in *Rhines*, every day of delay is disastrous for the petitioner.[1]

Second, there is good cause for the failure to exhaust: the potential remedy did not exist until after the habeas corpus petition was filed and did not purport to provide the habeas relief to which the petitioner was entitled at the time the habeas action was filed. In *Pace*, the Court noted that potential confusion regarding state remedies required equitable protections. 544 U.S. at 416. Those complexities are nothing compared to what Guantanamo detainees face. The questions left open in the Supreme Court's decision in *Rasul v. Bush*, 542 U.S. 466 (2004), which established a right to proceed under § 2241 at the time the petitioner submitted his documents, and the subsequent Detainee Treatment Act of 2005 and Military Commission Act of 2006, have resulted in major complexities. The petitioner, from another country, speaking another language as his native tongue, did not even have the potential DTA remedy prior to October 2006 because, as the Supreme Court held, the DTA did not apply retrospectively to habeas corpus petitions filed prior to the effective date of the statute. *Hamdan v. Rumsfeld*, 126 S.Ct. 2749, 2762-69 (2006). The petitioner had excellent reasons for not initiating the DTA procedures until the denial of certiorari in *Boumediene*.

---

[1] In *Rhines*, three Justices concurred, stating that stay-and-abey is required in the absence of proof of "intentionally dilatory litigation tactics." 544 U.S. at 279 (Stevens, J., concurring, joined by Justices Ginsburg and Breyer).

Third, the claims raised both in this Court and the DTA petition are meritorious. The extraordinary factual development in this case establishes that the Petitioner was subjected to two CSRTs, the first of which he was unanimously found to be an non enemy combatant. It was only after the Department of Defense violated it's own standards and procedures as well as the laws and Constitution of the United States by conducting a second CSRT that the defendant was found to be an enemy combatant. Although the government claimed that the second CSRT was based on new evidence that statement was untrue. The bottom line is simple: Petitioner was wrongly classified as an enemy combatant only after the Department of Defense abandoned its own rules and procedures and performed a make over CSRT so that the department could have Petitioner declared an enemy. In the event the case is remanded, or if the DTA procedures prove an inadequate substitute for constitutionally-required habeas corpus procedures, this Court should be in position to proceed immediately on issues related to the wrongful procedure involving two CSRT's.

Fourth, an argument that was not entertained by either the Supreme Court or the Circuit court raises equitable considerations that should be weighed prior to dismissing the Petitioner's habeas petition. Prior to each CSRT being convened, the prisoners were advised that his status review was not a substitute for his habeas rights. The following notice was read to each Petitioner: "The U.S. Government will give you an opportunity to contest your status as an enemy combatant. Your case will go before a Combatant Status Review Tribunal, composed of military officers. *As a matter separate from these Tribunals, United States courts have jurisdiction to consider petitions brought by enemy combatants held at this facility that challenge the legality of their detention.* You will be notified in the near future what procedures are available to challenge your

Page 4   NOTICE OF DTA FILING IN THE CIRCUIT COURT OF APPEALS AND REQUEST FOR
        STAY-AND-ABEY ORDER

detention in the U.S. courts." (*See* Exhibit A, "CSRT Notice to Detainees") (emphasis added). Petitioner was entitled to, and did rely on this notice, which conclusively binds the Respondents from asserting that the CSRTs were a substitute for habeas corpus review.

Under the controlling authority of *Rhines*, the Court should enter an order staying the case, as it has been stayed to date, and holding the disposition of the merits in abeyance pending the outcome of the Petition For Immediate Release And Other Relief Under The Detainee Treatment Act Of 2005.

**B.    Maintenance Of The Status Quo Is Necessary For Adequate Exhaustion Of The DTA Proceedings In The Court Of Appeals.**

In the statement accompanying the *Boumediene* order, two Justices stated: "Were the Government to take additional steps to prejudice the position of petitioners in seeking review in this Court, 'courts of competent jurisdiction,' including this Court, 'should act promptly to ensure that the office and purposes of the writ of habeas corpus are not compromised.'" 2007 WL 957363 (Justices Stevens and Kennedy, statement respecting the denial of certiorari).[2] Any government action to limit the current level of access by counsel to the petitioner severely prejudices both the DTA action and the habeas litigation. This Court should carefully protect the status quo by granting the stay-and-abey order to assure the petitioner is not prejudiced in his ability to litigate the DTA action and to preserve potential remedies before this Court.

The development of the necessary facts and the need for client consultation are basic to the attorney-client relationship. Under the ethical rules, the client must have the opportunity to advise the attorney of relevant facts, to provide direction in the litigation, and to participate in tactical and strategic decisions. To accomplish these ethical obligations under the circumstances of Guantanamo detention has been a challenge.[3] Any disruption of the status quo would severely injure the petitioner's ability to litigate the DTA proceedings and to maintain his separate claims for relief that are pending before this Court.

Under the facts of this case, where Petitioner already has pending an appeal regarding his medical records and treatment and has now been transferred to Camp 6 Counsel provides a life-line from despair that, if absent, will exacerbate the severe physical and mental suffering with serious and potentially fatal consequences.

