**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **ABDUL HAMID ABDUL SALAM AL-GHIZZAWI**<br>**Detainee,**<br>**Guantánamo Bay Naval Station**<br>**Guantánamo Bay, Cuba;**<br><br>***Petitioner,***<br><br>*v.*<br><br>**GEORGE W. BUSH, *et al.*,**<br><br>***Respondents.*** | **Civil Action No. 05-cv-02378**<br><br>**Judge John B. Bates**<br><br>**Magistrate Judge Alan Kay** |

**PETITIONER'S OPPOSITION TO THE GOVERNMENTS' MOTION TO DISMISS AND REPLY IN SUPPORT OF HIS MOTION TO STAY AND ABEY**

Petitioner Al-Ghizzawi, through counsel, opposes the Government's Motion to Dismiss on the grounds that, under controlling Circuit and Supreme Court authority, this Court should continue the stay of the District Court proceedings, holding them in abeyance pending Mr. Al-Ghizzawi's exhaustion of remedies under the Detainee Treatment Act of 2005. The Government's Response to Al-Ghizzawi's Stay and Abey Motion and its Motion to Dismiss are based on an inaccurate reading of the effect of the Circuit Court's split decision in *Boumediene v. Bush*, and the split commentary from Supreme Court Justices on the denial of certiorari in that case. 476 F.3d 981 (D.C.Cir.), 127 S.Ct. 1478 (2007). The Government's jurisdictional argument only applies to frivolous claims which Mr. Al-Ghizzawi's claims clearly are not. As established by the split *Boumediene* opinions and the important questions deferred pending exhaustion,

Mr. Al-Ghizzawi's claim to habeas jurisdiction is substantial, especially given that this Court had jurisdiction at the time of his filing under *Rasul v. Bush*, 542 U.S. 466 (2004).

At the time Al-Ghizzawi filed his *habeas* petition, the District Court had jurisdiction to review the grounds for detention, as the Supreme Court held in *Rasul v. Bush*, 542 U.S. 466 (2004). Since that time, the Government has claimed that intervening statutes have deprived the District Courts of jurisdiction, a position Al-Ghizzawi contests based on an array of factual and legal arguments. The Government now requests that all orders protecting Al-Ghizzawi should be vacated (*with the exception of those parts of the Orders the Government wants to keep in place, see below at Section D*), and the underlying petition should be dismissed, without the opportunity to persuade this Court that the case is viable and to make a record for appellate and Supreme Court review. Al-Ghizzawi further hereby notifies this Court that he has filed a petition under the DTA in the District of Columbia Circuit Court of Appeals. (Appellate No. 07-1089)

The Government's position is untenable for the following reasons: A) under *United States v. United Mine Workers*, 330 U.S. 258, 290-91 (1947), while the Supreme Court rules on the jurisdictional questions, the lower courts have "authority, from the necessity of the case, to make orders preserv[ing] the existing conditions and the subject of the petition;" B) the *Boumediene* case, *Boumediene v. Bush*, 127 S.Ct. 1478 (2007), is not final nor is it dispositive given the explicit statement of Justices Stevens and Kennedy regarding the need to exhaust remedies, which is supported by citation to Supreme Court precedent as well as the subsequent filings in the Court of Appeals and the Supreme Court; C) under *Rhines v. Weber*, 544 U.S. 269 (2005), the procedure for

addressing a pending petition while remedies are exhausted is for the District Court to stay the proceedings and hold them in abeyance pending exhaustion; D) the authority relied upon by the Government is limited to frivolous jurisdictional claims, not the epic constitutional issues raised by statutes that purport to divest jurisdiction and disenfranchise an easily identifiable group of Muslims from access to the courts; E) the protective and other procedural orders are necessary to assure that "the office and purpose of the writ of habeas corpus are not compromised;" and F) Al-Ghizzawi is not bound by the record established to date in *Boumediene*.

