# EXHIBIT A

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Decision and Order -- |
| | ) | Motion to Dismiss for |
| v. | ) | Lack of Jurisdiction |
| | ) | |
| SALIM AHMED HAMDAN | ) | |

The Defense has moved this Military Commission to dismiss all charges and specifications against the accused on the basis that the Commission lacks Jurisdiction over him. The Government opposes the motion. Both parties have filed written briefs and attached various documents to their briefs without objection. These documents attached to the motions have been admitted without objection by either side. The Commission heard oral argument in open court on 4 June 2007.

The Court finds that the following facts are true:

1. Mr. Hamdan (hereinafter "the accused") was captured in Afghanistan in November of 2001 and thereafter came into the custody of the United States. The accused has been held by the United States, either in Afghanistan or in Guantanamo Bay, since that time.

2. On February 7, 2002 the President issued a Memorandum entitled "Humane Treatment of al Qaeda and Taliban Detainees" in which he concluded that "Taliban detainees are unlawful combatants and therefore do not qualify as Prisoners of War under Article 4" of the Geneva Conventions.

3. On 7 July 2004, the Deputy Secretary of Defense published an Order Establishing Combatant Status Review Tribunals (CSRT). This Order defined "enemy combatant" as "an individual who was part of or supporting Taliban or al Qaeda forces, or associated forces that are engaged in hostilities against the United States or its coalition partners. This includes any person who has committed a belligerent act or has directly supported hostilities in aid of enemy armed forces."

4. The Order directed that a Tribunal be held for each detainee to determine whether he was an "enemy combatant" using that definition. The Tribunals were also directed to determine whether 'the detainee is properly detained as an enemy combatant."

5. On 2 October, 2004, the accused appeared before a CSRT at Guantanamo Bay and participated in such a hearing. The Tribunal received evidence and determined that he was a part of or associated with Al-Qaeda forces, and was properly detained as an "enemy combatant." The CSRT was not charged with determining, and therefore did not determine that the accused is an "alien unlawful enemy combatant."

6. Charges under the MCA were referred against this accused on 10 May 2007, alleging that he is subject to the jurisdiction of this tribunal as an "alien unlawful enemy combatant".

7. The accused challenges the jurisdiction of the Court on the basis that the Government cannot show, nor has it determined in a competent tribunal, that the accused is subject to the jurisdiction of the Commission. He claims, therefore that he is entitled to the protections that are accorded to a Prisoner of War until such a determination is made.

SUMMARY OF THE LAW

1. On 17 October, 2006, the Military Commissions Act (MCA) became law. The MCA limits the jurisdiction of Military Commissions to offenses made punishable by that Act or the law of war when committed by "an alien unlawful enemy combatant". 10 USC §948d(a). RMC 201(b)(1) is in accord.

2. The MCA defines "unlawful enemy combatant" to mean "(i) a person who has engaged in hostilities or who has purposefully and materially supported hostilities against the United States or its co-belligerents who is not a lawful enemy combatant (including a person who is part of the Taliban, al Qaeda, or associated forces); or "(ii) a person who, before, on, or after the date of the enactment of the Military Commissions Act of 2006, has been determined to be an unlawful enemy combatant by a Combatant Status Review Tribunal or another competent tribunal established under the authority of the President or the Secretary of the United States." 10 USC §948a(1).

3. The MCA makes a CSRT determination, whenever made, that a detainee is an "alien unlawful enemy combatant" dispositive of that issue for purposes of determining whether a detainee is subject to the jurisdiction of a Military Commission. Such a determination must be made by a CSRT or another competent tribunal established by the President or the Secretary of Defense. 10 USC §948d(c).

4. A Military commission is a court of limited jurisdiction. RMC 201(a)(1).

5. The burden is on the Government to show by a preponderance of the evidence that the accused is subject to the Jurisdiction of this Tribunal. RMC 905(c)(1);(2)(B).

