Cleared for Public Filing

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                                )
**ABDUL HAMID ABDUL SALAM AL-GHIZZAWI**          )
    **Detainee,**                               )
    **Guantanamo Bay Naval Station**            )
    **Guantanamo Bay, Cuba;**                   )
                                                )   **Civil Action No. 05-cv-02378**
                   ***Petitioner*,**  )
                                                )   **Judge John B. Bates**
          ***v.***                          )
                                                )   **Magistrate Judge Alan Kay**
**GEORGE W. BUSH,** *et al.,*                    )
                                                )
             ***Respondents.***  )
_____)

## EMERGENCY MOTION FOR RULE TO SHOW CAUSE AND OTHER RELIEF

Now comes the Petitioner, Abdul Hamdi Al-Ghizzawi and asks this court to enter a Rule to Show cause against Respondents for violations of the Protective Order, for an Injunction against further violations and to require the respondents to arrange for an immediate telephone conversation between Mr. Al-Ghizzawi and counsel in order immediately repair any damage to the attorney client relationship between Mr. Al-Ghizzawi and his counsel caused by the respondents violations of the Protective Order, for the following reasons:

1.      Under Exhibit A Section IV subsection A, to the Revised Protective Order the privilege team is to review for contraband legal mail within two days of receipt and forward the mail to Guantanamo. Within two days of

receipt of the mail from the privilege team that mail is to be delivered to the detainee.

2.      On August 15th counsel received a letter from Mr. AL-Ghizzawi dated August 7th, 2007 in which he related that in the week prior he finally received a letter from counsel dated June 13th 2007.

3.      During the month of August counsel sent five letters to the privilege team one on August 15th and two on August 16th and two later in the month. On September 11th Counsel received a letter from Mr. AL-Ghizzawi, stating that he has not received any letters from counsel since her July visit except for the June 13th letter.  In his letter Mr. Al-Ghizzawi outlined his depression over the fact that it appears counsel must not want to represent him any further.

4.      In addition, at counsel's last visit to the base in July 2007, counsel was told of a "new rule."  The new rule is that counsel is no longer allowed to bring in any legal mail in Arabic without first receiving a "stamp" of approval. Counsel subsequently learned that the stamp of approval could only be obtained by allowing an Arabic translator, at the base, read the legal mail. This new rule violates the clear reading of the amended protective order (Ex. A, Section V) Section B outlines the rules for mail sent by detainees to counsel and provides that the mail will be sent to the secure facility within 2 business days of receipt.

5.      During counsel visits to the base counsel for Mr. AL-Ghizzawi always

brings to her meetings every letter that she has written to her client (since

the last visit) and every letter that her client has written to her (since her last

visit) so that she can make sure all letters are accounted for (they usually are

not). When told in July of this "new rule" counsel protested the policy both

to the guard and to the military lawyer who was present. After the officials

confirmed that they would not allow her to bring in the materials despite

her protest counsel determined that she was between a rock and a hard

place counsel and reluctantly, and under protest, turned over her legal mail

and allowed the translator to read her attorney client letters.

6.      Counsel watched as the translator stood and read each and every

letter, in detail, and then to counsel's astonishment the translator

announced that the letters were not legal mail but were in fact "personal

letters".  After being assured by counsel, in no uncertain terms, that the

letters were in fact legal mail that had been sent through the legal mail

system and through the privilege team, the translator *relented and allowed*

counsel to bring in the legal mail.

7.      Surely this Court in entering the Protective Order never envisioned

counsel's letters would be subject to the scrutiny of translators. In fact,

under the protective order even the privilege team itself is not supposed to

read the correspondence only search for physical contraband.

8.      In December of 2006 Mr. AL-Ghizzawi was moved to Camp 6. Camp 6

is modeled after a Super Max prison. In addition to not having seen or

talked to his wife and young daughter in almost six years he is rapidly

losing his mind as he sits in total isolation. He rarely sees direct sunlight

and has no access to fresh air except those times when he is placed in a 4 X 4

outdoor cage for "recreation time". During Mr. Al-Ghizzawi's 2 hours per

day of "recreational time" (which, on alternating days, is in the middle of

the night), Al-Ghizzawi is placed in a cage where he can sometimes see

other prisoners but is punished if he tries to touch or greet them. There is no

shade in the "recreation" cage which sits out in the blistering sun of

Guantánamo (unless of course it is night time, then he just sits in the dark if

he bothers to go out). Mr. Al-Ghizzawi is compelled to complain to get so

much as clean clothes. He is denied privacy when he uses the toilet; even

female guards can see him. He is always cold in the air conditioned facility

as are his food and drinks. He has no blanket, only a plastic cover to warm

himself. He has no socks and the thermal shirts that are allowed to the

detainees are taken away for the least infraction of the "rules". (Mr. Al-

Ghizzawi had his thermal shirt taken away when he had toilet paper in his

pocket at shower time and did not exit the shower immediately upon the

call of the guard) He eats every cold meal alone.

9.      Counsel for Mr. Al-Ghizzawi has attempted to visit him

approximately every other month to monitor his deteriorating health in a

thus far futile effort to convince the various courts and/or his military jailers to provide adequate medical treatment for Mr. Al-Ghizzawi and to move him out of the notorious Camp 6 where the cruel and inhuman isolation conditions of that camp are clearly aggravating Mr. Al-Ghizzawi's already frail state.  During counsel's last visit to see Mr. Al-Ghizzawi during the second week of July 2007, Mr. Al-Ghizzawi was in such pain and discomfort that he could barely walk. Mr. Al-Ghizzawi confided to counsel that, in addition to his other maladies, he is now also suffering from mental health issues after more than eight months in total isolation. Mr. Al-Ghizzawi is allowed only one book per week…. (Mostly books he has already read).

