IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ABDUL HAMID ABDUL SALAM AL-GHIZZAWI, | ) ) ) ) | |
| Petitioner, | ) ) | |
| v. | ) ) | Civil Action No. 05-2378 (JDB) |
| GEORGE W. BUSH, *et al.*, | ) ) | |
| Respondents. | ) ) ) | |

**RESPONDENTS' OPPOSITION TO PETITIONER'S EMERGENCY
MOTION FOR RULE TO SHOW CAUSE AND OTHER RELIEF**

Respondents hereby oppose petitioner's emergency motion for rule to show cause and other relief (dkt. no. 72).

Petitioner's motion raises complaints about counsel access to the petitioner and seeks various forms of relief that go far beyond the scope of the protective order entered in this case. Both because petitioner filed his motion in an untimely manner and in violation of an important local rule, and because Congress has decided that this Court lacks jurisdiction to adjudicate such claims, the motion should be denied.

On its merits, the motion should be denied as well. First, petitioner raises vague allegations concerning the timing of delivery of legal mail. This claim is without merit inasmuch as the timing concerns raised by petitioner are not governed by the protective order on which he purports to rely.

Second, petitioner's counsel unfairly, and without conferring in advance with respondents' counsel, raises stale complaints about a contraband inspection that occurred over two months ago at Guantanamo Bay. Contrary to petitioner's counsel's allegations, the

protective order permits guards at Guantanamo Bay to conduct a routine inspection of petitioners' counsel for physical and written contraband prior to entry into restricted areas of Guantanamo Bay. Further, in instances where documents are written in a foreign language and not immediately recognizable as legal documents, Guantanamo reasonably and appropriately provides linguists to assist the guards with contraband inspections. Thus, contrary to petitioner's contentions, personnel at Guantanamo Bay are authorized to conduct contraband inspections in this manner, consistent with the protective order entered in this case.

For these reasons, as discussed further below, petitioner's motion should denied.

## ARGUMENT

### I.   Petitioner's Motion Should Be Denied Because Petitioner's Counsel Failed To Bring This Motion In A Timely Fashion And Violated Local Civil Rule 7(m).

As a threshold matter, the "emergency" nature of petitioner's motion is a product of petitioner's own making. The motion's prejudicial failure to comport with basic rules of motion practice, by itself, requires its dismissal.

Petitioner's motion raises vague allegations about events that allegedly occurred at Guantanamo Bay over two months ago. *See* Petitioner's Motion at 2. Instead of raising this matter with respondents' counsel in a timely fashion, petitioner's counsel apparently made the strategic choice to file this "emergency" motion only a few days before her next scheduled trip to Guantanamo Bay. This motion could have been filed weeks ago. The tactic of waiting until the last minute to surprise respondents with an "emergency" motion should not be countenanced. *Cf. CarrAmerica Realty Corp. v. Kaidanow,* 321 F.3d 165 (D.C. Cir. 2003) ("Laches applies where there has been an unfair and prejudicial delay by a plaintiff in bringing an action.").

Because petitioner did not pursue this matter with diligence, but instead waited over two months to seek "emergency" relief, by which time it clearly would have become difficult, at best, for respondents to reconstruct the events about which petitioner complains, petitioner's motion should be denied on this basis alone. *See* 11A Wright, Miller & Kane, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 2946 (West 1995 & Supp.) ("Any unnecessary delay . . . may be viewed as inconsistent with a claim that plaintiff is asserting great injury or, in the case of preliminary injunctive relief, that there is an urgent need for immediate relief.").[1]

Further, petitioner's counsel did not confer with respondents prior to filing this motion, as required by Local Civil Rule 7(m).[2] The violation of this rule is not merely technical in this case; rather, the lack of notice and timing of petitioner's filing has prejudiced respondents. The purpose of the local rule is to allow litigants to resolve or narrow disputed issues in order to prevent unnecessary litigation as well as wastes of time and effort. *See National Shopmen Pension Fund v. Folger Adam Security, Inc.*, 274 B.R. 1, 2 n.1 (D.D.C. 2002). Had petitioner's counsel conferred with respondents about this matter in a timely fashion, respondents could have investigated these issues more closely in time to when they supposedly arose and perhaps

---

[1] In the alternative, even if petitioner's counsel's inaction does not, alone, bar the relief sought here, it most certainly tips the balance of equities decidedly against petitioner's request. *See Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 506-07 (1959) (request for injunctive relief speaks to equitable power of court).

