# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **SALIM SAID**, *et al.*, | ) | |
| | ) | |
| **Petitioners** | ) | |
| | ) | |
| v. | ) | Civil Action No. 05-2384 (RWR)(AK) |
| | ) | |
| **GEORGE W. BUSH**, *et al.*, | ) | |
| | ) | |
| **Respondents.** | ) | |

## MEMORANDUM ORDER

Pending before the Court is Petitioners' Motion for an Order Directing Respondents to Comply with Protective Order with Respect to Attorney-Client Materials ("Mot.") [39], Respondents' Opposition ("Opp'n") [45] and Petitioners' Reply [48].[1]  A hearing on the motion was held on October 6, 2006.

Petitioners raise two issues. First, Petitioners claim that guards at Guantanamo conducted overly intrusive searches of their legal materials, including closely reading the contents of privileged legal materials and communicating that content to other military personnel. Petitioners claim that the extent of the guards' searches violates the Protective Order. Second,

---

[1] Judge Roberts referred Petitioners' Motion to this Court by Minute Order of August 16, 2006, pursuant to the Calendar and Case Management Committee's referral of all motions "pertaining to interpretation or construction of any protective order" entered in any of the Guantanamo *habeas* cases for resolution pursuant to LCvR 72.2(a). A party may seek reconsideration of a ruling by a magistrate judge within 10 days after being served with the magistrate judge's order. LCvR 72.2(b). Rulings issued by a magistrate judge pursuant to LCvR 72.2 are reviewed by the district court judge, in this case Judge Roberts, on a "clearly erroneous" or "contrary to law" standard. LCvR 72.2(c).

Petitioners claim that Respondents violated the Protective Order by refusing to deliver legal mail after Judge Roberts entered the Protective Order, but before the Court had rejected Respondents' argument that their pending challenge to Petitioners' next friend standing precluded counsel visits.

I.  **Guards' Search of Counsel's Legal Materials**

On June 5, 2006, several lawyers from Jenner & Block who represent the five Petitioners in this case arrived at Guantanamo to meet with their clients for the first time. Counsel allege that on June 8, guards subjected them to a 45 minute search of their legal materials. (Mot. at 2.) According to Petitioners' counsel, guards read through almost every page of their legal files, including materials that were privileged.[2] (*Id.*) Petitioners' counsel also claims that guards "contacted unidentified persons by radio and read or summarized the content of individual documents in the attorneys' files." (*Id.*) Guards confiscated certain portions of counsel's files on the grounds that the materials were unrelated to counsel's representation of their clients.[3]

Petitioners' counsel contend that the guards' close reading of their legal materials violates the Protective Order and impermissibly burdens the attorney-client privilege. Petitioners do not question the right of security personnel at Guantanamo to conduct searches for physical or

---

[2] Respondents assert that the guards' close review was an isolated incident that was prompted by guards' discovery of several news articles about Guantanamo that counsel had forgotten to take out of his bag. Petitioners' counsel, however, maintains that the close review of their legal materials was already ongoing when guards discovered the newspaper articles.

[3] The materials in question were summaries of developments in other *habeas* cases that had been prepared by the Center for Constitutional Rights. (Mot. at 2 & n.2.) Counsel for Petitioners maintain that these summaries were privileged attorney work product and were related to their representation of their clients. For purposes of this Motion, however, Petitioners do not seek relief regarding these specific materials.

written contraband. Rather, the difficulty arises in the way in which guards screen for written contraband. The overarching limitation on the types of written material counsel may bring into a meeting with a detainee is that the material be "related to counsel's representation" of that detainee. Thus, some minimal scanning of the content of written material is inevitable in any screening for written contraband. Petitioners ask the Court to set parameters on the extent of the guards' review of written materials to ensure that their privileged legal materials are protected.

Petitioners contend that guards at Guantanamo should be confined to "inspecting the form of counsel's documents for the presence of [written] contraband." (Reply at 1.) According to Petitioners' counsel, "[s]canning the form of written materials, rather than reading them, would allow JTF personnel to identify any contraband material while respecting the time-honored attorney-client privilege." (*Id.* at 2.) Petitioners counsel propose that if, after scanning the form of any document, it appears that the document is contraband, then "JTF will not read or review the document but shall place it in a sealed envelope and return it to counsel upon their departure from Camp Echo." (Proposed Stipulation, ¶ 2, *attached as* Ex. D to Mot.)

