Cleared for Public Filing

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ABDUL HAMID ABDUL SALAM AL-GHIZZAWI**<br>    Detainee,<br>    Guantanamo Bay Naval Station<br>    Guantanamo Bay, Cuba;<br><br>                            *Petitioner*,<br><br>    *v.*<br><br>**GEORGE W. BUSH,** *et al.*,<br><br>                            *Respondents.* | Civil Action No. 05-cv-02378<br><br>Judge John B. Bates<br><br>Magistrate Judge Alan Kay |

**MOTION FOR LEAVE TO FILE THIS REPLY
TO EMERGENCY MOTION FOR RULE TO SHOW CAUSE
AND OTHER RELIEF, INSTANTER**

Now comes the Petitioner, Abdul Hamdi Al-Ghizzawi and asks this court for leave to file this Reply Instanter, for the following reasons:

Counsel for Petitioner arrived back in Chicago from Guantanamo in the afternoon of September 27, 2007 and as this court has never ruled on Petitioner's Emergency Motion, Counsel would like to take this opportunity to update the Court on the continuing violations of the Protective Order at the base and the damage to the attorney-client relationship between Mr. Al-Ghizzawi and his counsel caused by the respondents violations of the Protective Order (and medical neglect), for the following reasons:

1

1. As reported in the Emergency Motion, during the month of August counsel sent five letters to the privilege team for delivery to her client, one on August 15th, two on August 16th, and two later in the month. On September 11th Counsel received a letter from Mr. AL-Ghizzawi stating that he has not received any letters from counsel since her July visit, except for counsels June 13th letter which arrived in August. In his letter Mr. Al-Ghizzawi outlined his depression over the fact that it appeared to him that counsel did not want to represent him any further.[1]

2. While being driven to her client meeting on Tuesday, September 25th 2007 counsel was handed an envelope by her escort. The envelope contained legal mail from counsel to Mr. Al-Ghizzawi. Counsel was told she could bring the mail with her and give it to her client if she would like or, in the alternative, the mail could be delivered to Mr. Al-Ghizzawi in his cell later. Counsel took the letter and hand delivered the AUGUST 16th, 2007 letter from counsel to Mr. Al-Ghizzawi. (Perhaps Respondent knew that counsel was to be the courier when it stated in its response brief that the issue was moot since counsel was going to see her client soon anyway?)

3. In her meeting with Mr. Al-Ghizzawi, counsel learned that he had just recently received some of the mail from counsel. Mr. Al-Ghizzawi was too weak and ill for the usual exercise of going through each letter to determine

---

[1] On Wed. September 26th while counsel was in the guantanamo airport preparing to leave the base she checked her email and found that another letter had come from Mr. Al-Ghizzawi dated September 4th, again stating his anguish at having no mail from counsel and pleading that she help him find another attorney.

2

        which letters had been received and which had not. Mr. Al-Ghizzawi explained to counsel his fear that counsel had abandoned his case and his many sleepless nights as he wondered if he could get new counsel.

4.     As reported in the Emergency Motion the "new rule" of requiring an Arabic translator to READ every piece of legal mail and every legal document that is in Arabic before those documents will be allowed in the meeting is still in place. This rule requires counsel to receive a "stamp" that can only be obtained by allowing an Arabic translator, at the base, to READ the attorney client materials.

5.     After counsel was told again on September 25th, 2002 that they would still not allow her to bring in the Arabic legal mail and legal documents until they were "scanned" by a translator, counsel was forced to acquiesce or be in the position of not having the letters with her. Not only does this policy violate the protective order but the absurdity of the new rule is underscored by the fact that they also insisted on "scanning" the Arabic mail sent by Mr. Al-Ghizzawi, on government issued paper, that has gone through the system, was faxed to counsel and clearly stamped "Unclassified." With the number of letters and documents that counsel brought for her meeting this process took more than 20 minutes out of the precious meeting time.

