IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ABDUL HAMID AL-GHIZZAWI ) | |
|     Detainee, ) | |
|     Guantanamo Bay Naval Station ) | |
|     Guantanamo Bay, Cuba; ) | |
| ) | |
| ) | |
|     *Petitioner*, ) | Emergency Motion for |
| ) | Medical Treatment |
| v. ) | (Expedited consideration |
| ) | requested[1] ) |
| ) | No. 05 cv 2378 (JDB) |
| ) | |
| GEORGE W. BUSH, et. al. ) | |

**AL-GHIZZAWI'S *NEW* EMERGENCY MOTION FOR MEDICAL
TREATMENT AND MEDICAL RECORDS
(WITH IRREPARABLE INJURY ACCOUNTED FOR)**

I.    **BACKGROUND**

Abdul Hamid Al-Ghizzawi ("Al Ghizzawi"), once again, pleads this Court for an Order directing the United States Government to require its military authorities to provide medical treatment for his life threatening conditions and to turn over his medical records to his counsel (a signed medical release from Al-Ghizzawi has previously been tendered to this Court). Although a motion similar to this has

---

[1] If this Court is unwilling to entertain this Motion while awaiting direction from the Supreme Court Counsel for Al-Ghizzawi respectfully asks this Court to enter an Order stating it's unwillingness so that Counsel need not waste precious time awaiting a ruling. Al-Ghizzawi can then promptly appeal and be in a position to show the Supreme Court that the lower courts are unwilling to act without further direction.

previously been filed with this Court in August 2006 and denied on November 2, 2006, as set forth herein, additional events have taken place which warrants this relief being granted at this time:

a.) Al-Ghizzawi, in a letter to counsel, states that he was told by a doctor at Guantanamo in December 2007 that he is suffering from AIDS. No medication or treatment of any kind has been offered for that condition. In a separate letter dated January 1, 2008 Al-Ghizzawi states that the AIDS diagnosis has been confirmed.

b.) Al-Ghizzawi, in a meeting with counsel in September and subsequent letters stated that he was told by a doctor at Guantanamo in September, 2007 that he has a severe liver infection. No medication or treatment of any kind has been offered for that condition.

c.) Al-Ghizzawi filed an Original Habeas Petition with the U.S. Supreme Court and a Motion to Expedite because of his frail medical condition. Although his Motion to Expedite was denied on October 1, 2007 his Petition was allowed to be filed on that same day and the Court ordered a response from the Solicitor General. The Petition was set for conference on January 18th 2008. As of January 18th, 2008 Al-Ghizzawi's Original Petition is apparently being held pending the Court's disposition of *Boumediene v. Bush,----S.Ct.---,* 2007 WL 1854132, 75 USLW 3705, 75 USLW 3707 (U.S. cert. granted Jun 29, 2007; argument held Dec. 5, 2007) (No. 06-1195).

d.) On January 28th, 2008 Al-Ghizzawi filed an emergency application with Chief Justice Roberts of the United States Supreme Court seeking similar relief to the instant motion, to wit, emergency medical treatment (and medical records) so that Al-Ghizzawi

2

might survive long enough to see the outcome of his Original Petition in the Supreme Court.

e.) On January 29th, 2008 Chief Justice Roberts denied Al-Ghizzawi's emergency application without comment. (Assuming Justice Roberts, a compassionate jurist, does not wish Al-Ghizzawi to die at Guantanamo that application was most likely denied because the Chief Justice felt that relief was available to Al-Ghizzawi in the lower courts. In any case Chief Justice Roberts certainly did not foreclose Al-Ghizzawi requesting that relief from the lower courts.)

f.) Al-Ghizzawi filed a Petition with the Circuit Court under the DTA in March 2007 and pleaded with the Circuit Court for a speedy hearing because of his frail medical condition. No action has been taken on his DTA petition to date;

g.) In November 2006, Al-Ghizzawi filed an appeal with the Circuit Court asking that Court to Order medical treatment (and medical records). That appeal has not been ruled on;

h.) Al-Ghizzawi's counsel has attempted to visit with him every other month to monitor and document the swift deterioration of this innocent civilian's health.

