IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ABDUL HAMID ABDUL SALAM AL-GHIZZAWI, | ) ) ) ) | |
| Petitioner, | ) ) | |
| v. | ) ) | Civil Action No. 05-2378 (JDB) |
| GEORGE W. BUSH, *et al.*, | ) ) | |
| Respondents. | ) ) | |

## RESPONDENTS' OPPOSITION TO PETITIONER'S
## NEW EMERGENCY MOTION FOR
## <u>MEDICAL TREATMENT AND MEDICAL RECORDS</u>

Respondents hereby oppose petitioner Abdul Hamid Abdul Salam Al-Ghizzawi's

emergency motion for medical treatment and access to medical records regarding petitioner (dkt.

no. 78) ("Petr's Memo."), which seeks extraordinary injunctive relief requiring court intervention

into and governance of the medical care provided petitioner at the United States Naval Base at

Guantanamo Bay, Cuba ("Guantanamo"). Previously in this case, petitioner alleged that he was

suffering from liver cancer and had never been treated for the condition. *See* Emergency Motion

for Access to Petitioner's Medical Records and for Emergency Medical Treatment (dkt. no. 29).

In two rounds of briefing on the subject in this Court, respondents submitted declarations from

the Commander, U.S. Naval Hospital, Guantanamo Bay, Cuba, and Joint Task Force Surgeon for

Joint Task Force – Guantanamo Bay, Cuba, demonstrating petitioner's allegations of his

condition and of deficient medical care to be false.[1] The Court denied petitioner's requests for

---

[1] *See* Resps' Opp. to Petr's Emerg. Motion for Access to Medical Records and For
Emerg. Medical Treatment (dkt. no. 41); Resps' Opp. to Petr's Motion for Reconsideration (dkt.
no. 51).

relief. *See Al-Ghizzawi v. Bush*, 2006 WL 2844781 (D.D.C. Oct. 2, 2006) (dkt. no. 47) ("Oct. 2, 2006 Mem. Op. & Order"); Nov. 2, 2006 Mem. Op. & Order (dkt. no. 56). Now petitioner alleges that he was recently diagnosed by Guantanamo medical personnel as having a severe liver infection and Acquired Immune Deficiency Syndrome ("AIDS"), and claims he has not received treatment for either condition.

Pursuant to the Court's February 6, 2008 Order (dkt. no 79), respondents are submitting herewith the declaration of the Commanding Officer, Naval Hospital, Commander, Joint Medical Group, Guantanamo Bay and Joint Task Force Surgeon, Joint Task Force – Guantanamo Bay, Cuba, demonstrating yet again that petitioner has received and continues to receive thorough, responsible, and attentive medical care. This declaration further demonstrates that petitioner's latest allegations range from thoroughly misleading to flatly untrue, and it specifically demonstrates that petitioner neither has AIDS nor was told he has it. In any event, it is clear under the Military Commissions Act of 2006 ("MCA"), Pub. L. No. 109-366, § 7, 120 Stat. 2600, and the law of this Circuit, *see Boumediene v. Bush*, 476 F.3d 981 (D.C. Cir. 2007), *cert. granted*, 127 S. Ct. 3078 (June 29, 2007), that the Court lacks jurisdiction over this case and specifically lacks jurisdiction to entertain the type of relief requested by petitioner. Accordingly, petitioner's latest emergency motion should be denied.

## PROCEDURAL BACKGROUND

This *habeas corpus* proceeding was filed in December 2005 on behalf of petitioner, a citizen of Libya who is detained by the Department of Defense at Guantanamo as an enemy combatant. *See* Petition (dkt. no. 1); Resps' Factual Return to Petition (dkt. no. 50). In August 2006, petitioner filed a motion for preliminary injunctive relief, alleging that he was suffering

from liver cancer and had never been treated for the condition. *See* dkt. no. 29. The Court rejected petitioner's motion, concluding that petitioner had "not provided evidence of misconduct on the part of respondents with respect to his medical care," Oct. 2, 2006 Mem. Op. & Order, 2006 WL 2844781 at *4, and that petitioner's health was not in danger from deficient medical care, *id.* at *5. Petitioner moved to reconsider, and the Court similarly denied that motion. Nov. 2, 2006 Mem. Op. & Order (dkt. no. 56). During the course of briefing on petitioner's motions, respondents submitted declarations to the Court disputing petitioner's contentions and outlining the medical care facilities and resources available to Guantanamo detainees, as well as the extensive and individualized examination, diagnosis, testing, monitoring, and treatment previously provided petitioner, including that he was diagnosed with *inactive* Hepatitis B and *latent* tuberculosis and offered treatment for each. *See* Resps' Opp. to Petr's Emerg. Motion for Access to Medical Records and For Emerg. Medical Treatment (dkt. no. 41); Resps' Opp. to Petr's Motion for Reconsideration (dkt. no. 51). Petitioner then appealed, *see* dkt. no. 57, and respondents moved for summary affirmance of this Court's orders. *See* No. 06-5394 (D.C. Cir.). The motion for summary affirmance remains pending.

Petitioner also filed in the Court of Appeals in March 2007 a petition for review of the Combatant Status Review Tribunal ("CSRT") determination that he is an enemy combatant, as permitted under the Detainee Treatment Act of 2005 ("DTA"), Pub. L. No. 109-148, Tit. X, 119 Stat. 2680. *See infra* note 2.

