IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ABDUL HAMID AL-GHIZZAWI )<br>     Prisoner, )<br>     Guantanamo Bay Naval Station )<br>     Guantanamo Bay, Cuba; )<br> )<br> )<br>          *Petitioner*, )<br> )<br>v. )<br> )<br> )<br> )<br> )<br>GEORGE W. BUSH, et. al. )<br>          *Respondents*. ) | Reply to Emergency Motion<br>for Medical Treatment<br>(Expedited consideration<br>requested )<br>No.  05 cv  2378 (JDB) |

REPLY TO AL-GHIZZAWI'S *NEW* EMERGENCY MOTION FOR MEDICAL
TREATMENT AND MEDICAL RECORDS
(WITH IRREPARABLE INJURY STILL ACCOUNTED FOR)

Now comes the Petitioner Al-Ghizzawi in Reply:

**I.  JURISDICTION**

The opposition by the Government is, if nothing else, consistent with its position in every court it has argued: no court has jurisdiction over this matter and hence this Court need not concern itself with the fact that the United States of America is holding human beings at Guantanamo Bay. As far as the United States government is concerned and notwithstanding the Supreme Court's express holdings to the contrary in *Rasul v. Bush,* 542 U.S. 466 (2004) and *Hamdan v. Rumsfeld,* _U.S. _, 126 S.Ct. 2749 (2006), Guantanamo Bay remains the ultimate and the quintessential legal black hole, simply beyond the jurisdiction of American courts (no matter how many times the Supreme Court of the United States holds otherwise)… Of course, if this or no other court has

jurisdiction in this matter then Al-Ghizzawi will die of unnatural causes in the American detention facility on the American naval base at Guantanamo Bay, Cuba. … It really is that simple.

While the Supreme Court will ultimately pass on the Constitutionality and applicability of the Military Commissions Act (MCA) this Court must continue to retain jurisdiction in the interim (or if nothing else, the power and jurisdiction to issue orders to preserve the status quo pending the ultimate determination of jurisdiction …and maintaining the status quo includes keeping Al-Ghizzawi alive). Certainly the Circuit Court has not addressed in *Boumediene v. Bush* 476 F.3d 981 (D.C. Cir. 2007) or elsewhere the question raised on this present motion: Does the MCA allow the government to withhold life sustaining medical treatment without judicial oversight or recourse?

In addition, it is clear from the DC Circuit Court in *Bismullah v. Gates* 06-1197 (most recently that court's order of 2/1/2008) that even that court understands and acknowledges that the prisoners at Guantanamo have a fundamental right to counsel. By withholding medical treatment and not allowing Al-Ghizzawi and his counsel full access to his medical file the government is (amongst other things) denying to Al-Ghizzawi his right to counsel because in order for the right to counsel to have meaning, Petitioner's counsel must be kept informed of the health of her client especially in a situation such as this where the government now admits (in a vague and carefully crafted way) that her client's liver problems have worsened in the intervening 18 months (and in fact started to noticeably worsen at the time Al-Ghizzawi filed his original motion.)  It is also clear that the government is still not treating Al-Ghizzawi's

serious health problems either out of incompetence, ignorance, or malfeasance… or all of the above.  Further, the request for access to medical records and emergency medical treatment is a narrow, specifically tailored form of relief sought only to protect Petitioner's health and welfare in light of symptoms of potentially fatal illnesses.

Notwithstanding the seeming absurdity that Al-Ghizzawi is required to compare the grave risk of irreparable injury and likelihood of success on the merits with the potential injury to the government and public interest concerns *before* he can assert the right to seek competent medical care, Al-Ghizzawi has nonetheless made the argument in his opening brief and has made the requisite showing in the present motion.  *See Katz v. Georgetown Univ.*, 246 F.3d 685, 687-688 (D.C. Cir. 2001).  "These factors interrelate on a sliding scale and must be balanced against each other." *Serono Labs, Inc. v. Shalala*, 158 F.3d 1313 (D.C. Cir. 1998).  "If the arguments for one factor are particularly strong, an injunction may issue even if the arguments in the other areas are rather weak."  *City Fed. Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 746 (D.C. Cir. 1995).