This Court has pending many pleadings regarding the Court's jurisdiction and authority to grant relief to the petitioner. The denial of certiorari in *Boumediene* leaves unanswered predicate questions necessary to deciding the issues before the Court including: Does the DTA provide a forum for resolving issues regarding unlawful detention coextensive with traditional habeas corpus? If not, has the writ been unconstitutionally suspended or eliminated? Is the government taking "additional steps to prejudice the position of petitioners in seeking review of this Court" and, if so, should this Court "act promptly to ensure that the office and purposes of the writ of habeas corpus are not compromised"? On the underlying questions regarding elimination of the writ of habeas corpus, because the constitutional question is contingent on the effectiveness of the DTA procedures, this

---

[3]This Court received briefing and argument regarding these difficulties during the litigation of the filter team motion that resulted in the Court's decision in *Boumediene v. Bush*, 450 F.Supp.2d 25 (D.D.C. 2006).

Court has jurisdiction to determine its own jurisdiction. *Kircher v. Putnam Funds Trust*, 126 S.Ct. 2145, 2155 (2006) (a federal court's adjudicatory authority includes "its authority to determine its own jurisdiction"); *see also Ex parte Milligan*, 71 U.S. 2, 118, 131 (1866) (Court reviewed the underlying facts to determine that the predicates for military jurisdiction were lacking and granted writ of habeas corpus). The Court has insufficient information to answer a number of questions the DTA proceedings will answer. Further, if this Court eventually reaches the jurisdictional and constitutional questions, and rules adversely to the petitioner, the Court must provide an adequate record for appellate and Supreme Court review, which requires that the present case remain in place until after the petitioner has exhausted the DTA procedures. During that process, the government should be foreclosed from prejudicing the petitioner's ability to litigate – at the District Court or Circuit Court level – these questions of obvious and historical importance.

## Conclusion

For the foregoing reasons, this Court should enter an order preserving the status quo by continuing its stay of litigation going to the merits of the pending petition for a writ of habeas corpus and holding such litigation in abeyance pending the outcome of the petitioner's Petition For Immediate Release and Other Relief Under The Detainee Treatment Act of 2005.

RESPECTFULLY SUBMITTED April 9, 2007.

/s/ H. Candace Gorman
Attorney for Petitioner

H. Candace Gorman
Law Office of H Candace Gorman
542 S Dearborn,
Suite 1060
Chicago, IL 60605

Page 7    NOTICE OF DTA FILING IN THE CIRCUIT COURT OF APPEALS AND REQUEST FOR STAY-AND-ABEY ORDER

## Combatant Status Review Tribunal Notice to Detainees*

You are being held as an enemy combatant by the United States Armed Forces. An enemy combatant is an individual who was part of or supporting Taliban or al Qaida forces, or associated forces that are engaged in hostilities against the United States or its coalition partners. The definition includes any person who has committed a belligerent act or has directly supported such hostilities.

The U.S. Government will give you an opportunity to contest your status as an enemy combatant. Your case will go before a Combatant Status Review Tribunal, composed of military officers. This is not a criminal trial and the Tribunal will not punish you, but will determine whether you are properly held. The Tribunal will provide you with the following process:

1. You will be assigned a military officer to assist you with the presentation of your case to the Tribunal. This officer will be known as your Personal Representative. Your Personal Representative will review information that may be relevant to a determination of your status. Your Personal Representative will be able to discuss that information with you, except for classified information.

2. Before the Tribunal proceeding, you will be given a written statement of the unclassified factual basis for your classification as an enemy combatant.

3. You will be allowed to attend all Tribunal proceedings, except for proceedings involving deliberation and voting by the members, and testimony or other matters that would compromise U.S. national security if you attended. You will not be forced to attend, but if you choose not to attend, the Tribunal will be held in your absence. Your Personal Representative will attend in either case.

4. You will be provided with an interpreter during the Tribunal hearing if necessary.

5. You will be able to present evidence to the Tribunal, including the testimony of witnesses. If those witnesses you propose are not reasonably available, their written testimony may be sought. You may also present written statements and other documents. You may testify before the Tribunal but will not be compelled to testify or answer questions.

As a matter separate from these Tribunals, United States courts have jurisdiction to consider petitions brought by enemy combatants held at this facility that challenge the legality of their detention. You will be notified in the near future what procedures are available should you seek to challenge your detention in U.S. courts. Whether or not you decide to do so, the Combatant Status Review Tribunal will still review your status as an enemy combatant.

If you have any questions about this notice, your Personal Representative will be able to answer them.

[*Text of Notice translated, and delivered to detainees 12-14 July 2004]


Ex. A

A023

## CERTIFICATE OF SERVICE and NOTICE OF FILING

I, H Candace Gorman, hereby certify that on April 9, 2007, the Notice of Intent to File DTA Petition in the Circuit Court of Appeals and Request for Stay and Abey Order upon the following individuals as indicated:

*VIA filing the above listed document with the U. S. Department of Justice Litigation Security Section :*

Terry Henry
Andrew Warden
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, N. W.
Room 7144
Washington, D.C. 20530-000 1

/s/ H. Candace Gorman