**A. Under *United Mine Workers*, This Court Has Authority To Preserve The Status Quo While Jurisdictional Questions Are Litigated.**

On February 20, 2007, a split panel of the Court of Appeals decided combined cases involving aliens detained at Guantánamo, finding that post-*Rasul* statutes deprived courts of jurisdiction. *Boumediene v. Bush*, 476 F.3d 981 (D.C. Cir. 2007). Because those petitioners declined to seek review directly with the Circuit Court under the Detainee Treatment Act of 2005, the Court found that the "only recourse" was to vacate the District Court decision and dismiss the case for lack of jurisdiction. *Boumediene*, 476

F.3d at 994. The petitioners filed for a writ of certiorari and on April 2, 2007, the Supreme Court denied certiorari, with both a three-Justice dissent and a statement respecting the denial of certiorari. *Boumediene v. Bush*, 127 S.Ct. 1478 (2007).

In the statement accompanying the *Boumediene* order, two Justices stated: "Were the Government to take additional steps to prejudice the position of petitioners in

seeking review in this Court, 'courts of competent jurisdiction,' including this Court, 'should act promptly to ensure that the office and purposes of the writ of habeas corpus are not compromised.'" 127 S.Ct. 1478 (2007) (Justices Stevens and Kennedy, statement respecting the denial of certiorari).[1] The Justices' language echoes the long-established principle that, even if there is no jurisdiction, that ultimate question is for the Supreme Court, and that while the matter is under consideration, the courts have "authority from the necessity of the case to make orders to preserve the existing conditions and subject of the petition." *United Mine Workers*, 330 U.S. at 291 (quoting *United States v. Shipp*, 203 U.S. 563, 573 (1906) (Holmes, J.)). The Court of Appeals has not hesitated to apply these principles:

> Of course, whether or not there was jurisdiction to decide the merits, until the question of jurisdiction is determined, there was "authority from the necessity of the case to make orders to preserve the existing conditions and the subject of the petition . . . ." . . . Clearly there was "power to preserve existing conditions while . . . determining [the] authority to grant injunctive relief."

*In re President and Directors of Georgetown College*, 331 F.2d 1000, 1005 (D.C. Cir. 1964) (quoting *United Mine Workers*). This Court should carefully protect the status quo by maintaining the orders entered to date to assure Al-Ghizzawi is not prejudiced in his ability to litigate the DTA action; to preserve potential remedies before this Court; and to protect Mr. Al-Ghizzawi's safety and life.

The denial of certiorari in *Boumediene* leaves unanswered predicate questions

[1] Quoting *Padilla v. Hanft*, 547 U.S. 1062 (Kennedy, J., concurring in the denial of certiorari).

necessary to deciding issues in Al-Ghizzawi's case including: Does the DTA provide a forum for resolving issues regarding unlawful detention coextensive with traditional habeas corpus? If not, has the writ been unconstitutionally suspended or eliminated? Are the MCA and the DTA inapplicable given Al-Ghizzawi's jurisdictional arguments regarding the initial CSRT finding that he was not an enemy combatant and the illegal establishment of a second tribunal (under false pretenses) that was instituted solely as a face-saving measure to overturn the first tribunal and to find Al-Ghizzawi to be an enemy combatant, which would then foreclose the CSRT from constituting a competent tribunal to render any decision regarding his status? Is the Government bound by its promises, both written and oral, that Mr. Al-Ghizzawi was not required to participate in the CSRT and that it would have no effect on his ability to pursue a habeas corpus action in the federal courts? Is the Government taking "additional steps to prejudice the position of Al-Ghizzawi in seeking dismissal in this Court" and, if so, should this Court "act promptly to ensure that the office and purposes of the writ of habeas corpus are not compromised?" *Boumediene,* 127 S.Ct. 1478 (2007).

The motion to dismiss should be denied because this Court has insufficient information to answer a number of questions the DTA proceedings will answer. Further, if this Court eventually reaches the jurisdictional and constitutional questions, and rules adversely to Al-Ghizzawi, there must be an adequate record for appellate review and, if necessary, for the Supreme Court to decide whether to grant a writ of certiorari, all of which requires that the petition in the District Court remains in place until after Al-Ghizzawi has exhausted the DTA procedures. During that process, the

Government should be foreclosed from prejudicing Al-Ghizzawi's ability to litigate these questions – at both the District Court and Circuit Court level.

### B. The *Boumediene* Case Supports The Exhaustion Model Of Habeas Corpus Review, Which Does Not Impair Jurisdiction In The District Court During The Litigation.