DISCUSSION AND DECISION

The Government invites the Court to find that the 2004 determination that the accused is an "enemy combatant', coupled with the President's 2002 determination that members of al-Qaeda or the Taliban are unlawful combatants, amount to a finding that the accused is subject to the jurisdiction of this court. The Court declines to do so for the following reasons:

    1. The 2004 CSRT determination that the accused is an "enemy combatant" was made for the purposes of determining whether or not he was properly detained, and not for the purpose of determining whether he was subject to trial by military commission.

2. The CSRT finding was made using a different standard than the one the MCA establishes for determining unlawful enemy combatant status. The definition of "enemy combatant" used by the 2004 CSRT is less exacting than the definition of "unlawful enemy combatant" prescribed in the MCA. The CSRT could have found a civilian not taking an active part in hostilities, but "part of" or "supporting" Taliban or al Qaeda forces engaged in hostilities to be an "enemy combatant". Yet the MCA limits this Court's jurisdiction to those who actually "engaged in hostilities or who . . . purposefully and materially supported hostilities." The CSRT did not apply this definition, and its finding therefore does not support the jurisdiction of this Tribunal.

3. The CSRT finding preceded the MCA by two years. The accused's participation in the CSRT may well have been much different had he realized its finding would be used to impose criminal jurisdiction upon him before a Military Commission.

4. The President's determination applied to members of al-Qaeda as a group, and did not represent an individualized determination that this accused supported or engaged in hostilities.

The MCA offers another route to a finding of jurisdiction: a finding by a CSRT "before, on, or after" the enactment of the MCA, that an accused is an alien unlawful enemy combatant. The October 2004 CSRT finding was before the enactment of the MCA, but it found only that the accused was an enemy combatant.

There may well be evidence in the Government's possession that could readily support a determination that the accused is subject to the jurisdiction of this Court. The Government may be able to easily demonstrate that jurisdiction by reopening the 2004 CSRT, or by organizing a different one, and directing it to clearly decide the accused's status. He is either entitled to the protections accorded to a Prisoner of War, or he is an alien unlawful enemy combatant subject to the jurisdiction of a Military Commission, or he may have some other status. The Government having failed to determine, by means of a competent tribunal, that the accused is an "unlawful enemy combatant" using the definition established by Congress, it has not shown, by a preponderance of the evidence, that the accused is subject to the jurisdiction of this Commission.

The Defense Motion to Dismiss all Charges and Specifications, for lack of jurisdiction, is GRANTED, without prejudice.

So Ordered this 4th day of June, 2007.

Keith J. Allred
Captain, JAGC, US Navy
Military Judge

3

# EXHIBIT B

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA** | } } } } | Order on Jurisdiction |
| v | } } | |
| **OMAR AHMED KHADR** a/k/a "Akhbar Farhad" a/k/a "Akhbar Farnad" a/k/a "Ahmed Muhammed Khahi" | } } } } } | **04 June 2007** |

1. A military commission is a court of limited jurisdiction. The jurisdiction is set by statute – the Military Commissions Act of 2006 (MCA).

2. Section 948d establishes the jurisdiction of a military commission. 948d(a) states:

    (a) JURISDICTION.—A military commission under this chapter shall have jurisdiction to try any offense made punishable by this chapter…when committed by an alien unlawful enemy combatant.

3. Section 948d(b) specifically states that military commissions "shall not have jurisdiction over lawful enemy combatants."

4. Thus, in the MCA, Congress denominates for the purpose of establishing jurisdiction two categories of enemy combatants – lawful and unlawful. A military commission only has jurisdiction to try an unlawful enemy combatant.

5. Further, in Section 948d(c), Congress stated that a finding by a Combatant Status Review Tribunal (CSRT) that a person is an unlawful enemy combatant is dispositive for purposes of jurisdiction by military commissions.