10.     As a result of the unfathomable and inhumane treatment that Mr. Al-Ghizzawi is subjected to on a daily basis, by not only being extremely ill and uncared for medically, but placed in the cruel confines of Camp 6 the only thing Mr. Al-Ghizzawi has to look forward to are occasional censored letters from family, letters from counsel and the every other month visits from counsel. The emotional impact to Mr. Al-Ghizzawi in thinking that his lawyer has now abandoned him could be the last straw for this wrongly incarcerated individual.[1]

---

[1] Respondent convened two Combat Status Review Tribunals (CSRTs) for Mr. Al-Ghizzawi, the first time classifying him as a **non-enemy combatant**. After the *first* Combatant Status Review Tribunal ("CSRT") determined on November 23rd 2004 that Al-Ghizzawi was *not* properly classified as an "enemy combatant," Matthew Waxman,

11.    Counsel has been approved for a visit to the base during the week of September 24th however Mr. Al-Ghizzawi would not know this fact since he has not been receiving letters from counsel.

WHEREFORE, counsel asks this court to enter a rule to show cause and to require the government to follow the protective order both in getting letters to and from detainees in a expeditious fashion but also order the government to cease and desist its new policy of invading the attorney

---

the Assistant Secretary of Defense for Detainee Affairs, ordered the Panel to try again, evidently until the panel achieved the desired result, i.e. a finding that Al-Ghizzawi *was* an enemy combatant. When the panel refused to "try again", a second CSRT panel was set up in January, 2005. That panel determined on the identical evidence found insufficient by the first CSRT panel, that Mr. Al-Ghizzawi *was* properly classified as an 'enemy combatant." In June 2007 Lt. Col. Stephan Abraham provided an affidavit to the Supreme Court in a successful Motion to Reconsider the denial of Certiorari in *Boumediene v. Bush,*---S.Ct.---, 2007 WL 1854132, 75 USLW 3705, 75 USLW 3707 (U.S. Jun 29, 2007) (NO. 06-1195). In his affidavit Lt. Col. Abraham described not only the failed CSRT process and the pressure put on the CSRT panels to find the prisoners "enemy combatants" but he also described in detail the only panel that he sat on (panel 23) and the paucity of evidence against that detainee. It turns out that the detainee was Mr. Al-Ghizzawi. As Lieutenant Colonel Abraham declared in his affidavit, "On one occasion, I was assigned to a CSRT panel with two other officers, an Air Force Colonel and an Air Force Major, the latter understood by me to be a judge advocate. We reviewed the evidence presented to us regarding the recommended status of a detainee. *All of us found the information presented to lack substance."* (*emphasis added)* Lt. Col. Abraham went on to state "On the basis of the paucity and weakness of the information provided both during and after the CSRT hearing, *we determined that there was no factual basis for concluding that the individual should be classified as an enemy combatant"* (Id. at ¶23, *emphasis supplied).*  Lieutenant Colonel Stephen Abraham testified before the House Armed Services Committee of Congress on July 26th 2007, and further described the evidence that has kept Mr. Al-Ghizzawi in prison all these years as "garbage." (*Upholding the Principles of Habeas Corpus for Detainees, 2007: Hearing before the House Armed Services Committee*, 110th Cong., 1st Sess. (2007) (statement of Lieutenant Colonel Stephen Abraham, U.S. Army Reserve))

client privilege by allowing translators… or anyone for that matter… to read the attorney client communications prior to allowing counsel to bring that legal mail into her meetings with her client.  Counsel also asks this Court to Order the government to arrange for an immediate phone call between counsel and Mr. Al-Ghizzawi so that she can explain to him that she has not stopped representing him, that she has been writing to him and that she will be visiting him on September 25th and 26 and for such other and further relief as this Court deems just.

Dated:        September 12, 2007

<div style="margin-left:40%">

Respectfully Submitted,
Counsel for Petitioner

/s/ H. Candace Gorman
  H. Candace Gorman

</div>

LAW OFFICE OF H. CANDACE GORMAN
H. Candace Gorman (IL Bar #6184278)
542 S. Dearborn St., Suite 1060
Chicago, IL 60605
(312) 427-2313

## CERTIFICATE OF SERVICE

I, H. Candace Gorman, certify that I today caused a true and accurate copy of EMERGENCY MOTION FOR RULE TO SHOW CAUSE AND OTHER RELIEF to be served upon the following persons through service that automatically occurs by virtue of my electronic filing of the above listed document:

> Terry Henry, Esq., Senior Trial Attorney
> Andrew I. Warden, Esq., Trial Attorney
> U.S. Department of Justice
> Civil Division, Federal Programs Branch
> 20 Massachusetts Ave., NW, Room 7144
> Washington, DC  20530

This 12th day of September, 2007.

/s/ H. Candace Gorman
Counsel for Petitioner

LAW OFFICE OF H. CANDACE GORMAN
H. Candace Gorman (IL Bar #6184278)
542 S. Dearborn Street -  Suite 1060
Chicago, IL 60605
Tel:  (312) 427-2313