[2] Local Civil Rule 7(m) provides the following:

> Before filing any nondispositive motion in a civil action, counsel shall discuss the anticipated motion with opposing counsel, either in person or by telephone, in a good faith effort to determine whether there is any opposition to the relief sought and, if there is opposition, to narrow the areas of disagreement. A party shall include in its motion a statement that the required discussion occurred, and a statement as to whether the motion is opposed.

worked with counsel to narrow or clarify the disputed issues in advance of court intervention.[3] Instead, the motion was filed on the on the eve of counsel's next visit to Guantanamo Bay, without proper notice, in an apparent effort to force respondents to respond (and this Court to rule) on an expedited basis. This violation of Rule 7(m) should result in denial of petitioner's motion. *See Ellipso, Inc. v. Mann*, 460 F. Supp. 2d 99, 102 (D.D.C. 2006) (denying motion on basis of failing to comply with Local Civil Rule 7(m)); *Alexander v. FBI*, 186 F.R.D. 185, 187 (D.D.C. 1999) (same).

## II. The Court Lacks Jurisdiction To Grant The Relief Requested By Petitioner.

Beyond the equities, the Court also lacks jurisdiction to grant the emergency injunctive relief requested by petitioner. *See Boumediene v. Bush*, 476 F.3d 981 (D.C. Cir. 2007), *cert. granted*, 127 S. Ct. 3078 (June 29, 2007). Specifically, the Court lacks jurisdiction to award petitioner the various forms of injunctive relief requested in the motion – all of which extend beyond the terms of the protective order governing counsel access in this case. *See* Petitioner's Motion at 6-7 (requesting, *inter alia*, immediate phone call with petitioner, order requiring "expeditious" delivery of mail, and order prohibiting translators from assisting with contraband inspections).

On October 17, 2006, the Military Commissions Act of 2006 ("MCA") was enacted. *See* Pub. L. No. 109-366, 120 Stat. 2600. The MCA amended the habeas statute, 28 U.S.C. § 2241,

---

[3] As Magistrate Judge Kay noted in his attached opinion in *Said v. Bush*, 05-CV-2385 (RWR) (dkt. no. 54) (attached as Exhibit 1), "When disputes between counsel and guards arise as to the types of materials that may be permitted in meetings with a detainee, as they frequently do, the Staff Judge Advocate (SJA) is often able to resolve the issue immediately. Respondents' counsel also work with the SJA to address such disputes." *See* Slip op. at 3-4 (footnote omitted).

adding a subsection (e) to provide that "[n]o court, justice, or judge shall have jurisdiction" to consider either (1) habeas petitions filed by aliens detained by the United States determined to be enemy combatants or awaiting such a status determination, or (2) any other action "relating to any aspect of the detention, transfer, treatment, trial, or conditions of confinement" of an alien who is or was so detained, except for the exclusive review mechanism in the Court of Appeals created under the Detainee Treatment Act of 2005 ("DTA") for addressing the validity of the detention of such an alien.[4]  *See* MCA § 7(a).  This new amendment to § 2241 took effect on the date of enactment and applies specifically "to all cases, without exception, pending on or after the date of the enactment of this Act which relates to any aspect of the detention, transfer, treatment, trial, or conditions of detention of an alien detained by the United States since September 11, 2001."  *Id.* § 7(b).

On February 20, 2007, the Court of Appeals held in *Boumediene* that the MCA plainly applies to all cases filed by aliens detained as enemy combatants, including pending habeas petitions such as this one, and withdraws all District Court jurisdiction over such cases, including both habeas and non-habeas claims.  *See* 476 F.3d 981, 986-88 & n.1; *id.* at 994 ("Federal courts have no jurisdiction in these cases."). The Court of Appeals also held that the withdrawal of habeas jurisdiction over pending cases did not violate the Suspension Clause because the alien detainees held at Guantanamo have no constitutional rights and because the constitutional right to seek habeas review does not extend to aliens held at Guantanamo.  *Id.* at

---

[4] *See* DTA § 1005(e)(2)-(3) (as amended by MCA §§ 9-10), Publ. L. No. 109-148, 119 Stat. 2680.  Section 1005(e)(2) of the DTA, as amended, states that the D.C. Circuit "shall have exclusive jurisdiction to determine the validity of any final decision of a Combatant Status Review Tribunal that an alien is properly detained as an enemy combatant," and it further specifies the scope and intensiveness of that review.