Respondents object to Petitioners' proposed relief. They argue that it would be inappropriate for the Court to insert itself into the minutiae of Guantanamo's security procedures, and that additional guidance from the Court is unnecessary in any event. Respondents agree that guards should not be closely reading counsel's legal materials. They contend that the 45 minute search described by counsel was an isolated incident that is unlikely to repeat itself. Respondents point out that counsel visits have been taking place on a daily basis for nearly two years. When disputes between counsel and guards arise as to the types of materials that may be permitted in meetings with a detainee, as they frequently do, the Staff Judge Advocate (SJA) is often able to

resolve the issue immediately.[4] Respondents' counsel also work with the SJA to address such disputes.

The Court agrees with Respondents that additional guidelines regarding the procedures by which security personnel screen for written contraband are premature at this stage. While there is some dispute over the frequency with which problems arise, it appears that the guards' close reading of counsel's legal materials may indeed have been an isolated incident. The Court will therefore deny Petitioners' Motion without prejudice. Petitioners may renew their request for relief if problems continue to arise.

## II.   Delivery of Legal and Non-Legal Mail

Petitioners allege that Respondents refused to deliver legal mail to two detainees, Bandar Al Jaabri and Saad Al-Qahtani, in violation of the Protective Order. Petitioners seek an order instructing Respondents to deliver mail to Petitioners in accordance with the Protective Order. Respondents acknowledge that they refused to deliver legal mail to the detainees in question, but argue that they were entitled to withhold privileged access to the detainees (whether in writing or in-person) on the grounds that they had challenged Petitioners' next friend standing. Respondents claim that they were under no obligation to deliver legal mail to Petitioners until this Court rejected Respondents' interpretation of the Protective Order and granted Petitioners access to counsel. Respondents note that since this Court's Order of May 23, 2006 granting access to counsel, they have diligently delivered all legal mail to Petitioners, making the issue

---

[4]Petitioners and Respondents both point to the example of a guard who initially refused to allow counsel to bring a brief for her own client's case into a meeting with her client. (*See* 2d Bronte Decl. ¶ 3, *attached as* Ex. B to Reply.) The guard apparently did not understand the meaning of the phrase "*et al.*" in the caption of the brief. (*Id.*) However, a member of the Staff Judge Advocate's office was able to clarify the misunderstanding. (*Id.* ¶ 4.)

4

moot.  The Court agrees that the issue is moot.  However, should this issue resurface, Respondents are cautioned to notify counsel or the Court.

Finally, Petitioners allege that Respondents have refused to deliver non-legal family mail to Petitioner Al-Qahtani.  Respondents dispute this allegation.  According to Respondents, "detainees cannot lose mail privileges for any reason, including as part of disciplinary action or interrogation." (Decl. of Wade M. Brown ¶ 2, *attached as* Ex. C to Opp'n.)  Moreover, Respondents claim that records at Guantanamo show delivery of family mail to Mr. Al-Qahtani sometime in August of 2005.  Mr. Al-Qahtani, however, claims that he has received no family mail at all since August of 2004.  According to Mr. Al-Qahtani, approximately one year ago, a guard informed him that he had mail, but no mail was ever delivered to him.  When he asked another guard about it, he was told there had never been any mail for him.  (*See* 2d Bronte Decl. ¶ 5.)  Faced with this factual dispute, the Court will ask Respondents to investigate the status of the family mail that was allegedly delivered to Mr. Al-Qahtani in August of 2005.  Respondents shall also investigate whether any other personal, non-legal mail addressed to Mr. Al-Qahtani arrived at Guantanamo between August of 2004 and October, 2006.

## Conclusion

For the reasons described herein, it is, this _11th_ day of October, hereby

ORDERED that Petitioners' request for an order prohibiting security personnel at JTF Guantanamo from reading the content of counsel's written materials is DENIED without prejudice to renew, and it is

FURTHER ORDERED that Petitioners' request for an order instructing Respondents to deliver legal mail is DENIED as moot, and it is

5

FURTHER ORDERED that Petitioners' request for an order instructing Respondents to deliver non-legal mail promptly and in accordance with the Protective Order is denied without prejudice to renew.  Respondents are instructed to investigate the status of family mail allegedly delivered to Petitioner Al-Qahtani in August of 2005.  Respondents shall also investigate whether any other personal, non-legal mail addressed to Petitioner Al-Qahtani arrived at Guantanamo between August, 2004 and October, 2006.  Respondents shall report their findings to Petitioners and the Court on or before November 3, 2006.

SO ORDERED.

_____/s/_____
ALAN KAY
UNITED STATES MAGISTRATE JUDGE

6