6.     Unless the word "scan" has been redefined by the government (a possibility) to mean "read, word for word" the translator did not scan the

3

documents. Counsel watched as the translator stood and READ each and every letter, in detail. In fact, the translator used his finger as a guide as he went through sentence by sentence each of counsel's attorney client mail and the legal documents that counsel had translated into Arabic, including the lengthy affidavit by Col. Abraham.  Counsel protested at the reading of every letter: to the guards, the translator, the military attorney who watched this gross violation and the other military attorney trying to watch from the other side of the gate so that he would not have to talk with counsel.  (The attorney on the other side of the gate (a higher ranking attorney) was the same attorney who witnessed the violation in July but refused to stop the translator from violating the protective order.) Despite the constant protest by counsel, the translator (a contract employee) was allowed to violate petitioner's attorney-client privilege.

7. Counsel's meeting time with Mr. Al-Ghizzawi (which has been whittled down to six hours per day over the past year and a half) is important so that she can get every detail down regarding his almost six years of torture, abuse and medical neglect at the hands of the American Government.  Mr. Al-Ghizzawi is dying a slow and painful death and the meetings are particularly difficult because of his frail condition. Each time counsel visits her client (approximately every other month) his condition has worsened substantially. This visit was no exception. Mr. Al-Ghizzawi assumes he will die soon (and it appears that way to counsel as well) and it

4

is important to him that his entire story be known. For the first time Mr. Al-Ghizzawi showed counsel pictures of his beautiful little daughter. He lamented the fact that his beautiful, now almost six year old, daughter will never see a picture of him and will never know what he looks like. (He did have some comfort in knowing that he made a video of her when she was two months old with a neighbors camera and in the video he spoke to her… so that at least she will know the sound of his voice.) Mr. Al-Ghizzawi is also very fearful for his wife who is not only raising their daughter without his help and support but is also now responsible for her nine siblings because of the death of her mother.

8. In counsel's second day of meetings with Mr. Al-Ghizzawi, the morning of Wednesday, September 26, 2007, Counsel watched her client doubled over in pain, and coughing and gagging on his own flem as he asked such poignant questions as "why are the American people so cruel", and "why do the courts not do anything to stop this injustice". Counsel had no answer but promised her client that she will continue to do everything in her power to bring this continuing and cruel miscarriage of justice not only to the attention of this court, but to the various other courts, the American people and the world.

9. Counsel and Mr. Al-Ghizzawi only met briefly in the afternoon of the 26th. After a day and a half of meetings, Mr. Al-Ghizzawi was too exhausted and ill to continue, he apologized to counsel for having to end

5

the meeting early and asked to be taken to isolation cell so that he could lay down.

WHEREFORE, counsel asks this court to stop this injustice…. and for such other and further relief as this Court deems just.

Dated:      September 28th, 2007

> Respectfully Submitted,
> Counsel for Petitioner
>
> /s/ H. Candace Gorman
>   H. Candace Gorman

LAW OFFICE OF H. CANDACE GORMAN
H. Candace Gorman (IL Bar #6184278)
542 S. Dearborn St., Suite 1060
Chicago, IL 60605
(312) 427-2313

## CERTIFICATE OF SERVICE

      I, H. Candace Gorman, certify that I today caused a true and accurate copy of **MOTION FOR LEAVE TO FILE THIS REPLY TO EMERGENCY MOTION FOR RULE TO SHOW CAUSE AND OTHER RELIEF, INSTANTER** to be served upon the following persons through service that automatically occurs by virtue of my electronic filing of the above listed document:

        Terry Henry, Esq., Senior Trial Attorney
        Andrew I. Warden, Esq., Trial Attorney
        U.S. Department of Justice
        Civil Division, Federal Programs Branch
        20 Massachusetts Ave., NW, Room 7144
        Washington, DC  20530

This 28th day of September, 2007.

                /s/ H. Candace Gorman
                Counsel for Petitioner

LAW OFFICE OF H. CANDACE GORMAN
H. Candace Gorman (IL Bar #6184278)
542 S. Dearborn Street -  Suite 1060
Chicago, IL 60605
Tel:  (312) 427-2313