**II.     INTRODUCTION**

Beginning sometime in 2004 Al-Ghizzawi's health began to deteriorate and when he could not obtain medical attention for his serious health issues, he began his quest for legal representation. Counsel has been representing Al-Ghizzawi since November 2005, *pro-bono*. Al-Ghizzawi has received absolutely no treatment for his many life threatening illnesses (including the previously known hepatitis B and tuberculosis) and

3

his health has deteriorated to the point that he can barely walk, has trouble concentrating and communicating, and by all appearance, is near death. Al-Ghizzawi, an innocent civilian, wrongly held by our military, is literally dying in his isolation cell in the supermax Camp 6 from untreated medical conditions.

  In a meeting in September, 2007 Al-Ghizzawi told his counsel that a doctor at the base informed him days earlier that he has a severe liver infection. In a counsel visit with Al-Ghizzawi on Dec. 17th 2007 Al-Ghizzawi signed an affidavit describing in more detail the particulars of his discussions with his doctors regarding this liver infection. In a letter dated December 25th, 2007 (received by counsel on or about January 14, 2008) Al-Ghizzawi told his counsel that an "American" doctor at Guantanamo has now informed him that he suffers from acquired immune deficiency syndrome, better known as full-blown AIDS. Al-Ghizzawi's panic stricken letter begs his counsel to find out why this deadly disease has been kept secret from him and to implore the government to provide him with medical treatment. In the last letter counsel has received from Al-Ghizzawi (dated January 1, 2008) he stated that the AIDS diagnosis was confirmed and that he is not receiving any treatment for any of his life threatening illnesses.

  Early on January 17, 2008 Counsel sent an email to the DOJ attorney assigned to this case (Andrew Warden) asking him to confirm or deny that Al-Ghizzawi in fact has AIDS. A day and a half later Attorney Warden sent an email back refusing to confirm or deny the report, instead saying: "We are not privy to the particulars of what your client may have been told by his doctor, if anything, but Guantanamo provides high-

quality medical care to all detainees…." In an immediate email back to Warden counsel for Al-Ghizzawi asked him "Could you please make yourself privy to the particulars of my client? He was told he has AIDs and I want to know if it is true or not… Please contact your colleagues at the base and find out this rather important piece of information. Thank you for your anticipated help in this." Despite counsel's representation that she anticipated Warden's help…she did not, and unsurprisingly Attorney Warden has never responded to her last email.

There are really only two plausible explanations for these events: one is that Al-Ghizzawi in fact actually suffers from AIDS and therefore must have been at least HIV positive when Dr. Sollock filed his affidavit with this Court on September 8th 2006 stating that Al-Ghizzawi was in good health; or, Al-Ghizzawi does not have AIDS and is being subjected to some kind of psychological torture, in which the DOJ is acquiescing by refusing to confirm or deny that Al-Ghizzawi has AIDS.

One thing is certain: Guantanamo has not provided medical care, let alone anything resembling "high-quality" medical care for Al-Ghizzawi.

### III.    SUMMARY OF ARGUMENT

That doctors at Guantanamo have admitted to Al-Ghizzawi that he suffers from AIDS and a severe liver infection, that the government previously admitted that Al-Ghizzawi has both hepatitis B and tuberculosis and that he has not been treated for any of these conditions establishes as a *per se* matter that Al-Ghizzawi is not receiving adequate treatment for his life-threatening illnesses. With the irreparable harm that this

Court found lacking at the time this Court denied his prior motion now clearly established (imminent death), Al-Ghizzawi submits that the totality of the circumstances require immediate attention and an Order from this Court requiring the Government to not only treat Al-Ghizzawi but to immediately turn over his medical records. Only with the complete medical records can Al-Ghizzawi and his counsel be sure that any "treatment" he receives is applicable to his actual medical conditions and not another Potemkin village designed to create the appearance, but not the substance, of actual medical treatment.