In addition, later in 2007, petitioner filed an original *habeas* petition in the Supreme Court challenging the legality of his confinement. *See* No. 07-6827 (Sup. Ct.). Respondents moved to dismiss that case, which remains pending.

On January 28, 2008, in his original *habeas* action in the Supreme Court, petitioner filed an emergency application alleging that he was diagnosed by Guantanamo medical personnel as having a severe liver infection and AIDS and had not received treatment for either condition. Petitioner sought an injunction regarding medical care and requiring the production of petitioner's medical records. The next day, the Chief Justice denied the application without comment. *See* Exhibit A.

On February 4, 2008, petitioner filed the present motion, again alleging that he has been diagnosed by Guantanamo medical personnel as having a severe liver infection and AIDS and has not received treatment. Petitioner once again seeks an injunction for emergency medical treatment and the production of petitioner's medical records. *See* dkt. no. 78.

## ARGUMENT

### I.  PETITIONER'S MOTION SHOULD BE DENIED BECAUSE THE COURT LACKS JURISDICTION TO GRANT THE MOTION.

Petitioner's motion for an injunction seeking court intervention into the medical care provided petitioner and requiring the production of medical records to petitioner's counsel should be denied because this Court lacks jurisdiction to grant the requested relief. On October 17, 2006, the MCA was enacted. The MCA amended the habeas statute, 28 U.S.C. § 2241, adding a subsection (e) to provide that "[n]o court, justice, or judge shall have jurisdiction" to consider either (1) habeas petitions filed by aliens detained by the United States determined to be enemy combatants or awaiting such a status determination, or (2) any other action "relating to any aspect of the detention, transfer, *treatment*, trial, or *conditions of confinement*" of an alien who is or was so detained, except for the exclusive review granted to the Court of Appeals under the DTA for

-4-

seeking review of a Department of Defense CSRT's final decision that an alien is properly

designated as an enemy combatant.[2]  *See* MCA § 7(a) (emphasis added).  This new amendment

to § 2241 took effect on the date of enactment and applies specifically "to all cases, without

exception, pending on or after the date of the enactment of this Act which relates to any aspect of

the detention, transfer, treatment, trial, or conditions of detention of an alien detained by the

United States since September 11, 2001."  *Id.* § 7(b).

On February 20, 2007, the Court of Appeals held in *Boumediene* that the MCA plainly

applies to all cases filed by aliens detained as enemy combatants, including pending *habeas*

petitions such as this one, and withdraws all district court jurisdiction over such cases, including

both *habeas* and non-*habeas* claims.  *See* 476 F.3d 981, 986-88 & n.1; *id.* at 994 ("Federal courts

have no jurisdiction in these cases.").  The Court of Appeals also held that the withdrawal of

*habeas* jurisdiction over pending cases did not violate the Suspension Clause because the alien

detainees held at Guantanamo have no constitutional rights and because the constitutional right

to seek habeas review does not extend to aliens held at Guantanamo.  *Id.* at 988-94.

Consequently, the Court of Appeals directed that (1) the district courts' decisions on appeal be

vacated and (2) the cases on appeal be dismissed for lack of jurisdiction.  *Id.* at 994.  The

Supreme Court granted *certiorari* in *Boumediene* on June 29, 2007, *see Boumediene v. Bush*, 127

S. Ct. 3078 (June 29, 2007), and heard argument on December 5, 2007.  However, at least while

*Boumediene* remains pending before the Supreme Court, the law of this Circuit remains settled:

---

[2] *See* DTA § 1005(e)(2)-(3) (as amended by MCA §§ 9-10).  Section 1005(e)(2) of the DTA, as amended, states that the D.C. Circuit "shall have exclusive jurisdiction to determine the validity of any final decision of a Combatant Status Review Tribunal that an alien is properly detained as an enemy combatant," and it further specifies the scope and intensiveness of that review.

under the MCA, federal district courts do not have jurisdiction over cases brought by aliens at

Guantanamo Bay detained as enemy combatants, and such aliens do not have constitutional

rights.[3]  *See Al Maqaleh v. Gates*, No. 06-CV-1669 (JDB), 2007 WL 2059128 at *2 (D.D.C. Jul.

18,2007) ("This Court recognizes that the D.C. Circuit's ruling in *Boumediene* remains, at least

for now, controlling precedent with respect to the Guantanamo detainees.").  Accordingly, the

Court lacks jurisdiction over petitioner's case.

Indeed, the Court of Appeals recently emphasized that *Boumediene* "remains the law of

this Circuit" and must be followed.  *See Rasul v. Myers*, ___ F.3d ___, 2008 WL 108731 at *14

(D.C. Cir. Jan. 11, 2008).  The Court of Appeals explained:

> *Boumediene* is currently before the Supreme Court on certiorari review.
> Nevertheless, we must follow Circuit precedent until and unless it is altered by
> our own en banc review or by the High Court.  *See United States v. Carson*, 455
> F.3d 336, 384 n.43 (D.C. Cir. 2006) ("[W]e are, of course, bound to follow circuit
> precedent absent contrary authority from an en banc court or the Supreme Court.")
> (citing *Brewster v. Comm'r*, 607 F.2d 1369, 1373 (D.C. Cir. 1979)).