## II.  IRREPARABLE HARM IS ALSO SHOWN THROUGH THE CONFLICTING AFFIDAVITS OF THE GUANTANAMO DOCTORS THAT CONFIRM AL-GHIZZAWI'S LIVER CONDITION IS WORSENING AND THAT THE GOVERNMENT CANNOT BE TRUSTED WITH RESPECT TO PROVIDING ACCURATE INFORMATION AS TO HIS CONDITION

In a disappointing but not surprising twist that could only occur in the Kafkaesque world of Guantanamo litigation the government now challenges one of the allegations leading to the present motion stating "incredibly petitioner also alleges he has AIDS…. ". (Opposition at 15) Incredible indeed.  It is *incredible* that the unfortunate

3

Al-Ghizzawi was given the devastating information that he had AIDS by a physician at the base and had that fact confirmed one week later. In response to this likely terminal diagnosis, Al-Ghizzawi's counsel asked the government to confirm the report (or deny) that Al-Ghizzawi was diagnosed with AIDS (see, Ex. D ¶77).  *Incredibly*, the government's own attorney refused that simple request and now in the kind of Orwellian double–speak that has been rampant throughout this litigation, attempts to turn the tables and assert that Al-Ghizzawi's reporting of what a base physician has told him to his counsel and counsel's reporting of it to the court is an "outrageous accusation." The *outrage* is that the government has continually refused to set the record straight on the issue of the AIDS diagnosis when it had the chance (if indeed it has even set that record straight now) and shamefully attempts to cast aspersions at Al-Ghizzawi and his counsel.

The affidavit of Dr. Bruce C. Meneley, Guantanamo's newest Commanding Officer of the naval hospital effectively shows little more than that Dr. Meneley, a dermatologist[1] by specialty, is not himself competent in regards to hepatitis treatment and diagnosis[2]  and represents little more than a cynical attempt on the part of the Government to respond to the form of this Court's order directing an explanation of Al-Ghizzawi's medical condition while still avoiding responding to it in substance.  Dr.

---

[1] Some have suggested a dermatologist is an appropriate doctor for this tropical island. Certainly Dr. Meneley can treat prisoners for the skin cancer they will undoubtedly suffer as a result of the time they spend in the sun because GTMO authorities consider sunblock a comfort item to be provided only to the most compliant prisoners.

[2] http://www.appointmentnet.com/view_doctor/state/california/city/Twentynine%20Palms/zip/92277/did/2370063/name/BruceMeneley/index.html )

4

Meneley's vague affidavit, which relies not on his personal doctor-patient relationship with Al-Ghizzawi or his own expertise, but instead relies on the very records that Al-Ghizzawi and his counsel are not allowed to view (and the government withholds even from an *in camera* submission to this Court), appears to be little more than an attempt to conceal rather than to enlighten.  What is clear from Meneley's affidavit is that Al-Ghizzawi's condition has seriously worsened over these eighteen months and no explanation is offered for why this is the case. What is also clear is that Dr. Meneley's affidavit contradicts the earlier affidavits of Guantanamo's Dr. Sollock.

Dr. Meneley admits in his affidavit that Al-Ghizzawi's test results from November 2006 and again in August 2007 show "elevated" viral markers which the doctor vaguely describes as "slightly elevated."  What Meneley doesn't discuss is why these tests were run in November 2006 a few short weeks after Dr. Sollock stated under oath in his October 16th 2006 affidavit that Al-Ghizzawi's "routine" hepatitis test results from September 2006 indicated clean health and were "normal."  (Unexplainably those September results were not available until October 2006, *after* this Court denied Al-Ghizzawi's original motion.) This Court understandably relied upon Sollock's affidavit in finding that Al-Ghizzawi did not make the requisite showing to get the treatment and records he sought). Also unclear is why Dr. Meneley doesn't even mention

the "routine" tests that were supposedly performed in September 2006 and finally available in October 2006. (Meneley Aff. at ¶ 6). [3]

Al-Ghizzawi submits a new and updated affidavit from world–renowned hepatologist (liver specialist) Dr. Jürg Reichen in support of this Reply and to point out to this Court why it must carefully scrutinize the conflicting affidavits of Dr. Meneley and Dr. Sollock and grant Al-Ghizzawi the relief sought. (Ex. E) Despite the false assertion by the government that Al-Ghizzawi "alleged" he had liver cancer when he filed his first motion (Gov. Opposition at 1), Al-Ghizzawi did not claim that he *had* liver cancer at that time. Rather, what he asserted was that untreated hepatitis B could lead to liver cancer and that it was possible, given the current state of his health, that he had liver cancer. That assertion is even truer today as the government apparently hid the actual test results and, unbelievably, withheld treatment for these eighteen months making the likelihood of liver cancer more probable.