Although the statement of Justices Kennedy and Stevens in *Boumediene* that, given "our practice of requiring the exhaustion of available remedies as a precondition to accepting jurisdiction over applications for the writ of habeas corpus," denial of certiorari was appropriate "at this time," the statement should not be construed as a signal for dismissal of Al-Ghizzawi's case. The Justices specifically expressed concern regarding maintenance of the status quo during the litigation: "Were the Government to take additional steps to prejudice the position of petitioners in seeking review in this court, 'courts of competent jurisdiction,' including this Court, 'should act promptly to ensure that the office and purposes of the writ of habeas corpus are not compromised.'"

The Government's reliance on Boumediene is misplaced for several reasons. First, the *Boumediene* petitioners' decision not to exhaust, coupled with Justice Stevens and Kennedy's explicit adoption of the exhaustion model based on *Ex parte Hawk*, 321 U.S. 114 (1944), support maintenance of the stay in this case while the DTA remedy is exhausted. Second, the jurisdictional questions have not been finally resolved because "as always, denial of certiorari does not constitute an expression of any opinion on the merits." *Boumediene*, 127 S.Ct. at 1478 (Stevens and Kennedy, JJ) (citing *Rasul*, 542 U.S. at 480-81). Third, Justice Stevens and Kennedy's citation to Supreme Court authority regarding the efficacy of the alternative remedies contemplates an underlying habeas

corpus case in which the petitioner can present such arguments to the District Court and, if necessary, the Circuit Court and Supreme Court.

As noted above, Al-Ghizzawi has already filed for DTA relief and filed with the Circuit Court his Motion To Govern Further Proceedings in his own appeal (Civil Action No. 06-5394) advising the Circuit Court of the Stay and Abey request filed herein and asking the Circuit Court to join his appeal to his newly filed DTA petition and enter an order that all procedural orders will remain intact and without prejudice to Petitioner's habeas claims, until it is determined whether or not the procedures under the DTA are an adequate substitute for habeas corpus. The Government has filed its own Motion to govern proceedings in Al-Ghizzawi's appeal, asking that the appeal be dismissed. The D.C. Circuit has not yet acted on the motions.

1. *Justices Stevens and Kennedy Explicitly, And The Circuit Court Implicitly, Adopted The Exhaustion Of Remedies Model For Habeas Relief.*

*Boumediene* does not control this case because, unlike the petitioners in that case, Al-Ghizzawi is exhausting his remedies under the DTA. The Circuit Court opinion expressly predicated its dismissal order on the petitioners' failure to utilize available remedies under the DTA. *Boumediene*, 476 F.3d at 994. Justices Stevens and Kennedy explicitly explained that "[d]espite the obvious importance of the issues," the Court was denying certiorari "at this time" in light of the Court's practice of requiring exhaustion of available remedies, citing *Ex parte Hawk*.

The citation to *Hawk* is telling. In that case, the petitioner filed for federal habeas corpus relief under circumstances, as in the present case, in which the effectiveness of

state remedies had not been established. The Supreme Court not only applied the exhaustion rule, but in addition held that the adequacy of the available remedy should be decided in the first instance by "the federal district court:"

> Where the state courts have considered and adjudicated the merits of his contentions, and this Court has either reviewed or declined to review the state court's decision, a federal court will not ordinarily reexamine upon writ of habeas corpus the questions thus adjudicated.....But where resort to state court remedies has failed to afford a full and fair adjudication of the federal contentions raised, either because the state affords no remedy.....or because in the particular case the remedy afforded by state law proves in practice unavailable or seriously inadequate...., a federal court should entertain his petition for habeas corpus, else he would be remediless. In such a case he should proceed in the federal district court before resorting to this Court by petition for habeas corpus.

321 U.S. at 118 (citations omitted). The exhaustion model anticipates that the ultimate questions regarding jurisdiction, which may depend in large part on the efficacy of the DTA remedy, will first be considered and decided in the District Court. The ultimate issues would then be preserved for appellate and Supreme Court review, if necessary.