6. In considering Section 948d, it is clear that the MCA contemplates a two-part system. First, it anticipates that there shall be an administrative decision by the CSRT which will establish the status of a person for purposes of the MCA. The CSRT can find, for MCA purposes, that a person is a lawful enemy combatant or an unlawful enemy combatant.

7. Second, once the CSRT finds that a person is an unlawful enemy combatant, the provisions of the MCA come into play. Such person may have charges sworn against him, those charges may be referred to a military commission for trial, and a military commission may try him. A strict reading of the MCA would appear to require that, until such time as a CSRT (or other competent tribunal) makes a finding that a person is an unlawful enemy combatant, the provisions of the MCA do not come into play and such person may not be charged, charges may not be referred to a military commission for trial, and the military commission has no jurisdiction to try him.

8. There is, of course, the counter-argument. The military commission itself is a competent tribunal (948d(c)) to determine if a person brought before it is an unlawful enemy combatant. While appealing, this argument has two major flaws:

    a. First, in order to make the determination, the military judge would have to conduct a mini-trial to decide if the person is an unlawful enemy combatant. Or would s/he? Perhaps, since this determination might require factual determinations, the panel would have to make it. Congress provided in the MCA for many scenarios – none anticipated that the military commission would make the lawful/unlawful enemy combatant determination.

    b. Second, a person has a right to be tried only by a court which he knows has jurisdiction over him. If the military commission were to make the determination, a person could be facing trial for months, without knowing if the court, in fact and in law, had jurisdiction.

9. Persons familiar with the court-martial system might state that jurisdiction is always assumed by the court-martial and it is attacked only by motion. That is true, but a court-martial is a different creature than a military commission. A soldier is in court in uniform with her first sergeant and company commander (who most likely preferred the charges) sitting in the courtroom. DD Form 458, the Charge Sheet, contains the following information in Block I – Personal Data: Name of accused, SSN, Grade or Rank, Pay Grade, Unit or Organization, Initial Date and Term of Current Service, Pay Per Month, Nature of Restraint of Accused, and Date(s) Imposed. So when a military judge at Fort Bragg looks at the Charge Sheet and the accused (Who is in uniform.), she knows that Private First Class William B. Jones is a member of Bravo Company, 3rd Battalion (Airborne), 325th Parachute Infantry Regiment, 82nd Airborne Division, Fort Bragg, North Carolina. She knows how much he is being paid, if he has been restrained, when he came on active duty this tour, and by comparing the unit to the name of the accuser in Block III – Preferral – she can see if it was PFC Jones' company commander who preferred the charges.

10. Contrast this with the information on MC Form 458 in this case. The military judge is told that the name of the accused is Omar Ahmed Khadr. Three aliases are given. And, the last four of an unidentified acronym, the ISN, are given. There is nothing on the face of the charge sheet to establish or support jurisdiction over Mr. Khadr, except for a bare allegation in the wording of the Specifications of the Charges

11. The military judge is not ruling that no facts could be properly established concerning Mr. Khadr which might fit the definition of an unlawful enemy combatant in Section 948a(a) of the MCA. The military judge is ruling that the military commission is not the proper authority, under the provisions of the MCA, to determine that Mr. Khadr is an unlawful enemy combatant in order to establish initial jurisdiction for this commission to try Mr. Khadr.

12.  The military judge is not ruling that Mr. Khadr may not, if his case is referred to trial after a proper determination, attack those facts in the elements of the offenses referred which might combine to show him to be an unlawful enemy combatant.  Such an attack is a proper part of a military commission.

13.  The military judge is not ruling that the charges against Mr. Khadr must be resworn.  That would seem to be the more prudent avenue to take, but that issue is not currently before this commission.

14.  If there were no two-step process required to try a person under the MCA, then a prosecutor could swear charges, the convening authority could refer charges, and a military commission could try a person who had had no determination as to his status whatsoever.  That is not what Congress intended to establish in the MCA.

16.  The charges are dismissed without prejudice.


Peter E. Brownback III
COL, JA, USA
Military Judge

3