988-94. Consequently, the Court of Appeals (1) ordered that the district courts' decisions on appeal be vacated and (2) dismissed the cases on appeal for lack of jurisdiction. *Id.* at 994.

The Supreme Court granted certiorari in *Boumediene* on June 29, 2007. *See Boumediene v. Bush*, 75 U.S.L.W. 3707 (June 29, 2007). However, at least while *Boumediene* remains pending before the Supreme Court, the law of this Circuit remains settled: under the MCA, federal district courts do not have jurisdiction over cases brought by aliens at Guantanamo Bay detained as enemy combatants, and such aliens do not have constitutional rights.[5] Under settled rules governing the precedential effect of appellate rulings, regardless of what might happen at some point in the future in the course of the *Boumediene* litigation, this Court has no choice but to act in accordance with the decision in that case. *See Maxwell v. Snow*, 409 F.3d 354, 358 (D.C. Cir. 2005) ("this Court is bound to follow circuit precedent until it is overruled either by an *en banc* court or the Supreme Court"); *Chambers v. United States*, 22 F.3d 939, 942 n.3 (9th Cir. 1994) ("In this circuit, once a published opinion is filed, it becomes the law of the circuit until withdrawn or reversed by the Supreme Court or an en banc court."), *vacated on other grounds*, 47 F.3d 1015 (1995). *See also Vo Van Chau v. U.S. Dep't of State*, 891 F. Supp. 650, 654 (D.D.C. 1995) (holding that district court was bound by principle of *stare decisis* to abide by a Court of Appeals decision even in absence of effective mandate). Activity in the Supreme Court short of a reversal does not diminish the binding nature of the D.C. Circuit's *Boumediene* decision. As expressed by Judge Henderson in *Ayuda*,

---

[5] On July 19, 2006, the Court stayed this case pending resolution of the *Boumediene* appeals. *See* Minute Order of that date.

> Nor is it relevant that another circuit has ruled differently on the jurisdictional question or that the United States Supreme Court has granted *certiorari* on the question. Unless and until [the D.C. Circuit's earlier opinion] is reversed or overruled by the United States Supreme Court or by this court *en banc*, [the earlier opinion] remains the law of this circuit and no amount of hardship the appellees may suffer as a consequence can confer jurisdiction on the district court.

*Ayuda, Inc. v. Thornburgh*, 919 F.2d 153, 154 (D.C. Cir. 1990) (Henderson, J., concurring).

Furthermore, the MCA constitutes a jurisdictional bar to the relief that petitioner seeks even aside from the question pending before the Supreme Court in *Boumediene*. Even if the Supreme Court were to reverse the Court of Appeals' holding that section 7 of the MCA eliminates federal jurisdiction over pending petitions for habeas corpus, 476 F.3d at 986, 994, another aspect of the MCA would nevertheless preclude this Court from granting an order extending to the non-habeas items of relief sought on the present motion. A holding by the Supreme Court that the MCA's removal of federal court jurisdiction over habeas petitions is unenforceable – which is all that the petitioners in *Boumediene* are seeking – would not affect the independent provision of the MCA which expressly bars any claims regarding other non-habeas matters "relating to any aspect of detention." *Compare* 28 U.S.C. § 2241(e)(1) (added by MCA 7(a)) ("No court, justice, or judge shall have jurisdiction to hear or consider an application for a writ of habeas corpus filed by or on behalf of an alien detained by the United States who has been determined by the United States to have been properly detained as an enemy combatant or is awaiting such determination.") *with* 28 U.S.C. § 2241(e)(2) (added by MCA 7(a)) ("[with the exception of Detainee Treatment Act proceedings initiated in the Court of Appeals,] no court, justice, or judge shall have jurisdiction to hear or consider *any other action* against the United States or its agents relating to any aspect of the detention, transfer, treatment, trial, or conditions

of confinement [of alien enemy combatant detainees]") (emphasis added).  Because the relief requested by petitioner in this motion falls under section (e)(2), even if the Supreme Court were to invalidate subsection (e)(1), that decision would have no effect on the jurisdictional obstacle most relevant here.