  Because Al-Ghizzawi is a prisoner of the United States in a facility controlled by the United States who has not even been charged with, much less convicted of, a crime, he must be entitled to the full protections of the Due Process Clause. "While the convicted prisoner is entitled to protection only against punishment that is 'cruel and unusual,' the pretrial detainee, who has yet to be adjudicated guilty of any crime (or as in this case even charged with any crime) may not be subjected to *any* form of 'punishment.'" *Slade v. Hampton Rds. Terg'l Jail,* 307 F.3d 243, 250 (4th Cir. 2005) (emphasis in the original). *See also Youngberg v. Romeo,* 457 U.S. 307, 312-22 (1982); *Bell v. Wolfish*, 441 U.S. 520, 535-37 (1979). Unfortunately Al-Ghizzawi is being subjected to the cruelest form of punishment: the withholding of life saving medical treatment and these judicial holdings will not serve Al-Ghizzawi if he is permitted to die at the hands of his jailer before he even has so much as an opportunity to be heard. It is imperative that this Court ensure that the government meets Al-Ghizzawi's immediate and compelling medical needs while awaiting his day in court.

Al-Ghizzawi requests that this Court grant his request for immediate medical attention and access to his complete medical records. As argued above the records are necessary to provide a basis for Al-Ghizzawi to ensure that the medical treatment that Al-Ghizzawi so desperately needs is appropriate to his actual condition, a condition that to this day, both Al-Ghizzawi and counsel know only to the extent the government is willing to disclose. The relief requested is absolutely necessary for Al-Ghizzawi to effectively prepare his case and to quite literally allow him to live long enough to pursue his case to conclusion.

IV.    **ARGUMENT**

Al-Ghizzawi is seeking to exercise his rights to medical care and right to counsel, rights that are not *merely* "conditions of confinement" civil rights claims. The right to medical treatment is such a fundamental right that Al-Ghizzawi should not be in the position of literally begging for this right in the various courts for more than eighteen months and on his own for the last several years. In addition, Al-Ghizzawi's right to counsel exists no matter how the jurisdictional argument is decided in this and other detainee habeas cases. For the right to counsel to have meaning, Al-Ghizzawi's counsel must be kept informed of the health of her client especially in a situation such as this where the government admits it knows of her clients health problems, but is not treating those health problems. Further, the request for access to medical records and emergency medical treatment is a narrow, specific form of relief sought to protect Al-Ghizzawi's health and welfare in light of symptoms of potentially fatal illnesses that

have gone untreated.

The fact that the government has admitted that Al-Ghizzawi has both Hepatitis B and Tuberculosis and has not been treated for either condition and the fact that the government attorney refuses to even confirm or deny that Al-Ghizzawi is also suffering from AIDS (and not being treated for it), clearly indicates that Al-Ghizzawi is not receiving adequate treatment for his potentially life-threatening illnesses, and entitles Al-Ghizzawi to seek immediate judicial redress to ensure that the government meets his medical needs. Assuming *arguendo* that Al-Ghizzawi must compare the grave risk of irreparable injury and likelihood of success on the merits with the potential injury to the government and public interest concerns (*See Katz v. Georgetown Univ.*, 246 F.3d 685, 687-688 (D.C. Cir. 2001)) the equities and circumstances still balance in favor of Al-Ghizzawi; "[t]hese factors interrelate on a sliding scale and must be balanced against each other." *Serono Labs, Inc. v. Shalala*, 158 F.3d 1313 (D.C. Cir. 1998). "If the arguments for one factor are particularly strong, an injunction may issue even if the arguments in the other areas are rather weak." *City Fed. Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 746 (D.C. Cir. 1995).

Comparing the grave risk of irreparable injury to Mr. Al-Ghizzawi if he continues to not receive medical care and access to his medical records, to his likelihood for success on the merits and the fact that there has never been a representation from the government that the national interest will be threatened or even burdened by granting it, this relief militates in favor of granting the relief requested.

i.  **Irreparable Injury**

Al Ghizzawi's diagnosis of AIDS, if accurate, and if that condition continues to be untreated, is a veritable death sentence, and hence, establishes irreparable harm as a <u>per se</u> matter. In addition, Al-Ghizzawi was recently told by a medical doctor at Guantanamo that he has a severe liver infection (most likely as a result of having his hepatitis B untreated for such a long period) and as shown by his affidavit (from prior to his being told he has AIDS) was then scared out of having a liver biopsy provided by camp medical staff at Guantanamo. (Ex. A) However, as shown by the Affidavit from Dr. Jürg Reichen, treatment could have, and should have been conducted even without a biopsy. (Ex. B)