---

[3] Even prior to enactment of the MCA, the DTA invested the Court of Appeals with the
same "exclusive jurisdiction to determine the validity of any final decision of a Combatant Status
Review Tribunal that an alien is properly detained as an enemy combatant."  *See* DTA
§ 1005(e)(2)-(3).  This investment of exclusive jurisdiction in the Court of Appeals, independent
of the MCA, deprived the district court of jurisdiction in cases challenging the detention of
enemy combatants.  *See, e.g.*, *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 207-09 (1994)
("exclusive" jurisdiction under federal Mine Act precludes assertion of district court
jurisdiction); *Laing v. Ashcroft*, 370 F.3d 994, 999-1000 (9th Cir. 2004) ("§ 2241 is ordinarily
reserved for instances in which no other judicial remedy is available"); *Telecomms. Research &
Action Ctr. v. FCC*, 750 F.2d 70, 75, 78-79 (D.C. Cir. 1984) (request for relief in district court
that might affect Court of Appeals' future, exclusive jurisdiction is subject to the exclusive
review of the Court of Appeals); *cf. id.* at 77 ("By lodging review of agency action in the Court
of Appeals, Congress manifested an intent that the appellate court exercise sole jurisdiction over
the class of claims covered by the statutory grant of review power.").  In any event, with the
enactment of the MCA, as the D.C. Circuit made clear in *Boumediene*, district court jurisdiction
has been unambiguously withdrawn.

*Rasul*, 2008 WL at *14 n.5.[4]  As the D.C. Circuit recognized in *Rasul*, courts are not free to

ignore the binding precedent in *Boumediene* merely because the Supreme Court has granted

review.  *See also Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) ("'Without

jurisdiction [a] court cannot proceed at all in any cause.  Jurisdiction is power to declare the law,

and when it ceases to exist, the only function remaining to the court is that of announcing the fact

and dismissing the cause.'" (quoting *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1868)).

Consequently, this Court has no choice but to deny petitioner's motion for an injunction.

    Furthermore, the MCA constitutes a jurisdictional bar to the relief that petitioner seeks in

his current motion, even aside from the question pending before the Supreme Court in

*Boumediene*.  Even if the Supreme Court were to reverse the Court of Appeals' holding that § 7

of the MCA eliminates federal jurisdiction over pending petitions for *habeas corpus*, 476 F.3d at

986, 994, another aspect of the MCA would nevertheless preclude this Court from granting an

order extending to the non-*habeas* relief sought on the present motion.  A holding by the

Supreme Court that the MCA's removal of federal court jurisdiction over *habeas* petitions is

unenforceable – which is all that the petitioners in *Boumediene* are seeking – would not affect the

---

    [4] *See also Maxwell v. Snow*, 409 F.3d 354, 358 (D.C. Cir. 2005) ("this Court is bound to
follow circuit precedent until it is overruled either by an en banc court or the Supreme Court");
*Ayuda, Inc. v. Thornburgh*, 919 F.2d 153, 154 (D.C. Cir. 1990) (Henderson, J., concurring)
("Once [an] opinion [is] released it [becomes] the law of this circuit."); *Vo Van Chau v. U.S.
Dep't of State*, 891 F. Supp. 650, 654 (D.D.C. 1995) (holding that the district court was bound by
the principle of *stare decisis* to abide by a Court of Appeals decision even though the Court of
Appeals had not yet issued its mandate and even though the mandate was stayed during the
pendency of a petition for rehearing).  The law of the circuit doctrine renders the decision of a
panel of circuit judges binding on all other panels within that circuit, *LaShawn A. v. Barry*, 87
F.3d 1389, 1395 (D.C. Cir. 1996) (en banc), and also on district courts within that circuit.  And,
"[t]he requirement that jurisdiction be established as a threshold matter ... is 'inflexible and
without exception." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 577 (1999) (internal
quotation marks and citations omitted).

independent provision of the MCA which expressly bars any claims regarding other non-*habeas* matters "relating to any aspect of detention, transfer, treatment, trial, or conditions of confinement."[5] *Compare* 28 U.S.C. § 2241(e)(1) (added by MCA 7(a)) ("No court, justice, or judge shall have jurisdiction to hear or consider an application for a writ of habeas corpus filed by or on behalf of an alien detained by the United States who has been determined by the United States to have been properly detained as an enemy combatant or is awaiting such determination.") *with* 28 U.S.C. § 2241(e)(2) (added by MCA 7(a)) ("[with the exception of Detainee Treatment Act proceedings initiated in the Court of Appeals,] no court, justice, or judge shall have jurisdiction to hear or consider any other action against the United States or its agents relating to any aspect of the detention, transfer, treatment, trial, or conditions of confinement [of alien enemy combatant detainees]") (emphasis added). Because the relief requested by petitioner in this motion falls under § 2241(e)(2), even if the Supreme Court were to invalidate § 2241(e)(1) such a decision would have no effect on the jurisdictional obstacle most relevant here.

Petitioner does not address the jurisdictional bar in his motion other than to suggest that the Chief Justice's denial of petitioner's similar request for relief in his original *habeas* petition

---

[5] *See also Wilkinson v. Dotson*, 544 U.S. 74, 79, 80 (2005) (explaining that the "core" relief afforded by the writ of *habeas corpus* is "immediate release or a shorter period of confinement") (internal quotation marks omitted); *id.* at 86 (Scalia, J., concurring) ("It is one thing to say that permissible habeas relief, as our cases interpret the statute, includes ordering a quantum change in the level of custody, such as release from incarceration to parole. It is quite another to say that the habeas statute authorizes federal courts to order relief that neither terminates custody, accelerates the future date of release from custody, nor reduces the level of custody.") (internal quotation marks and citation omitted); *Brown v. Plaut*, 131 F.3d 163, 168-69 (D.C. Cir. 1997) (acknowledging that *habeas* might conceivably be used to challenge prison conditions, but indicating that requiring use of *habeas* in such cases would extend the writ beyond its core).

proceeding in the Supreme Court, somehow means that relief is available in this Court, Petr's

Memo. at 3, a proposition that finds no support in the Chief Justice's denial of relief without

comment.  In any event, it is clear that jurisdiction over petitioner's request for emergency

injunctive relief cannot be found in other sources, such as the All Writs Act, 28 U.S.C. § 1651.