In his affidavit Dr. Reichen, explains how the affidavits of Sollock and Meneley show that the doctors do not have the competence for properly diagnosing and/or treating Al-Ghizzawi for the liver problems he evidently suffers. One glaring example is Al-Ghizzawi's ongoing complaint of severe itching of the skin. According to Dr. Reichen, to a hepatologist this symptom is a red flag indicator of serious liver damage. (Ex. E ¶ 9) To Dr. Meneley, however, a dermatologist who clearly has no training to recognize this as a symptom of liver damage; this is nothing more than an annoying

---

[3] Dr. Meneley does refer to earlier normal tests but carefully refers to Sollock's ¶2e from second declaration not to the 2006 test Sollock claims was normal in ¶2f.

rash to be treated with topical medications. (Oppo. Ex. B ¶11) As Dr. Reichen points out, the affidavits taken together and separately raise many questions and provide few answers. Dr. Reichen also explains how non invasive tests could have been used to properly diagnose Al-Ghizzawi, how a biopsy is not necessary and how treatment could have and should have been conducted long ago. Dr. Reichen further explains how decisions about treatments can properly be made when tests are refused by a patient, a concept that seems to have escaped the medical staff at Guantanamo.

While the government's opposition continues to assert that any deterioration of Al-Ghizzawi's medical condition during his unlawful and inhumane confinement is entirely his own fault (as is presumably his confinement itself), Al-Ghizzawi cannot fundamentally have any confidence in the physicians or treatment at Guantanamo because of the consistent record of outlandish lies they have told him , counsel, and this Court) to date, and because of the Government's continued insistence on keeping his medical records out of the hands of a qualified physician, who can give Al-Ghizzawi competent medical advice in which he can have any degree of trust. (See, Ex. E ¶10) Tellingly, the Government only offers the conclusory affidavit of a dermatologist and had thus far refused to even deny that Al-Ghizzawi has AIDS until this very filing which leads to the inevitable conclusion that it wanted to keep Al-Ghizzawi thinking this was his diagnosis and that it simply hoped this Court would not require a response or a showing at all.

Despite the government attempts to obfuscate, here is what we know.  The government *claimed* it ran "routine" hepatitis tests after Al-Ghizzawi filed his original

emergency motion in August 2006. Dr. Ronald Sollock filed affidavits on September 8, 2006 and October 16, 2006. In the first affidavit Sollock testified that not all of the test results were in… (despite the fact that he didn't have the entire test results Sollock concluded that Al-Ghizzawi was a healthy man at Ex. 1 ¶ 10 and ¶ 15 to Gov. Opposition of September 8, 2006). This Court denied Al-Ghizzawi's motion and Al-Ghizzawi moved to reconsider. In Dr. Sollock's second affidavit he testified that the September test results were now available (Ex. 4 to Opposition of October 16, 2006 at the end of ¶ 2f) stating: "on September 5th 2006 Mr. Al-Ghizzawi was given a routine Hepatitis B follow-up. Mr. Al-Ghizzawi consented to having several lab tests performed that day however he refused to give a DNA sample." (See Reichen aff. at ¶ 5.2 and 5.3 discussing Sollock's lack of knowledge regarding DNA samples) Sollock went on to state, *under oath* that "the tests were returned as normal." Certainly this Court understandably relied on that statement in denying Al-Ghizzawi the relief he sought at that time.