2. *The Supreme Court Has Not Decided Any Questions Regarding The Jurisdiction Of This Court Or The Rights That Can Be Enforced Through Habeas Corpus Proceedings.*

The Government's claims regarding *Boumediene* ignore the simple reality that "as always, denial of certiorari does not constitute an expression of any opinion on the merits." *Boumediene*, 127 S.Ct. at 1478. As the three dissenting Justices opined, and as did Judge Rogers in the Circuit Court dissent, the constitutional ramifications of a statute that purports to disenfranchise petitioners in existing habeas corpus petitions are profound and of obvious importance. With the addition of Justices Stevens and Kennedy's statement, Al-Ghizzawi's petition should be fully considered, after

exhaustion, upon his unique facts and legal arguments, including but not limited to, the Government's utilization of two CSRT's to get the desired result of finding Al-Ghizzawi to be an enemy combatant; promising Mr. Al-Ghizzawi, in writing, that he did not have to attend his CSRT and would still have the right to bring his claim to the U.S. federal courts; and other factual and legal issues. The *Boumediene* case does not finally resolve the jurisdictional questions in Al-Ghizzawi's case.[2]

3. *The Jurisdictional Questions Regarding Habeas Corpus Cannot Be Resolved Until The Adequacy Of The DTA Remedy Becomes Known.*

Questions regarding the suspension and elimination of the writ of habeas corpus require consideration of whether alternative remedies provide protection coextensive with the Great Writ. The *Boumediene* statement on certiorari clearly stated, with citation to *Marino v. Ragen*, 332 U.S. 561 (1947), that, if the DTA remedy is "inadequate," the Court is prepared to address the merits of the habeas corpus claims. Further, the Court stated that, in the interim, the Government should take no additional steps "to prejudice the position of petitioners" in seeking review. By maintaining the present case in the District Court, the Court is in a position to "act promptly to ensure that the office and purposes of the writ of habeas corpus are not compromised."

The exhaustion model from the *Boumediene* litigation requires that the District Court proceeding remain in place for potential post-exhaustion litigation.

[2] In fact, the *Boumediene* case does not even finally decide the questions for the *Boumediene* petitioners, given that the mandate has not issued and the cases are still subject to motions and briefing.

**C. Because Al-Ghizzawi is Exhausting Available Remedies The District Courts Have Discretion To Enter Stay-And-Abey Orders, Which Are Mandatory By Analogy To *Rhines v. Weber*, 541 U.S. 269 (2005).**

Given the need to exhaust remedies under the Detainee Treatment Act of 2005, as Al-Ghizzawi argued in his motion for a stay-and-abey order, the District Court proceedings should continue to be stayed and held in abeyance pending completion of the Al-Ghizzawi's DTA review directly in the Circuit Court. In *Rhines*, 544 U.S. 269, the Supreme Court explicitly approved the stay-and-abey procedure in the closely analogous context of federal habeas corpus proceedings. In *Rhines*, the prisoner filed a mixed habeas petition in federal court, which contained both claims exhausted through the state court system and unexhausted claims. Given the major procedural risks of a dismissal order, the Court found that district courts have discretion to enter stay-and-abey orders in the federal habeas case while the unexhausted claims are presented to the state court. The federal habeas corpus case is stayed and held in abeyance for a reasonable time while available state remedies are exhausted.

The *Rhines* court found three preconditions for, in effect, mandatory stay-and-abey. In the absence of intentional dilatory tactics by the petitioner, "it will likely be an abuse of discretion for a district court to deny a stay and to dismiss" a petition if the petitioner has good cause for the failure to exhaust and the unexhausted claims are potentially meritorious. *Rhines*, 544 at 278; *accord Pace v. DiGuglielmo*, 544 U.S. 408, 416-17 (2005). The conditions under which failure to stay-and-abey would constitute an abuse of discretion – no deliberate delay, good cause, and potentially

meritorious claims – are abundantly present in this case. Al-Ghizzawi has been attempting to move forward, while the Government has obtained stays of over 18 months. Unlike the death penalty cases that caused the Supreme Court concern in *Rhines*, every day of delay prejudices Al-Ghizzawi.[3]