In light of these jurisdictional considerations, the Court should deny petitioner's requested relief.

### III. Petitioner's Request For An Injunction Mandating Expedited Delivery Of Legal Mail Lacks Merit.

On its merits as well, petitioner's motion should be denied.  Petitioner improperly seeks an injunction compelling expedited delivery of legal mail to and from Guantanamo Bay.  This request should be denied because it falls outside the scope of the governing protective order entered in this case.  *See In re Guantanamo Detainee Cases*, 344 F. Supp. 2d 174 (D.D.C. Nov. 8, 2004).[6]  The Revised Procedures for Counsel Access to Detainees at the U.S. Naval Base in Guantanamo Bay, Cuba, ("Access Procedures"), which are annexed to the protective order as Exhibit A, set certain terms and conditions regarding delivery of legal mail sent to and from counsel to detainees.  The terms of this order were adopted by Senior Judge Joyce Hens Green after the parties had engaged in lengthy negotiations, after certain issues had been litigated, and after Judge Green considered a proposed protective order and counsel access procedures and made her own revisions to them.  Contrary to petitioner's counsel's position, the Access Procedures do not contain any rules governing the time or manner of by which legal mail is

---

[6] The Court entered the protective order, as well as certain supplemental orders, in this case on June 13, 2006.  *See* Minute Order of that date.

-8-

delivered to Guantanamo Bay. *See* Access Procedures § IV.A.3 (requirement that privilege team must "forward" approved legal mail to Guantanamo within two business days of receipt of mail from counsel); § IV.A.4 (requirement that Guantanamo personnel shall deliver legal mail to detainee within two business days of receipt from privilege team). The absence of a requirement governing the transit time for mail traveling between the privilege team in the Washington, D.C., area and Guantanamo Bay in Cuba is reasonable because transportation of mail to and from Guantanamo Bay is outside respondents' control and, moreover, Guantanamo Bay is a military base located overseas and outside of regular mail channels. Petitioner's counsel, nonetheless, raises complaints about delays regarding the delivery of mail sent in June 2007 as well as mail sent more recently in mid-August 2007. *See* Petitioner's Motion at 2. Because such complaints fall outside of the scope of the protective order, the Court lacks authority to grant the relief that petitioner seeks. *See id.* at 6 (requesting an order "getting letters to and from detainees in an expeditious fashion").[7] Further, the Court lacks jurisdiction to amend the protective order in a manner requested by petitioner, *see supra*, and such revisions are unnecessary in light of carefully crafted procedures already in place in the protective order for detainees to communicate with their counsel.

    In any event, the petitioner in this case has not been deprived of access to legal mail. Even from what is alleged in petitioner's papers it appears that petitioner has received some written communication from his counsel over the last few months. Therefore, there is no factual

---

[7] Petitioner's counsel does not allege and certainly has not established any entitlement to injunctive relief based on non-compliance with the requirement in the Access Procedures that legal mail must be delivered by personnel at Guantanamo Bay within two business days following receipt of the mail from the privilege team.

or legal basis for the Court to grant petitioner's counsel's request for an emergency phone call with petitioner. *See* Access Procedures § VIII (explaining that phone call requests are approved at the discretion of the Commander, JTF-Guantanamo). Moreover, petitioner's counsel is scheduled to meet with petitioner at Guantanamo Bay next week (September 24-27, 2007) and those meetings will provide petitioner's counsel with ample opportunity to discuss any appropriate matters directly with petitioner.

### IV. Petitioner's Counsel Request For An Injunction Barring Linguists From Participating In Contraband Inspections At Guantanamo Bay Should Be Denied.

Petitioners' motion also seeks an extraordinarily order, contrary to the terms of the protective order, limiting the authority of Guantanamo personnel to search petitioners' counsel and their belongings prior to conducting in-person meetings with detainees at Guantanamo Bay. Specifically, petitioner's counsel objects to the presence of a linguist to assist the guards that conduct contraband inspections of visiting counsel. As explained below, petitioner's objection lacks merit because Guantanamo Bay personnel have the authority to conduct contraband inspections of visiting counsel, including with the assistance of appropriate linguists.