Al-Ghizzawi's counsel also submits to this Court two affidavits of her own observations regarding Al-Ghizzawi's appearance and symptoms over the past eighteen months clearly showing the irreparable and ongoing injury to Al-Ghizzawi in not receiving medical treatment. (Exs. C and D) As shown by these affidavits the deterioration of Al-Ghizzawi's physical and mental health over this past eighteen months is not only striking, but clearly irreparable.  Perhaps the most amazing part is that Al-Ghizzawi still clings to life despite this absolute medical neglect. Counsel believes this is probably a testament to his burning desire to see his wife and young daughter one last time. It is certainly not a testament to the health care at Guantanamo,[2]

---

[2] Counsel previously submitted to this Court other affidavits from Dr. Reichen and affidavits from Dr. Jensen, two well respected medical doctors. Al-Ghizzawi will not repeat their prophetic warnings of irreparable injury in this motion. Those affidavits remain in the Court

9

which is at best abysmal, and at worst, non-existent.

Irreparable harm may be shown, as herein, where the movant's health is in imminent danger. *See, e.g., Blackman v. District of Columbia*, 185 F.R.D. 4, 6-7 (D.D.C. 1999); *Wilson v. Group Hosp. & Med. Servs., Inc.*, 791 F.Supp. 309, 314 (D.D.C. 1992). As asserted by Judge Gladys Kessler in her decision in *Al-Joudi, et. Al. v. Bush, et. Al,* 406 F. Supp.2d 13, 20 (DDC 2005), "where the health of a . . . vulnerable person is at stake, irreparable harm can be established." In addressing the request for medical records made on behalf of other detainees at Guantanamo Bay, Judge Kessler continued, "[w]hile Petitioners do not lack legal competence as children do, they are indeed vulnerable to further physical deterioration, and possibly death, by virtue of their custodial status at Guantanamo and weakened physical condition." *Id.* In making her decision, Judge Kessler relied primarily on affidavits submitted by attorneys of their observations of their clients and by statements of the detainees themselves, even though Guantanamo Bay officials denied those contentions as well.

Mr. Al-Ghizzawi's case is even more pernicious than the detainees on a hunger strike. Mr. Al-Ghizzawi has been made vulnerable to further physical deterioration, and possible death, entirely as a result of his continued detention and lack of medical care at Guantánamo. Mr. Al-Ghizzawi is prevented from seeking further medical treatment or advice as a direct result of his on-going detention. The symptoms observed by his counsel and relayed by Al-Ghizzawi continue to suggest that he is in

---

record as is the affidavit of the Governments Dr. Sollock who falsely claimed that Al-Ghizzawi was healthy.

need of immediate medical treatment. In addition, the warnings of doctors at Guantanamo as to the true nature of Al-Ghizzawi's condition signal an incomprehensible incompetence and cruelty. If Al-Ghizzawi goes much longer without treatment he will, in all likelihood, die of the many diseases he has acquired at Guantanamo despite his incredible will to survive.  When this happens, the harm will, of course, be undeniably irreparable.  For these same reasons it is imperative that the medical records be turned over to Al-Ghizzawi's counsel. Without the records Al-Ghizzawi can never be certain that his true medical conditions are even being addressed, let alone addressed appropriately.

    ii.    **Likelihood of Success on the Merits**

Al-Ghizzawi is uncertain why he must show his likelihood to succeed prior to being afforded medical care but surely there is no detainee with a more compelling likelihood of success on his ultimate habeas petition than Al-Ghizzawi. Not only was he found to *not* be an enemy combatant by his original CSRT but one of the panel members (Lt. Col. Stephen Abraham) from that unanimous panel has referred to the evidence against Mr. Al-Ghizzawi as "garbage" in sworn testimony before a Congressional committee.  (*Upholding the Principles of Habeas Corpus for Detainees, 2007: Hearing before the House Armed Services Committee*, 110th Cong., 1st Sess. (July 26, 2007) (statement of Lieutenant Colonel Stephen Abraham, U.S. Army Reserve)   Although the likelihood of Al-Ghizzawi's success on the merits, if he could ever have his habeas petition heard, is great… it will also be a moot point if he does not get the medical care he needs because he will never have the opportunity to proceed to the merits: he will be dead.