Indeed, the broad, unambiguous language of the MCA plainly covers any jurisdiction that could

possibly be afforded under § 1651.  *See Boumediene*, 476 F.3d at 988 n.5 ("Section 7 is

unambiguous").  Moreover, the All Writs Act provides only that federal courts "may issue all

writs necessary or appropriate in aid of their respective jurisdictions."  28 U.S.C. § 1651(a).  The

Act, however, "'confines the authority to the issuance of process 'in aid of' the issuing court's

jurisdiction . . . .  [T]he Act does not enlarge that jurisdiction.'"  *In re Tennant*, 359 F.3d 523,

527 (D.C. Cir. 2004) (quoting *Clinton v. Goldsmith*, 526 U.S. 529, 534-35 (1999)).  Thus, when

an issue that is the subject of a request for a writ is "beyond the . . . [court's] jurisdiction to

review[, it is] . . . beyond the 'aid' of the All Writs Act in reviewing it."  *Clinton v. Goldsmith*,

526 U.S. at 535.

      In its February 6, 2008 Order, the Court directed that "if respondents contend that this

Court has no current jurisdiction or authority [to entertain petitioner's motion], they shall specify

and explain what court or other forum, if any, does have such jurisdiction and authority."  As

explained above, under the MCA, "no court, justice, or judge shall have jurisdiction to hear or

consider any . . . action against the United States or its agents relating to any aspect of the

detention, transfer, treatment, trial, or conditions of confinement [of alien enemy combatant

detainees]," except for the exclusive review granted to the Court of Appeals under the DTA for

seeking review of a Department of Defense CSRT's final decision that an alien is properly

designated as an enemy combatant.  As the government has explained in its filings in petitioner's appeal of this Court's November 2, 2006 Order, and in DTA cases regarding other detainees, the Court of Appeals' DTA jurisdiction (as delineated in DTA § 1005(e)(2)(B)-(C)) is limited to review of the final CSRT determinations, and does not extend to the type of medical and conditions claims asserted here.  That, of course, is an issue for that Court.  In any event, the MCA is unambiguous that this Court has no jurisdiction over such matters.

In light of the jurisdictional bar to petitioner's request for injunctive relief, the Court should deny petitioner's motion.  *See also Hicks v. Bush*, No. 02-CV-0299 (CKK), 2007 WL 902303 at *6 (D.D.C. Mar. 23, 2007) (denying motion to enjoin military commission proceeding because "*Boumediene* holds that this Court lacks jurisdiction to even consider Petitioner's claims, such that this Court is precluded from even engaging in a balancing of the factors that would be considered on a motion for a preliminary injunction.").

## II.    PETITIONER'S MOTION WOULD HAVE TO BE DENIED IN ANY EVENT BECAUSE PETITIONER FAILS TO SATISFY THE REQUIREMENTS FOR A PRELIMINARY INJUNCTION.

In light of the insurmountable jurisdictional bar to this Court's consideration of petitioner's request for injunctive relief, the Court should deny petitioner's motion without consideration of whether petitioner has met the stringent requirements for preliminary injunctive relief.  *See Hicks*, No. 02-CV-0299 (CKK), 2007 WL 902303 at *6 (D.D.C. Mar. 23, 2007).  Even if the Court were to move beyond the jurisdictional bar to consider petitioner's motion on the merits, however, petitioner has failed to establish that he meets the legal requirements for obtaining preliminary injunctive relief.

It is well-established that a request for preliminary injunctive relief "is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997); *Cobell v. Norton*, 391 F.3d 251, 258 (D.C. Cir. 2004). To prevail in a request for a preliminary injunction, a movant "must 'demonstrate 1) a substantial likelihood of success on the merits, 2) that [he] would suffer irreparable injury if the injunction is not granted, 3) that an injunction would not substantially injure other interested parties, and 4) that the public interest would be furthered by the injunction.'" *See Katz v. Georgetown Univ.*, 246 F.3d 685, 687-88 (D.C. Cir. 2001) (quoting *CityFed Financial Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 746 (D.C. Cir. 1995)).

### A.    Petitioner Has Failed to Establish That He Faces Imminent Irreparable Injury.

The irreparable harm that must be shown to justify a preliminary injunction "must be both certain and great; it must be actual and not theoretical." *Wisconsin Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985). "Injunctive relief will not be granted against something merely feared as liable to occur at some indefinite time; the party seeking injunctive relief must show that the injury complained of is of such *imminence* that there is a clear and present need for equitable relief to prevent irreparable harm." *Id.* (citations and internal quotation marks omitted; emphasis in original). *See also* Oct. 2, 2006 Mem. Op. & Order, 2006 WL 2844781 at *5 ("the 'D.C. Circuit has set a high standard for irreparable injury'") (quoting *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006)). Petitioner has failed to carry his burden of establishing imminent irreparable injury in this case, and his motion may be denied on that ground alone. As this Court has previously explained, "[b]ecause a showing of irreparable

harm is the basis of injunctive relief . . . a 'movant's failure to show any irreparable harm is therefore grounds for refusing to issue a preliminary injunction.'" *See* Oct. 2, 2006 Mem. Op. & Order, 2006 WL 2844781 at *3 (quoting *Chaplaincy of Full Gospel Churches*, 454 F.3d at 297); *see also CityFed Financial Corp.*, 58 F.3d at 747 (failure to make showing of irreparable injury sufficient to deny preliminary injunction).