     Now we have an affidavit from Dr. Meneley who doesn't even *mention* (let alone explain the disparities associated with) the "routine hepatitis tests" that were supposedly performed in September 2006 (and which Sollock described as having "normal" results) but instead Meneley describes the *abnormal* test results from November 2006: "laboratory tests conducted in November 2006 and August 2007 revealed that Mr. Al-Ghizzawi's viral markers were *slightly elevated above what would normally be seen with a typical Hepatitis B carrier*…" (*emphasis added*.) (Opposition Ex. B ¶6) Dr. Meneley never explains the composition of the actual viral markers or describes

8

what he believed to be "slightly elevated" "normal" or "a typical hepatitis B carrier", as if there were such a thing…. More tellingly, Dr. Meneley never mentioned the *phantom* tests from September 2006 that Dr. Sollock stated (under oath) produced results that "were normal." Hence, this affidavit raises many disturbing questions that call into question either the competence of the government's medical officers, or their veracity, or both. If they did in fact run "routine tests" in September 2006 and received those results in October 2006 why would they run those tests again in November 2006? And how could it be that tests were "normal" in October but one month later showed results that were "*slightly elevated above what would normally be seen with a typical Hepatitis B carrier?*"

So the government has created a factual dispute between its own affiants. Was Dr. Sollock lying when he said that hepatitis tests were conducted in September 2006 and the results were normal? Did the base physicians throw the September 2006 results out and perform new tests in November so they could cover their tracks before this Court? Or were the tests never run in September 2006 but they nevertheless told this Court they were? And why in the world after they learned in November 2006 that Al-Ghizzawi's viral markers were elevated would they not start to treat him? Instead, in December 2006, they sent this incredibly ill man to the cruel and inhumane isolation of camp 6 and left him there alone and untreated, to die.

Even if this Court were to conclude that Al-Ghizzawi has somehow made an inadequate showing of irreparable harm on the present record, Petitioner respectfully requests that this Court grant his request for access to his complete medical records that

9

would provide a basis for Al-Ghizzawi to establish his irreparable injury upon their presentation in an appropriately renewed motion. Petitioner respectfully submits that comparing the grave risk of irreparable injury to Al-Ghizzawi if he does not have access to his medical records, to his likelihood for success on the merits[4] and the fact that there has been no *adequate* showing by the government that the national interest will be threatened or even burdened by granting this minimal relief militates in favor of Al-Ghizzawi's instant motion.

      Further, given the compelling circumstances of this case, and that the government has created fact issues that Al-Ghizzawi's testimony will be required to address, Al-Ghizzawi respectfully also requests an expedited hearing on his Petition either with Mr. Al-Ghizzawi appearing in federal court, with this Court holding a hearing at Guantanamo or via appropriate teleconferencing to be arranged by the government (with Al-Ghizzawi's counsel at the same location as Al-Ghizzawi). Counsel for Al-Ghizzawi will be arriving at the base on the evening of February 25th for visits with her client on February 26th and 27th and would be amenable to such a hearing at that time as long as Drs. Sollock and Meneley are made available. Although counsel's cell phone does not work at the base the government knows where to find her at all times.

---

[4] A brief comment needs to be made regarding the governments circular argument in its footnote 11… that success is not measured by the likelihood of success on the ultimate merits but rather on whether this particular motion is successful. According to the government, if Al-Ghizzawi succeeds in this motion then he has won on the merits for purposes of this argument. It is an odd argument.

### III. Geneva Conventions

Despite pleas from the Executive branch, the U.S. Supreme Court refused to disregard this nation's obligations under the Geneva Conventions in *Hamdan v. Rumsfeld* _ U.S. _, 126 S. Ct. 2749 (2006). Those same Conventions require adequate medical care and *requires* the US government to treat serious illness or injury and to ensure that where a condition necessitates special treatment, a surgical operation or hospital care, the detainee must be brought to a facility where such treatment can be given, including a civilian facility. (Convention III, Art. 30 Paragraph 2)[5] In addition it is also required that medical inspections of internees shall be made at least once a month "to supervise the general state of health, nutrition and cleanliness of internees, *and to detect contagious diseases*, especially tuberculosis, malaria, and venereal diseases. Such inspections shall include, in particular, the checking of weight of each internee and, at least once a year, radioscopic examination." (Convention IV, Art. 92) It is clear from the affidavits of Dr. Meneley and Dr. Sollock that Al-Ghizzawi has not even had a chest x-ray since August 2004. (October16, 2006 Affidavit of Dr. Sollock ¶ 3b and Ex B ¶ 8 affidavit of Dr. Meneley.)

The Guantanamo medical facility has had more than sufficient time to treat Al-Ghizzawi if it were to do so effectively, and should not be given any further opportunity to malpractice upon, if not kill him. The Guantanamo medical facility has also shown through the affidavits of its commanding officers that it will go to any

lengths to hide their incompetence in diagnosing and treating Al-Ghizzawi, making it all the more imperative that Al-Ghizzawi be sent to an appropriate civilian medical facility in accordance with the Geneva Conventions.