As more fully discussed in Al-Ghizzawi's Motion for Stay and Abey, there is good cause for the failure to exhaust until now: the potential remedy did not exist until after the habeas corpus petition was filed and did not purport to provide the habeas relief to which the petitioner was entitled at the time the habeas action was filed. In *Pace v DiGuglielmo*, the Supreme Court noted that potential confusion regarding state remedies required equitable protections. 544 U.S. 408, 416 (2005). Al-Ghizzawi and other Guantánamo detainees face complexities that are similar and the potential harm is far worse. The questions left open in the Supreme Court's decision in *Rasul*, which established a right to proceed under § 2241 at the time Al-Ghizzawi submitted his documents,[4] and the subsequent Detainee Treatment Act of 2005 and Military Commission Act of 2006, have resulted in major complications. Al-Ghizzawi did not even have the potential DTA remedy prior to October 2006 because, as the Supreme

---

[3] In *Rhines*, three Justices concurred, stating that stay-and-abey is required in the absence of proof of "intentionally dilatory litigation tactics." 544 U.S. at 279 (Souter, J., concurring, joined by Justices Ginsburg and Breyer).

[4] The construction of the § 2241 statute in *Rasul* stated what the statute had always meant. *Bousley v. United States*, 523 U.S. 614, 625-26 (1998) (judicial construction of a statute is an authoritative statement of what the statute meant before as well as after the decision giving rise to that construction) (Stevens, J., concurring); *Rivers v. Roadway Express, Inc.*, 511 U.S. 298, 311 n.12 (1994) ("[W]hen this court construes a statute, it is explaining its understanding of what the statute has meant continuously since the date when it became law.").

Court held, the DTA did not apply retrospectively to habeas corpus petitions filed prior to the effective date of the statute. *Hamdan v. Rumsfeld*, 126 S.Ct. 2749, 2762-69 (2006).

The Government's attempt to distinguish *Rhines* fails because the Government attempts to interpret *Rhines* to mean less than it actually says. The Government contends that the power of the District Court to stay-and-abey under *Rhines* is limited only to those instances when failing to stay-and-abey would cause a statute of limitations to run that would preclude the petitioner from refiling (Mot. at 6-7). This was the factual predicate in *Rhines*, not its holding. Nothing in *Rhines* limited the district court's equitable power to stay-and-abey only to concerns regarding statutes of limitation. Rather, *Rhines* held that the equitable powers the District Court possessed before enactment of the statute of limitations continued to exist and were not extinguished by the statute. *Rhines*, 544 U.S. at 276. As in *Pace*, the concern warranting stay-and-abey was to protect the petitioner from impairment of future exercise of habeas corpus rights. *See Omar v. Harvey*, 479 F.3d 1 (D.C. Cir. 2007) (affirming preliminary injunction barring transfer of prisoner that the District Court entered to preserve its jurisdiction over the habeas corpus petition of an American citizen detained in a military facility in Iraq).

The Government's attempt to distinguish *Rhines* also fails because the exhaustion required by *Hawk* operates, as does the exhaustion required by the statute in *Rhines*. Further, the procedural obstacles that dismissal would create under 28 U.S.C. § 2254 are no different – although arguably more profound in this case – than those facing

detainees in Guantánamo cut off from contact with their lawyers. *Rhines* is controlling authority regarding stay-and-abey procedures while remedies are being exhausted.

**D. The Government's Main Case On Jurisdiction Only Applies To Frivolous Claims, Not The Substantial Issues Addressed In The Present Case.**

The Government places primary reliance on *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998), for the unremarkable proposition that jurisdiction is a threshold question. The Government ignores the preceding language in *Steel Co.* that supports this Court's jurisdiction to maintain the action as long as a legitimate controversy exists that has not been resolved on the merits by the Supreme Court.

The starting point of *Steel Co.* is that "the district court has jurisdiction if 'the right of the petitioners to recover under their complaint will be sustained if the Constitution and laws of the United States are given one construction and will be defeated if they are given another.'...unless the claim 'clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous.'" 523 U.S. at 90 (quoting *Bell v. Hood*, 327 U.S. 678, 682-83, 685 (1946)). Only when the Supreme Court has made an adverse ruling on the merits is dismissal for want of subject matter jurisdiction appropriate: "Dismissal for lack of subject-matter jurisdiction because of the inadequacy of the federal claim is proper only when the claim is 'so insubstantial, implausible, *foreclosed by prior decisions of this Court*, or otherwise completely devoid of merit as not to involve a federal controversy." *Id*. at 90 (quoting *Oneida Indian Nation v. County of Oneida*, 414 U.S. 661,

666 (1974) (emphasis added)). The *Boumediene* denial of certiorari is emphatically not a ruling on the merits.