With respect to in-person meetings between counsel and detainees at Guantanamo, the Access Procedures provide that counsel "shall bring only legal mail, writing utensils and paper into any meeting with a detainee unless counsel has received prior approval from the Commander, JTF-GTMO." *Id.* § V.A. Further, the Access Procedures mandate that all "[w]ritten and oral" communications with detainees during these meetings, "including all documents brought into a meeting with a detainee," must not include

-10-

> information relating to any ongoing or completed military, intelligence, security, or law enforcement operations, investigations, or arrests, or the results of such activities, by any nation or agency or current political events in any country that are not directly related to counsel's representation of that detainee; or security procedures at GTMO (including names of U.S. Government personnel and the layout of camp facilities) or the status of other detainees, not directly related to counsel's representation.

*Id.* § V.B; *see also id.* § IV.A.7 (same restriction applies to legal mail sent by counsel to detainees). This prohibition was instituted because permitting such information to be introduced into the detainee population at Guantanamo, *inter alia*, could threaten security by causing unrest or disruption among the enemy combatant detainees, who have a motivation and purpose to resist their confinement and cause harm or death to the United States personnel who presently confine them. *See, e.g.*, *Bismullah v. Gates*, 2007 WL 2067938 at *10 (D.C. Cir. July 20, 2007), *reh'g pending*.

In recognition of security and force-protection concerns such as these, the Access Procedures include a series of security procedures governing counsel's access to detainees during their visits to Guantanamo Bay. *Id.* § X. Prior to conducting interviews with detainees, security personnel at Guantanamo have the authority to "perform a contraband inspection of counsel and translators/interpreters using metal detectors as well as a physical inspection of counsel's bags and briefcases and, if determined necessary, a physical inspection of his/her person." *Id.* § X.D; *see also id.* § X.G (counsel may be inspected and searched at conclusion of meeting with detainee). The purpose of these searches is to preclude prohibited forms of contraband from entering the detainee population. *See id.* § X.B ("Contraband is not permitted in JTF-Guantanamo"). This authority is clearly provided by the Access Procedures, consistent with the general right and responsibility of military officials charged with the safe and secure

-11-

detention of enemy combatants during a time of war to undertake appropriate security measures. *See Cafeteria & Rest. Workers Union, Local 473 v. McElroy*, 367 U.S. 886, 890 (1961) (commanders of military installations have prerogative and responsibility, grounded in history and the constitutional authority of the Executive, to control access to their command area for purposes of good order and security); *cf. Spear v. Sowders*, 71 F.3d 626, 630 (6th Cir. 1995) (en banc) (prison officials have "great[] leeway" to conduct searches of visitors).

      Further, in deference to the military authorities charged with maintaining security at Guantanamo and in recognition of the various forms of contraband, the Access Procedures do not define the term "contraband" in specific terms. Instead, the Access Procedures provide an illustrative list of materials that counsel are prohibited from bringing to detainees, absent approval from Guantanamo. *Id.* ("Examples of contraband include, but are not limited to, weapons, chemicals, drugs, and materials that may be used in an escape attempt. Contraband also includes money, stamps, cigarettes, writing instruments, etc."). In addition to physical contraband, the Access Procedures also prohibit various types of non-privileged written contraband from being brought into meetings with detainees. Such prohibited written materials include messages to the detainee from persons other than counsel, *see* § V.A., as well as documents containing information "relating to any ongoing or completed military, intelligence, security, or law enforcement operations, investigations, or arrests, or the results of such activities, by any nation or agency or current political events in any country that are not directly related to counsel's representation of that detainee; or security procedures at GTMO (including names of U.S. Government personnel and the layout of camp facilities) or the status of other detainees, not directly related to counsel's representation." *See* §V.B. Given the prohibition in

the Access Procedures with respect to both physical and written materials, Guantanamo personnel have the authority to search for such contraband pursuant to their authority to perform contraband inspections of counsel prior to meetings with detainees.[8]  *See* Access Procedures § X. Consistent with this authority, and given the potential for non-English language documents into be introduced to the detainee population (*i.e.*, documents that the guards cannot read or understand), it is certainly reasonable and appropriate for guards to utilize linguists to assist in conducting contraband inspections.