### iii.  Injury to the Government

Even the most callous of the government officials in this case have never made an argument that there would be injury to the Government were it required to provide Al-Ghizzawi medical care.  Nor has there been any argument that there would be any injury from providing Al-Ghizzawi's own medical records to his attorney.  If the Administration attempts that argument now Al-Ghizzawi respectfully suggests that any burden the Government alleges as a result of providing medical care to Al-Ghizzawi and needing to copy this medical file must be balanced against the irreparable harm of Al-Ghizzawi's imminent death.  *See, Serono Labs, Inc. v. Shalala*, 158 F.3d at 1318.

### iv.  Public Interest Concerns

It is in the public interest for petitioners at Guantanamo Bay to have proper medical care and access to their counsel so that they might properly challenge their detention and so that the courts can best adjudicate their claims…in the event the courts ever get around to that.

Al-Ghizzawi's request for both medical care and access to his own medical records is a request to allow himself and his attorney to have the full knowledge of his medical condition in order to keep him alive and best prepare his case.  The request for medical care should be seen by this Court as a moral obligation by our country as well as in furtherance of the public interest.

### V.  CONCLUSION

Al-Ghizzawi's right to medical treatment and his medical records is even greater than those of typical pretrial detainees, a proposition now only made more clear given

his apparent contraction of AIDS while in government custody. Unlike those charged with crimes, Al-Ghizzawi has been detained with no charge whatsoever, but instead remains incarcerated solely on the Executive's say-so.  Al-Ghizzawi's current designation as an enemy combatant is not a foregone conclusion as shown by the fact that his *first* CSRT unanimously found him <u>not</u> to be an enemy combatant; the fact that the government falsely claimed that they had "new evidence" and set up a second tribunal six weeks later confirms the illegitimacy of the government's determination that Al-Ghizzawi has engaged in hostilities against the United States, or aided those who have, and this is the very core of Al-Ghizzawi's underlying habeas claims.  In any case, the rights Al-Ghizzawi seeks to exercise far exceed a challenge to the conditions of his confinement, which the government previously has argued is out of this court's jurisdiction and will most likely so argue again. Even under the most deferential standard, published reports, many from the government's own admissions in this case, illustrate that the government cannot be trusted to provide even basic minimal medical care.  Government and military officials have admitted in this case that they have not provided Al-Ghizzawi with any medical treatment for either his hepatitis B or tuberculosis. Al-Ghizzawi also knows that they have not offered any medical treatment for AIDS and his infected liver. What Al-Ghizzawi cannot be sure of is whether the AIDS diagnosis is true; and, if true, how long the government has been hiding this diagnosis; and whether the diagnoses was withheld through medical incompetence or medical neglect or both… or perhaps something more insidious.

     For all the reasons set forth above, this Court should Order the Government to

immediately begin emergency medical treatment to Al-Ghizzawi and Order the government to immediately tender to Al-Ghizzawi's counsel his complete medical records so that she can make sure that Al-Ghizzawi is obtaining proper medical care… and for such other and further relief as this Court deems just.

Submitted by,

_H. Candace Gorman_
Counsel for Petitioner

H. Candace Gorman
220 S. Halsted
Suite 200
Chicago IL. 60661
312.427.2313

## CERTIFICATE OF SERVICE

    I, H. Candace Gorman, certify that I today caused a true and accurate copy of AL-GHIZZAWI'S NEW EMERGENCY MOTION FOR MEDICAL TREATMENT AND RECORDS to be served upon the following persons by virtue of filing the above listed document with the U. S. Department of Justice Litigation Security Section:

        Terry Henry, Esq., Senior Trial Attorney
        Andrew I. Warden, Esq., Trial Attorney
        U.S. Department of Justice
        Civil Division, Federal Programs Branch
        20 Massachusetts Ave., NW, Room 7144
        Washington, DC  20530

This 4th day of February, 2008.

        /s/ H. Candace Gorman
        Counsel for Petitioner


Law Office of H. Candace Gorman
H. Candace Gorman (IL Bar #6184278)
200 S. Halsted Street - Suite 200
Chicago, IL 60661
Tel:  (312) 427-2313