With respect to the issue of irreparable harm in his latest motion for a preliminary injunction, petitioner first resurrects allegations that he "has both Hepatitis B and tuberculosis," Petr's Memo. at 5-6, and that he has received "absolutely no treatment" for either condition, *id.* at 4. *See also id.* at 8, 13. These allegations are misleading and false. The two previous declarations from the Commander, U.S. Naval Hospital, Guantanamo Bay, Cuba, and Joint Task Force Surgeon for Joint Task Force – Guantanamo Bay, Cuba, submitted in connection with respondents' opposition to petitioner's prior motion for emergency medical treatment and respondents' opposition to petitioner's motion to reconsider the denial of his motion for emergency medical treatment, explained the medical care facilities and resources available to Guantanamo detainees, as well as the extensive and individualized examination, diagnosis, testing, monitoring, and treatment previously provided petitioner. *See* Declaration of Captain Ronald L. Sollock, M.D., Ph.D. (Exhibit 1 to dkt. no. 41) ("Sollock Decl."); Second Declaration of Captain Ronald L. Sollock, M.D., Ph.D., (Exhibit 4 to dkt. no. 51) ("Second Sollock Decl."). In addition, the declaration of the Captain Bruce C. Meneley, M.D., Commanding Officer, Naval Hospital, Commander, Joint Medical Group, Guantanamo Bay, and Joint Task Force Surgeon for Joint Task Force – Guantanamo Bay, Cuba, ("Meneley Decl."), submitted herewith as Exhibit B,

supplements, updates, and further explains the extensive and responsible care provided petitioner and refutes petitioner's allegations.

With respect to petitioner's tuberculosis diagnosis, as explained in connection with petitioner's last motion for an injunction regarding medical care, petitioner was diagnosed with *latent* tuberculosis, which means that the body has been exposed to the tuberculosis mycobacterium, but has no symptoms or findings of active disease. *See* Second Sollock Decl. ¶ 3(a)-(b); Sollock Decl. ¶ 13; *see also* Nov. 2, 2006 Mem. Op. & Order at 4-5. In accordance with Guantanamo's practices, petitioner was specifically informed about his latent tuberculosis diagnosis and possible treatment.[6] Second Sollock Decl. ¶ 3(b). After having been explained the risk of developing an active case of the disease later in life, however, petitioner refused treatment. *Id.* ¶ 3(b). Further, the declaration of Dr. Meneley notes that there has been no change either in petitioner's diagnosis of latent tuberculosis, the fact that petitioner "does not currently exhibit signs or symptoms of active tuberculosis," or the fact that petitioner continues to refuse treatment for his latent tuberculosis. *See* Meneley Decl. ¶ 8.

With respect to petitioner's Hepatitis B situation, petitioner revealed a possible history of Hepatitis B during an examination provided upon his arrival at Guantanamo, and after testing in August 2002 confirmed that petitioner had Hepatitis B, he was advised of the test results and of the screening and treatment options available to him. Second Sollock Decl. ¶ 2(d)-(e). The testing gave results consistent with inactive Hepatitis B carrier state, meaning that petitioner was not an active Hepatitis B carrier and his situation warranted only periodic liver testing. *Id.* ¶ 2(e).

---

[6] The treatment regime consists of a nine-month regime of oral antibiotics and a vitamin. *See* Second Sollock Decl. ¶ 3(a).

Petitioner was subsequently offered laboratory testing related to Hepatitis B, as well as ultrasound monitoring, on multiple occasions, and sometimes petitioner consented to such tests, while sometimes he did not. *Id.* ¶¶ 2(f), 5; Sollock Decl. ¶¶ 12, 14-15. His test results and monitoring at the time were not indicative of active liver disease or liver cancer. Second Sollock Decl. ¶¶ 2(f), 5; Sollock Decl. ¶¶ 12, 14-15.

Petitioner now claims that he was diagnosed in September 2007 with a "severe liver infection" and subsequently offered a liver biopsy for further diagnostic purposes, but was "scared out of" it by Guantanamo medical personnel. *See* Petr's Memo. at 9. As reflected in Dr. Meneley's declaration, while petitioner's inactive Hepatitis B carrier state and test results previously did not recommend treatment beyond periodic laboratory testing, laboratory tests in late 2006 and August 2007 revealed that petitioner's liver biochemistries were slightly elevated above what would normally be seen with a typical Hepatitis B carrier. Meneley Decl. ¶ 6. Because such an elevation over this time period was a possible sign of active Hepatitis B or cirrhosis, though not diagnostic of those conditions, and consistent with its commitment to quality medical care for detainees, Guantanamo medical personnel informed petitioner of the test results and sought petitioner's permission to perform a liver biopsy, a minimally invasive procedure with a low complication rate, in order to assess petitioner's condition and any appropriate further treatment. *Id.* ¶¶ 6-7. Consistent with the informed consent standards and practices at Guantanamo,[7] petitioner was informed of his lab results; the need for a liver biopsy;