### IV. PRISONER'S RIGHT TO MEDICAL RECORDS/TREATMENT UNDER OTHER CIRCUMSTANCES

If Al-Ghizzawi was a convicted criminal and sentenced to prison in the federal prison system he and his counsel would readily be allowed access to his medical records (and probably be able to achieve something resembling competent medical care). (See, United States Department of Justice, Federal Bureau of Prison's Program Statement 1351.05, section 14 (http://www.bop.gov/policy/progstat/1351_005.pdf).) [6] (See also, Benavides *v. Bureau of Prisons* 995 F.2d 269, 301 U.S.App.D.C. 369 (1993)) The fact that this man who has not even been *charged* with a single crime, (let alone convicted and/or sentenced) cannot view his own medical records[7] while the government knowingly withholds life sustaining medical treatment is iniquitous. ( See also, *U.S. v. West,* slip op, 2002 WL 1822417 (A.F.Ct.Crim.App. 2002) (prisoner convicted under Uniform Code of Military Justice may, if subjected to deliberate indifference in military jailer's medical treatment, state claim for 8th Amendment violation); *Cushing v. Tetter*, 478 F.Supp. 960 (D.R.I. 1979) (district court may consider question of whether

---

[5] http://64.233.169.104/search?q=cache:9loVbAY6ynsJ:www.icrc.org/ihl.nsf/COM/375-590038%3FOpenDocument+geneva+conventions+prisoner+of+war+medical+treatment+records&hl=en&ct=clnk&cd=10&gl=us&ie=UTF-8

[6] Or perhaps if he was a U.S. Citizen he would be allowed to review his medical records? (See, Omar v. Harvey, 514 f. supp. 2d 74 (D.D.C.2007).

[7] Of Course Al-Ghizzawi is presumptively entitled to these records under a freedom of information request. He sought those records under FOIA over a year ago. With the pending wait list perhaps in 5 or 6 years the records might be made available to him…., perhaps not.

return of service member to active duty where member may be psychologically unfit constitutes deliberate medical indifference constituting 8th Amendment violation); Article 55 of the Uniform Code of Military Justice prohibiting cruel and inhumane punishment).

## V. CONCLUSION

Al-Ghizzawi's health deteriorates from a disease that becomes less curable with each passing day that he sits in the cold isolation of Camp 6. It is clear that the government's dermatologist does not have the slightest idea as to how to diagnose and treat Al-Ghizzawi's medical conditions and apparently thinks Al-Ghizzawi should just sit and die if he won't allow them to perform a biopsy. The government's previous physician witness decided it was easier to lie than to admit they had a sick man that had gone unnoticed until he finally obtained an attorney. This situation is a national disgrace and although it might be difficult to do the right thing for Al-Ghizzawi, this Court has the power to say "enough is enough." Al-Ghizzawi humbly asks this Court to come to his rescue and grant the relief sought in his New Emergency Petition and given the compelling circumstances of this case, Al-Ghizzawi respectfully requests an expedited hearing on his Petition and an Order by this Court to move him to a competent <u>civilian</u> medical facility *post haste* and for whatever and further relief this Court deems just.

                Submitted by,

                */s/H. Candace Gorman*
                Counsel for Petitioner

## CERTIFICATE OF SERVICE

      I, H. Candace Gorman, certify that I today caused a true and accurate copy of AL-GHIZZAWI'S REPLY TO NEW EMERGENCY MOTION FOR MEDICAL TREATMENT AND RECORDS to be served upon the following persons by virtue of filing the above listed document with the U. S. Department of Justice Litigation Security Section:

                Terry Henry, Esq., Senior Trial Attorney
                Andrew I. Warden, Esq., Trial Attorney
                U.S. Department of Justice
                Civil Division, Federal Programs Branch
                20 Massachusetts Ave., NW, Room 7144
                Washington, DC  20530

This 21th day of February, 2008.

                                      /s/ H. Candace Gorman
                                      Counsel for Petitioner

Law Office of H. Candace Gorman
H. Candace Gorman (IL Bar #6184278)
200 S. Halsted Street - Suite 200
Chicago, IL 60661
Tel:  (312) 427-2313