The jurisdictional issues are obviously not frivolous: the courts have been split on the constitutional issues at each level of the litigation: the District Courts split, leading to the two-to-one *Boumediene* opinion, resulting in the three-way fracture in the *Boumediene* denial of certiorari. Seldom has this country faced weightier issues about the meaning of our Constitution. The main case upon which the Government relies establishes that the motion to dismiss should be denied while remedies are exhausted.

Ironically, the Government's own Motion recognizes the Court's continuing jurisdiction while the merits are exhausted, litigated, and appealed. In footnote 15, the Government points out that the Protective Order *should survive dismissal* for several reasons, citing to the case upon which Al-Ghizzawi relies – *United States v. United Mine Workers*, 330 U.S. 258 (1947)(Motion at 8-9). However, the Government only wants to maintain the protective order to a limited degree, and only for the benefit of the Government. As argued above, *United Mine Workers* establishes that the District Court has the authority throughout the litigation to maintain the status quo by enforcing the protective order and otherwise ensuring that "the office and purposes of the writ of habeas corpus are not compromised." Despite the Government's attempt, nothing in *United Mine Workers* suggests that the proposition to maintain the status quo is only a tool available to the Government.

This Court retains the power to decide its own jurisdiction in the first instance. *See Kircher*, 126 S. Ct. at 2155; *United States v. Ruiz*, 536 U.S. 622, 628 (2002). While the

efficacy of the DTA remedies are determined, it is premature for this Court to determine the dispositive questions. Meanwhile, this Court should follow the stay-and-abey norm established in *Rhines*; then if the case is not mooted by the DTA proceedings, provide the petitioner the opportunity to make his record, to present his claims, and to receive a decision based on the facts and law of his individual case.

### E. The Protective and other Procedural Orders Are Necessary To Assure That "The Office And Purpose Of The Writ Of Habeas Corpus Are Not Compromised."

The dismissal of the District Court proceedings, with its protective orders and ruling on the filter team, would constitute exactly the type of prejudice to Al-Ghizzawi's ability to litigate that Justices Kennedy and Stevens instructed that all of the courts should guard against. This Court properly addressed issues preliminary to ultimate disposition throughout this litigation. The order of greatest concern in this case involves Al-Ghizzawi's ability to communicate with his counsel and counsel's access to Al-Ghizzawi. Just as the District Courts addressed issues preliminary to ultimate disposition throughout this litigation, this Court's orders on the protective order should remain fully intact pending these appeals and the exhaustion of DTA remedies.

The Government complains that the protective order they agreed to is onerous (Motion at 7-8) except, of course, for those provisions that they want this court to recognize remain intact (see, section D above). This Court has been supervising the protective order for more than eighteen months in Mr. Al-Ghizzawi's case. If difficulties arose beyond the powers of the parties to work out, the protective order

included powerful mechanisms for the Government to exhaust, up to and including, contempt and criminal prosecution. The Government's failure to raise and/or exhaust the available remedies should foreclose action based on the Government's complaints. The Government's simultaneous claim that access would not be abruptly terminated (but would continue under a different protective order), is not only speculative but totally beside the point. The Government's desire to substitute protective orders is not a reason to dismiss this action instead of following the Supreme Court approved stay-and-abey procedure.

Access between Al-Ghizzawi and counsel is critical in this case. The complexities of the litigation need to be explained to Mr. Al-Ghizzawi who is suffering from post-torture psychological distress and serious (and untreated) medical conditions that have impaired his ability to concentrate and focus, thus necessitating lengthy and frequent visits. The protective order should remain intact, especially given that the Court of Appeals should have the option of continuing to administer the DTA litigation under the auspices of this Court's order.