To be sure, respondents recognize the potential attorney-client privilege concerns involved with any contraband inspections of petitioner's counsel.  But such inspections may be conducted consistent with the terms of the Access Procedures and Magistrate Judge Kay's decision in *Said v. Bush*, 05-CV-2385 (RWR) (dkt. no. 54) (attached as Exhibit 1).  In *Said,* Judge Kay denied a motion raising similar allegations that guards' close reading of counsel's legal materials violated the protective order and impermissibly burdened the attorney-client relationship.  Notably, neither party in that case nor Judge Kay "question[ed] the right of security personnel at Guantanamo Bay to conduct searches for physical or written contraband" and, as

---

[8] In *Bismullah v. Gates*, 2007 WL 2067938 (D.C. Cir. July 20, 2007), *reh'g pending on other grounds*, the Court of Appeals, "[w]ithout expressing any view as to whether the attorney-client privilege applies in this context," adopted respondents' proposed protective order regime in the DTA litigation authorizing the privilege team to perform close content review of legal mail in order to ensure petitioner's counsel's correspondence does not include information prohibited by the terms of the protective order.  *See id.* at *10-11.  The Court of Appeals declined to adopt the protective order entered in the Guantanamo Bay district court habeas cases because "past breaches of the [district court protective order] by some counsel for detainees justify the Government's proposal to narrow the topics about which all counsel may correspond with a detainee." *Id.* at *10.  Although the petitioner in this case has a DTA case pending in the Court of Appeals, he has chosen not to pursue relief with respect to the issues raised in this motion in that case.  *See Al Ghizzawi v. Gates*, 07-1089 (D.C. Cir.).

explained above, any such claim by petitioner in this case is without merit. *Id.* at 2-3. Judge Kay further recognized that "some minimal scanning of the content of written material is inevitable in any screening for written contraband." *Id.* at 3. Accordingly, the Access Procedures and the *Said* decision do not prohibit personnel at Guantanamo Bay from conducting a scan of written materials.[9] This approach appropriately balances the compelling safety and security interests of Guantanamo Bay with counsel's need to communicate with petitioner in a confidential manner. Petitioner's counsel's objections are, therefore, without merit.[10]

## CONCLUSION

For the reasons stated above, petitioners' motion for rule to show cause and other relief should be denied.[11] A proposed order is attached.

---

[9] Even in the domestic prison context, courts have approved prison policies that allow prison officials to open legal mail and inspect it for contraband. *See, e.g.*, *Wolff v. McDonnell*, 418 U.S. 539, 576-77 (1974) (upholding such a policy against a Sixth Amendment attorney-client privilege claim and a Fourteenth Amendment due process claim based on access to the courts).

[10] In light of the vague and non-specific allegations in petitioner's untimely motion, respondents are not at this time in a position to speak to exactly what transpired during the interaction between petitioner's counsel and the Guantanamo guards during her July visit – an interaction that appears to have lasted no more than a few minutes and took place over two months ago.

[11] Petitioner's motion also raises various allegations regarding the conditions of confinement and medical care at Guantanamo Bay, but the motion does not seek any relief related to these allegations. This Court has twice issued memorandum opinions denying motions by petitioner challenging the medical care at Guantanamo Bay, *see* dkt. nos. 47, 56, and respondents have previously explained in briefing on those motions that Guantanamo provides all detainees with a safe, humane environment and medical care. Of course, any claims related to conditions of confinement would fall squarely within the MCA's jurisdictional bar. *See supra* (MCA eliminates jurisdiction over actions raising "conditions of confinement" claims).

Dated: September 20, 2007        Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DOUGLAS N. LETTER
Terrorism Litigation Counsel

  /s/ *Andrew I. Warden*
JOSEPH H. HUNT (D.C. Bar No. 431134)
VINCENT M. GARVEY (D.C. Bar No. 127191)
JUDRY L. SUBAR (D.C. Bar 347518)
TERRY M. HENRY
JEAN LIN
JAMES J. SCHWARTZ (D.C. Bar No. 468625)
ROBERT J. KATERBERG
ANDREW I. WARDEN (IN Bar No. 23840-49)
NICHOLAS A. OLDHAM
JAMES C. LUH
Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W.
Washington, DC  20530
Tel:  (202) 616-5084
Fax:  (202) 616-8470

Attorneys for Respondent