_____

[7] As previously explained by Dr. Sollock,

It is the standard practice of medical providers in the Joint Medical Group (JMG) at JTF-GTMO to discuss with detainees their diagnoses and provide recommendations for further evaluation and treatment. Counseling is provided on

and the nature, low risks, and benefits of the procedure. *Id.* Petitioner, however, has refused to consent to a biopsy.[8] *Id.* Recently, he has also refused to have further blood tests for monitoring of his liver biochemistries, including earlier this month, despite counseling by Guantanamo medical personnel on multiple occasions that his refusal of the biopsy and blood tests may be detrimental to his health. *Id.* ¶ 7. The Guantanamo medical staff intends to offer the tests again in the very near future, and petitioner will receive the liver biopsy once he consents to the procedure. *Id.*

     Most incredibly, petitioner also alleges that most recently, he was diagnosed with AIDS and has been denied any treatment for the condition. In fact, however, petitioner does not have AIDS. As explained by Dr. Meneley, petitioner was tested (for the fourth time) as recently December 2007 for HIV, the virus that causes AIDS, and each test has been HIV negative. *Id.* ¶ 5.

     Given that petitioner does not have AIDS, petitioner's counsel is left with the outrageous accusation, supported by no competent evidence, that petitioner was lied to by the medical staff and told he has AIDS as part of "some kind of psychological torture, in which the DOJ is

---

    the potential risks and benefits of treatment, as well as the consequences involved with decisions, including the risks associated with rejection of care. The communication is facilitated with the assistance of an interpreter, and opportunities for the detainee to ask questions are available at every encounter with medical providers. Obtaining direct or implied informed consent is a routine part of any testing, treatment, and medical procedure, which includes a review of risks and benefits, as well as any available alternatives.

Second Sollock Declaration ¶ 1.

   [8] Petitioner was last seen by a gastroenterologist on November 20, 2007, at which time he again refused to consent to a biopsy. Meneley Decl. ¶ 7 n.3.

acquiescing." Petr's Memo. at 5.  As explained in Dr. Meneley's sworn declaration, there is no

evidence of which he is aware (apart from petitioner's bare allegations) that petitioner was told

he has AIDS, nor would the Guantanamo medical staff be permitted, under the rules and

protocols governing them, to provide a detainee with other than truthful information regarding

any diagnoses.  Meneley Decl. ¶ 5.  In fact, petitioner was informed of the negative results of

each of his HIV tests.  *Id.*  So there is another explanation for petitioner's version of events

reflected in his latest filing:  he is simply not telling the truth or has somehow deceived himself

into believing something that is not true.  Indeed, Dr. Meneley's declaration indicates that

petitioner on multiple occasions has stated that he does not believe the Guantanamo physicians

who have told him he is HIV negative.  *See id.*

Similarly, petitioner's story that Guantanamo medical personnel gave him false

information concerning the risks involved with a liver biopsy, "scaring" him out have having the

procedure, is false.  *See* Meneley Decl. ¶ 7; *id.* ¶ 5 (Guantanamo medical staff are not permitted,

under the rules and protocols governing them, to provide a detainee with other than truthful

information regarding any diagnoses or treatment).  The most charitable view of petitioner's

story, according him every favorable inference (contrary to the burdens of proof and persuasion

in the preliminary injunction context), is that petitioner has simply misunderstood the relative

paucity of risks involved in the biopsy procedure.  But whether petitioner's story is based on his

own mistake, failed memory, or deceit, the fact remains, as explained by Dr. Meneley, that the

procedure is minimally invasive, has a low complication rate, is not contraindicated for

petitioner, and is available to petitioner should he be willing to consent to it.  Meneley Decl.

¶¶ 6-7.

Finally, since the briefing in September-October 2006 on petitioner's previous motion for an injunction relating to medical care, petitioner has been offered and received treatment for various conditions, including changes in eyesight associated with age and genetic predisposition, skin itching, a kidney stone, reflux, and H. Pylori (a bacteria responsible for digestive distress and illnesses).[9]  *See* Meneley Decl. ¶¶ 9-12.[10]   Petitioner's weight is 164 pounds, 105% of his ideal body weight.  *Id.*

In sum, Guantanamo has provided petitioner conscientious and thorough medical care, and any tests or treatment petitioner has not received has been petitioner's own choice, consistent with Guantanamo's provision of appropriate medical care based on informed consent.  Further, petitioner does not have AIDS.  Far from neglecting petitioner's health, Guantanamo medical personnel have provided and are providing petitioner with comprehensive and attentive medical care.  Consequently, petitioner has not carried his burden of establishing an imminent threat of irreparable harm related to Guantanamo's provision of medical care to him.  Petitioner's motion for preliminary injunction, therefore, should be denied.

### B.    Petitioner's Motion Is Not Likely to Succeed on the Merits.

In addition to lacking a justifiable factual basis, petitioner is not likely to succeed on the merits of his request for injunctive intervention into the medical care provided Guantanamo detainees.  As an initial matter, as explained *supra* § I, petitioner's request cannot succeed

---

[9] Petitioner was evaluated by medical staff or gastroenterology consultants on ten occasions over the last eleven months regarding his digestive system complaints.  Meneley Decl. ¶ 10.

[10] It is conceivable that these conditions could explain some of petitioner's assertions regarding his physical condition apparently made to his counsel during her visits with him since October 2006, *see* Petr's Memo., Aff. of H. Candace Gorman ¶ 46.

because the MCA deprives this Court of jurisdiction to consider petitioner's request for relief. Even beyond the controlling authority on that issue, however, petitioner has no likelihood of success.