The issues regarding application of the habeas corpus statute, the statutes purporting to limit the writ, and the availability of the common law or constitutional writ of habeas corpus remain to be resolved once Mr. Al-Ghizzawi's remedies are exhausted. During the pendency of such decisions, the District Court's authority to issue preliminary procedural orders should remain undiminished.

**F. *Boumediene D*oes Not Establish The Record To Which Al-Ghizzawi Should Be Bound Because He Is Exhausting Available Remedies And Other Legal Theories May Be Available On The Facts Of His Case.**

The Government's request for dismissal fails to recognize the various detainees' unique factual settings and resulting legal issues. The *Boumediene* cases involve certain allegations and legal theories; those cases do not control all the potential issues to be raised by Al-Ghizzawi. *Texas v. Cobb*, 532 U.S. 162, 169 (2001) ("Constitutional rights are not defined by inferences from opinions which did not address the question at issue."); *see also United States v. Booker*, 543 U.S. 220, 239-242 (2005) (limiting *stare decisis* effect of cases where constitutional issue was not raised or resolved). The most profound difference for Al-Ghizzawi will be the validity of the Government's decision to conduct two CSRT's, the second under false pretenses in an illegal maneuver to overturn the first CSRT finding, and the effect to be given promises, orally and in writing, that Mr. Al-Ghizzawi did not have to participate in the CSRT process and that he would maintain the right to pursue action in the federal court. In addition, the resolution of the now-open question of the scope and efficacy of the DTA remedy remains to be seen and will only be known once the exhaustion of remedies is completed. Until then, the factual predicate for evaluation of the legal issues is lacking, rendering the cases unripe for the fully developed review anticipated by Justices Kennedy and Stevens in the *Boumediene* statement accompanying the denial of certiorari.

The *Boumediene* cases did not resolve all potential legal issues regarding the purported statutory disenfranchisement of the jurisdiction that existed at the filing of

the habeas petitions under *Rasul*. The post-exhaustion litigation, if not mooted by relief granted under the DTA, should involve legal approaches that the *Boumediene* majority did not address and resolve. If *Rasul* means anything, the constitutional validity of the DTA statute must be determined in light of the post-DTA litigation and must address Al-Ghizzawi's unique claims, including challenges under the bill of attainder, equal protection, due process, equitable estoppel, habeas corpus, and *ex post facto* clauses.

**Conclusion**

Al-Ghizzawi's habeas corpus rights are far from finally decided: the Supreme Court has yet to speak on the merits, and Al-Ghizzawi has not had his individual facts and legal arguments heard. The Government's motion to undo the carefully crafted measures by the District Court to balance competing interests is not only premature, but also unnecessarily places Al-Ghizzawi in danger of losing access to counsel and all other procedures carefully developed in this Court. Under governing Supreme Court precedent, the status quo should be preserved while the case is litigated: under *United Mine Workers*, the courts have "authority from the necessity of the case to make orders to preserve the existing conditions and the subject of the petition;" under *Rhines*, the mechanism for permitting exhaustion of remedies without prejudice to habeas corpus rights is to stay the District Court action and hold it in abeyance for a reasonable time for the DTA direct actions to be litigated.

Dated this 30th day of April, 2007.

Respectfully Submitted,

/s/ H. Candace Gorman

H. Candace Gorman

H. Candace Gorman
Law Office of H Candace Gorman
542 S Dearborn,
Suite 1060
Chicago, IL 60605
312.427.2313

**CERTIFICATE OF SERVICE**

I, H. Candace Gorman, certify that I today caused a true and accurate copy of PETITIONER'S OPPOSITION TO GOVERNMENTS' MOTION TO DISMISS AND REPLY IN SUPPORT OF HIS MOTION TO STAY AND ABEY to be served upon the following persons through service by virtue of filing this document with the Court Security Office:

Terry Henry, Esq., Senior Trial Attorney
Andrew I. Warden, Esq., Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., NW, Room 7144
Washington, DC 20530

This 30th day of April, 2007.

/s/ H. Candace Gorman
Counsel for Petitioner

Law Office of H. Candace Gorman
H. Candace Gorman (IL Bar #6184278)
Elizabeth Popolis (IL Bar #6285095)
542 S. Dearborn Street - Suite 1060
Chicago, IL 60605
Tel: (312) 427-2313