Petitioner appears to ground his claim to court intervention primarily in due process considerations.[11]  *See* Petr's Memo. at 6.  The Court of Appeals in *Boumediene*, however, concluded that alien detainees held at Guantanamo such as petitioner have no constitutional rights, *see* 476 F.3d at 988-94; thus, petitioner cannot succeed on a claim grounded in constitutional due process rights.[12]

---

[11] Petitioner appears to assume that the likelihood of success he must show pertains to the likelihood that he will ultimately prevail in the *habeas* action.  *See* Petr's Memo. at 11-12.  As this Court has determined in another Guantanamo detainee case, however, it is not the likelihood of success on the ultimate issues or claims pertaining to detention that matters for purposes of a motion for preliminary injunction.  Rather, the likelihood of success analysis focuses on the legal basis for petitioner to obtain the specific relief sought in his motion, in this case an injunction regarding medical care.  *See Al-Anazi v. Bush*, 370 F. Supp. 2d 188, 194 (D.D.C. 2005) (Bates, J.).

[12] Petitioner also appears to ground his requests for relief, in part, on a right to counsel, that is, he claims that a right to counsel entitles him to production of his medical records. Petitioner has no likelihood of success on such a claim.  Petitioner's argument in this regard is, in the first instance, illogical and unworkable: it admits of no limiting principle and reduces every attempt to resist discovery, no matter how well grounded in legal principles governing such matters, into an attempt to interfere with the requesting litigant's "right to counsel."  Indeed, petitioner cites no authority for his argument.  Further, petitioner's request for medical records manifestly pertains to an issue going beyond the core of what is properly the subject of a *habeas corpus* case like this.  *See supra* note 5.  And to the extent Judge Kessler's opinion in *Al-Joudi v. Bush*, 406 F. Supp. 2d 13 (D.D.C. 2006), somehow could be viewed as supporting petitioner's argument, it should be noted that Judge Kessler's reasoning was grounded in an All Writs Act analysis.  *See id.* at 21-22.  As explained *supra*, in light of the MCA's clear withdrawal of jurisdiction over petitioner's case and requests for relief, the All Writs Act can provide no basis for petitioner's argument based on a right to counsel in this case.  Thus, petitioner's argument has no likelihood of success.  And as explained above, under the separate legal standards governing whether petitioner is entitled to the relief he requests, including the production of medical records, petitioner is not entitled to relief.  *Cf. United States v. Williams*, 977 F.3d 866, 870-72 (4th Cir. 1992) (where criminal defendant claimed that court's denial of his motion for access to

Even beyond these controlling considerations, respondents have previously noted that whether the "deliberative indifference" standard applied under the Due Process Clause to requests for relief related to medical care in the domestic prison context translates without alteration to the context of detention of enemy combatants by the military during a time of war, is debatable at best. Indeed, separation of powers concerns would require satisfaction of an even more stringent standard before judicial intervention would be warranted in a case like this, where petitioner is challenging the practices of a military detention center during a time of war. *See* Resps' Opp. to Petr's Emerg. Motion for Access to Medical Records and For Emerg. Medical Treatment at 14 n.10 (dkt. no. 41); *cf. O.K. v. Bush,* 377 F. Supp. 2d 102, 112-13 n.10 (D.D.C. 2005) (Bates, J.) (noting that substantive due process analysis is dependent upon the precise circumstances involved and that "[n]o federal court has ever examined the nature of the substantive due process rights of a prisoner in a military interrogation or prisoner of war context"). Even if the "deliberate indifference" standard were applied, however, petitioner would not have a likelihood of success on his claim.

As noted by the Court previously in this case, "deliberate indifference" is found where officials were 'knowingly and unreasonably disregarding an objectively intolerable risk of harm to the prisoners' health or safety.'" Oct. 2, 2006 Mem. Op. & Order, 2006 WL 2844781 at *4 (citation omitted). Mere allegations of "mistake or difference of opinion," or even "negligence," will not do, and courts are not to "sit as boards of review over the medical decisions of prison officials, and they will not second-guess the adequacy of a particular course of treatment." *Id*.

---

certain information deprived him of effective assistance of counsel under the Sixth Amendment, Court of Appeals rejected the argument, relying on separate law applicable to discovery of such information).

(citations omitted).  Accordingly, the standard a litigant must meet in order to show a likelihood of success that would support Court intervention into medical care provided detainees is very high.  Petitioner's showing in his motion falls far short of that standard.

As before, the facts do not support any finding that the Guantanamo staff has been deliberately indifferent to the health or well-being of petitioner.  To the contrary, the record demonstrates that petitioner has been provided high-quality, comprehensive medical care. Petitioner is asking the Court to involve itself in second-guessing that care,[13] a step that is improper under the law and particularly unwarranted in this case.

Similarly, petitioner has no legitimate legal basis for access to medical records. Petitioner's arguments for production of petitioner's medical records at bottom are the same arguments that the Court has before considered and rejected.  It is evident that the request for records, as the Court previously noted, is ultimately and improperly tied to a desire to use them "for the purpose of obtaining second opinions from outside medical practitioners."  Oct. 2, 2006 Mem. Op. & Order, 2006 WL 2844781 at *5; *see also Al Odah v. United States*, 406 F. Supp. 2d 37, 44 (D.D.C. 2005) (Kollar-Kotelly, J.) (pre-*Boumediene* decision; detainee lacked likelihood of success on merits of claim to entitlement to medical records given health care being provided by Guantanamo, "[s]ince logically the provision of medical records and/or medical reports will not result in any further protection of the life of a detainee without intermediate scrutiny of the

---

[13] Notably, the affidavit of Dr. Reichen does nothing more than once again attempt to second-guess the medical care being provided petitioner by Guantanamo authorities, this time based merely upon a conclusory statement purportedly grounded in Dr. Reichen's prior affidavits– affidavits that the Court previously considered and rejected as insufficient to demonstrate "deliberate indifference" by the Guantanamo medical staff.  *See* Petr's Memo., Aff. of Dr. Juerg Reichen ¶ 14; Oct. 2, 2006 Mem. Op. & Order, 2006 WL 2844781 at *4-*5.

records by medical professionals and challenges to the Court based on that scrutiny, and since

courts are reluctant to interfere with the medical treatment of prisoners in general").

And to the extent petitioner claims that access to his medical records is needed to "be sure

that any 'treatment' he receives is applicable to his actual medical conditions," Petr's Memo. at

6, that contention boils down to one that Dr. Meneley simply cannot be trusted and that he is

lying about petitioner's health status and the contents of the medical records pertaining to

petitioner. This not an appropriate basis upon which to require the production of medical

records. Captain Meneley is a physician and Captain in the U.S. Navy, who serves as the

Commander of the Joint Medical Group, Guantanamo Bay, and Task Force Surgeon for Joint

Task Force-Guantanamo, and he has provided his declaration under penalty of perjury. There is

no basis for the extraordinary step of rejecting out of hand the sworn declaration of such an

officer, based upon the tale of a detainee held as an enemy combatant by the military during an

ongoing war. To require the production of medical records in such circumstances would

essentially mean that any detainee who could concoct or imagine a sympathetic story would be

able to force production of his medical records by military authorities. Not only would such an

arrangement ignore the burden of proof and persuasion the law imposes upon a litigant who

seeks injunctive relief, it is pregnant with the potential for mischief and the enabling of

detainees' ability to impose, malevolently or otherwise, nuisance, burden, and unwarranted

criticism upon military authorities, especially given the number of detainees at Guantanamo, *see*

Meneley Decl. ¶ 1, and it should be rejected.

Accordingly, petitioner's requests for relief cannot succeed, and his motion, therefore,

should be denied.

**C.    The Relief Requested Would Impose Undue Burdens on the Government and the Public Interest.**

Petitioner's requests for relief also should be denied because granting them would impose inappropriate and potentially significant burdens on Guantanamo and improperly interfere with the appropriate operation of Guantanamo's provision of medical care to detainees.  Not only does petitioner's requested medical relief seek to interfere, in unspecified ways, with the competent medical judgment and expertise of the Guantanamo medical staff regarding the provision of care to petitioner, requests for medical intervention and records cannot be viewed in isolation or confined to just the petitioner at issue in the present motion.  Any order granting the forms of relief petitioner seeks might be seen by Guantanamo detainee petitioners in other cases as providing a basis to demand similar types of remedies, resulting in significant cumulative burdens on Guantanamo, not only with respect to enduring such remedies, but even litigating the requests.[14]  *See also supra* at 21; *cf. Hamdi v. Rumsfeld*, 542 U.S. 507, 538-39 (2004) (plurality opinion) (adjuring lower courts generally to "proceed with the caution that is necessary" and to take only "prudent and incremental" steps when faced with novel issues pertaining to petitions for writs of habeas corpus from detainees involved in the current war on terror).

Furthermore, the public has a strong interest in assuring that the military operations and medical care provided at Guantanamo are not interrupted, overly burdened, and second-guessed by the unnecessary or contra-factual demands of a detainee pertaining to the particulars of his medical care.  As demonstrated above, the Guantanamo staff has taken and intends to continue

---

[14] Respondents note that with this brief, respondents have now submitted a total of three declarations from Guantanamo medical authorities detailing the medical care provided petitioner (not to mention the fact that when the Court rules on petitioner's present motion, it will have issued three separate opinions regarding medical care), and that is just in this one case.

taking appropriate and careful measures to address the health and medical needs of petitioner.

Accordingly, to avoid the unnecessary burdens imposed by petitioner's motion and requested

relief, the interests of the government and the public interest would best be served if the Court

denied the motion.

## CONCLUSION

For the reasons stated above, respondents respectfully request that petitioner's motion for

emergency medical treatment and access to petitioner's medical records be denied in all respects.

Dated: February 15, 2008                    Respectfully submitted,

                                            JEFFREY S. BUCHOLTZ
                                            Acting Assistant Attorney General

                                            DOUGLAS N. LETTER
                                            Terrorism Litigation Counsel

                                            _ /s/ Terry M. Henry_
                                            JOSEPH H. HUNT (D.C. Bar No. 431134)
                                            VINCENT M. GARVEY (D.C. Bar No. 127191)
                                            JUDRY L. SUBAR (D.C. Bar 347518)
                                            TERRY M. HENRY
                                            JAMES J. SCHWARTZ
                                            JEAN LIN
                                            ROBERT J. KATERBERG
                                            ANDREW I. WARDEN
                                            NICHOLAS A. OLDHAM
                                            JAMES C. LUH
                                            United States Department of Justice
                                            Civil Division, Federal Programs Branch
                                            20 Massachusetts Ave., N.W.
                                            Washington, DC  20530
                                            Tel:  (202) 514-4107
                                            Fax:  (202) 616-8470

                                            Attorneys for Respondents