IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ABDUL HAMID ABDUL SALAM AL-GHIZZAWI, | ) ) ) ) | |
| Petitioner, | ) ) ) | |
| v. | ) ) ) | Civil Action No. 05-2378 (JDB) |
| GEORGE W. BUSH, *et al.*, | ) ) ) | |
| Respondents. | ) ) | |

**RESPONDENTS' RESPONSE TO PETITIONER'S
SUPPLEMENTAL MEMORANDUM IN SUPPORT OF
NEW EMERGENCY MOTION FOR
<u>MEDICAL TREATMENT AND MEDICAL RECORDS</u>**

Pursuant to the Court's February 25, 2008 Order (dkt. no. 83), respondents hereby respond to the supplemental memorandum ("Petr's Supp.") (dkt. no. 87) filed on behalf of petitioner Abdul Hamid Abdul Salam Al-Ghizzawi in support of his emergency motion for medical treatment and access to medical records regarding petitioner (dkt. no. 78). As explained below, petitioner's supplemental submission, rather than supporting petitioner's request for relief, demonstrates that petitioner continues to receive thorough, responsible, and attentive medical care that undercuts petitioner's claim for relief. The facts presented in the supplemental declaration of Dr. Meneley, submitted as Exhibit C herewith ("Supp. Meneley Decl."), likewise attest to the responsible care being offered petitioner. Accordingly, and because the Court lacks jurisdiction not only over this case, but also over the type of relief requested by petitioner, petitioner's latest emergency motion should be denied.

**ARGUMENT**

As explained in respondents' opposition to petitioner's motion, petitioner bears the burden of demonstrating his entitlement to preliminary injunctive relief, that is, he "must demonstrate 1) a substantial likelihood of success on the merits, 2) that [he] would suffer irreparable injury if the injunction is not granted, 3) that an injunction would not substantially injure other interested parties, and 4) that the public interest would be furthered by the injunction." *See Katz v. Georgetown Univ.*, 246 F.3d 685, 687-88 (D.C. Cir. 2001) (internal quotation and citation omitted). Petitioner's motion failed to make the required showing for injunctive relief.[1] Petitioner's supplemental memorandum likewise fails to demonstrate that petitioner is entitled to injunctive relief; it demonstrates neither that petitioner faces imminent irreparable harm nor that he is likely to succeed on the merits of his request for intervention by

---

[1] While the D.C. Circuit has held that a district court's jurisdiction over a *habeas* case brought by a Guantanamo detainee is to be considered in the context of analyzing the petitioner's likelihood of success on the merits for purposes of a motion to enjoin any transfer of the detainee from Guantanamo, and should not be used as a basis for denying such a motion, independent of the likelihood of success factor. *See Belbacha v. Bush*, No. 07-5258 (Mar. 14, 2008), slip op. at 7, 11. That holding, however, does not govern the present matter. The motion before this Court has to do with a detainee's ongoing medical care, and therefore cannot be characterized, within the bounds of the record in the case, as seeking jurisdiction-preserving relief, which is the feature of the relief sought in *Belbacha* that led the court to its conclusion in that case. *See id.*, slip op. at 4, 7, 11. *See also* Resps' Opp. to Petr's New Emerg. Motion for Medical Treatment (dkt. no. 81) at 8 n.5 (citing cases for proposition that conditions of confinement claims are beyond the "core" of *habeas* jurisdiction). However the issue is considered, that the Court lacks jurisdiction in this case, *see Boumediene v. Bush*, 476 F.3d 981 (D.C. Cir. 2007), *cert. granted*, 127 S. Ct. 3078 (June 29, 2007)), leads to the conclusion that petitioner is not entitled to relief, either as a threshold matter or because petitioner does not have a likelihood of success on the merits.

the Court into the medical care he is receiving from Guantanamo medical authorities.[2]  It also fails to demonstrate that the balance of harms weighs in his favor in this matter.

### *Petitioner Has Demonstrated Neither Irreparable Injury Nor Likelihood of Success.*

The record in this matter thoroughly undercuts petitioner's claim that Guantanamo medical authorities are subjecting petitioner to irreparable harm or are being "deliberately indifferent" to petitioner's medical needs, the minimum standard that petitioner must meet to show any likelihood of success on the merits of his request for injunctive relief (jurisdictional considerations aside).  As previously explained by respondents and recognized by this Court in this case, "deliberate indifference" is found only where officials are "knowingly and unreasonably disregarding an objectively intolerable risk of harm to the prisoners' health or safety."  *See* Resps' Opp. to Petr's New Emerg. Motion for Medical Treatment ("Resps' Opp.," dkt. no. 81) at 19 (citing *Al-Ghizzawi v. Bush*, 2006 WL 2844781 at *4 (D.D.C. Oct. 2, 2006) ("Oct. 2, 2006 Mem. Op. & Order") (dkt. no. 47)).  Mere allegations of "mistake or difference of opinion," or even "negligence," will not do, and courts are not to "sit as boards of review over the medical decisions of prison officials, and they will not second-guess the adequacy of a particular course of treatment."  Oct. 2, 2006 Mem. Op. & Order, 2006 WL 2844781 at *4 (citations omitted).  Furthermore, "a prisoner has no discrete right to outside or independent medical treatment."  *Id*. (citations omitted).

Petitioner's supplemental memorandum, for the most part, reiterates a number of often subjective complaints or symptoms that were raised in petitioner's motion.  What is most notable

---

[2] Petitioner's supplemental memorandum clarifies that the substantive relief he seeks, aside from production of medical records, is transfer out of Guantanamo to some other medical facility for treatment.  *See* Petr's Supp. at 2, 10.

about petitioner's supplemental filing, however, is the clarity with which it demonstrates that while Guantanamo medical personnel continue to offer diagnostic testing and treatment to petitioner, petitioner continues regularly to reject offered care. For his part, petitioner admits that Guantanamo medical personnel prescribed an antibiotic and another medicine for him, but that he is not taking the medicine because he thinks the water provided to assist in taking the medicine is too cold.[3] Petr's Supp. ¶ 5. Petitioner also admits that, at least as of the last day of counsel's visit with him, he was still refusing to consent not only to the recommended liver biopsy, but also to various blood tests that Guantanamo medical personnel wanted run on petitioner. *See id.* ¶ 15. Indeed, since February 8, 2008, petitioner has refused blood testing on four occasions and has also declined to permit an ultrasound of his liver. *See* Supp. Meneley Decl. ¶ 2. It even appears that medical authorities at Guantanamo sought to encourage petitioner's consent by writing down proposed tests for petitioner so that he could discuss the matter with his counsel during her February 26-27, 2008 visit with petitioner. *See* Petr's Supp. ¶ 15. Counsel states that she encouraged petitioner to agree to two of the tests that had also been suggested by Dr. Reichen. *See id.* It is not clear whether counsel encouraged petitioner to submit to the other tests. In any event, thereafter, on March 2, 2008, a Guantanamo physician met with petitioner for 45 minutes, during which time he counseled petitioner at length regarding the advisability of follow-up blood testing and ultrasound; petitioner nonetheless persisted in his

---

[3] Petitioner characterizes the medicine as having been prescribed to address petitioner's complained of diarrhea. Petr's Supp. ¶ 5. In fact, however, the medicines were related to the treatment of H. Pylori, which can cause digestive illnesses, though not diarrhea. *See* Supp. Meneley Decl. ¶ 6; Meneley Decl. ¶ 10.

refusal of such testing.[4]  *See* Supp. Meneley Decl. ¶ 2.  Thus, even petitioner's supplemental memorandum, rather than supporting an need for the requested Court intervention, demonstrates that Guantanamo continues to provide petitioner with attentive medical care, even if petitioner will not consent to the medical authorities' recommendations.[5]  And Dr. Meneley's supplemental declaration demonstrates all the more the responsible care being offered petitioner.

Indeed, as reflected Dr. Meneley's two declarations in this matter, the care petitioner is receiving or being offered by Guantanamo is anything but "deliberately indifferent."  Petitioner is receiving comprehensive testing and/or care (where petitioner accepts it) for his ailments, especially with respect to his liver-related issues.  This includes blood testing,[6] ultrasound, the offer of a liver biopsy, medical counseling, prescription eyeglasses,[7] ten medical visits related to gastrointestinal complaints, and treatment for H.Pylori, all within approximately the last year.[8]

---

[4] During his session with the physician, petitioner did not complain of the significant body pains related in petitioner's supplemental memorandum, *see* Petr's Supp. ¶ 11, nor did he exhibit the weakness or difficulty speaking or conversing reflected in the memorandum, *see id.* ¶ 2.  *See* Supp. Meneley Decl. ¶ 4.  Also, petitioner does not suffer from jaundice.  *Compare id.* with Petr's Supp. ¶ 3.

[5] Respondents have not undertaken to address every one of the numerous factual allegations made in petitioner's supplemental memorandum.  Respondents, however, do not concede the accuracy of any of the allegations that are not addressed in this Response.

[6] Petitioner has even received unnecessary HIV testing as part of his blood work (in addition to the HIV tests performed when he arrived at Guantanamo) in an attempt to reassure him that he in fact does not have AIDS.  *See* Supp. Meneley Decl. ¶ 7; Meneley Decl. ¶ 5.

[7] Petitioner returned the eyeglasses Guantanamo previously described in November 2007, and he is scheduled for another optometry visit, although he has told Guantanamo medical personnel that he does not want to see an optometrist.  Supp. Meneley Decl. ¶ 8.

[8] As noted above, petitioner is not cooperating with respect to the treatment of his H.Pylori.  *See* Supp. Meneley Decl. ¶ 6; Meneley Decl. ¶ 10.  Guantanamo is even willing to test petitioner for a gluten intolerance (gluten sensitive enteropathy or celiac disease), should he

*See* Resps' Opp. at 14-17 & Ex. B. The supplemental memoranda in this matter make the attentiveness and thoroughness of Guantanamo's medical care all the more manifest.

Thus, the facts do not support any finding that the Guantanamo staff has been deliberately indifferent to the health or well-being of petitioner. The record demonstrates that petitioner has been provided high-quality, comprehensive medical care, and the distortions and invective of petitioner's counsel to the contrary do not change the situation.[9]

In addition, neither of the submissions of petitioner's counsel relating to opinions of other physicians demonstrates any likelihood of success for petitioner under the "deliberate indifferent" standard. First, the description in petitioner's supplemental memorandum of a discussion his counsel asserts having in 2006 with a doctor working for the International Committee of the Red Cross ("ICRC") does nothing more than provide counsel's characterizations of conclusory assertions by that individual. That person's criticisms of the medical care provided petitioner, to the extent those criticisms are accurately described, are not specific in any way.

Second, the affidavit of Dr. Reichen submitted with petitioner's reply brief, while more specific in a number of respects, takes potshots at the medical care provided by Guantanamo that seem to reflect, at best, differences of opinion as to certain aspects of petitioner's care or issues that Guantanamo have already considered and addressed. For example, Dr. Reichen expresses

---

consent, in an effort to address his other digestive complaints. *See* Supp. Meneley Decl. ¶ 5.

[9] In this vein, petitioner's counsel attempts to question the "competence . . . [and] veracity" of the Joint Task Force Surgeons who have provided declarations in this case on the manifestly nonsensical basis that Dr. Meneley has provided information concerning developments, including tests performed and treatment offered petitioner, *after* the date of the last declaration provided by Dr. Sollock. *See* Petr's Reply in Support of New Emerg. Motion for Medical Treatment (dkt. no. 84) at 5-6, 8-9.

his qualified disagreement on the use of certain terminology, claiming that he uses term, "inactive Hepatitis B carrier," only with "great circumspection," *see* Petr's Reply, Ex. E ¶ 5.1 ("Reichen Reply Aff."), although he then uses the term elsewhere in his declaration, *see id.* ¶¶ 5.4, 5.5.  He also states that diagnosis of "pre-core mutant" (active) Hepatitis B can be made if certain blood test results exist and that a liver biopsy would not be helpful in that circumstance.  *See id.* ¶ 5.4.  As explained by Dr. Meneley, however, petitioner's blood test results do not confirm that petitioner has pre-core mutant Hepatitis B.  *See* Supp. Meneley Decl. ¶ 3.  Further, the recommendation for the liver biopsy to determine if petitioner has active liver disease was the result of consultation with a gastroenterology specialist at Guantanamo and is considered by Guantanamo as the most medically appropriate test that would allow it to make definitive treatment decisions concerning petitioner.  *See id.*  Dr. Reichen also speculates that petitioner's complaints of skin itching warrants testing for Hepatitis C, *see* Reichen Reply Aff. ¶ 9, but Guantanamo has already concluded that petitioner's blood test results do not suggest liver disease as a cause of the itching.[10]  *See* Supp. Meneley Decl. ¶ 5.  Dr. Reichen's attempts to criticize Guantanamo's care of petitioner, therefore, are not sufficient to demonstrate "deliberate indifference" by Guantanamo in petitioner's medical care.  As this Court has noted, courts are not to "sit as boards of review over the medical decisions of prison officials, and they will not second-guess the adequacy of a particular course of treatment."  Oct. 2, 2006 Mem. Op. & Order, 2006 WL 2844781 at *4 (citations omitted).

---

[10] Most of the remainder of Dr. Reichen's criticisms are either attempts again to impugn aspects of the government's declarations submitted in connection with the September-October 2006 briefing in response to petitioner's earlier motion – a motion the Court previously denied, *see* Oct. 2, 2006 Mem. Op. & Order, 2006 WL 2844781 at *4-*5 – or mere reflections of Dr. Reichen's biased disdain for Guantanamo authorities.  *See, e.g.*, Reichen Reply Aff. ¶¶ 5.6, 10.

Not only has petitioner failed to establish "deliberate indifference" by Guantanamo with respect to the medical care being provided him, which would preclude any injunctive relief whatsoever, he cannot show a likelihood of success with respect to the particular relief he now makes clear he seeks, *i.e.*, transfer to some medical facility other than Guantanamo, *see* Petr's Supp. at 2, 10. As the Court has explained in this case, "a prisoner has no discrete right to outside or independent medical treatment."[11] *See* Oct. 2, 2006 Mem. Op. & Order, 2006 WL 2844781 at *4 (citations omitted).

Furthermore, petitioner's attempt to ground his claim for relief in the Geneva Conventions, *see* Petr's Reply at 11-12; Petr's Supp. at 2-5, does not help him. Section 5(a) of the MCA provides that "no person may invoke the Geneva Conventions or any protocols thereto in any habeas corpus or other civil action or proceeding to which the United States, or a current or former officer . . . is a party as a source of rights" in any civil court proceeding. Thus, the MCA precludes petitioner's reliance on those Conventions as providing a basis for injunctive relief in this matter. *See Boumediene*, 476 F.3d at 988 n.5 (sections 5(a) and 7 of the MCA preclude *habeas* jurisdiction over Geneva Conventions claims).

***The Balance of Harms Warrants Denial of the Injunction.*** Finally, petitioner's supplemental memorandum does nothing to alter the balance of harms in this matter, which weighs decidedly in favor of denying petitioner's request for relief in light of the public interest in assuring that the military operations and medical care provided wartime detainees at Guantanamo are not interrupted and overly burdened by the unnecessary or contra-factual

---

[11] Similarly, petitioner has no legitimate legal basis for access to medical records, for the reasons explained in respondents' opposition to petitioner's motion. *See* Resps' Opp. at 20-21.

demands of detainees regarding the particulars of their care, including the potential cumulative impact of granting such demands. *See* Resps' Opp. at 22-23. Indeed, petitioner's supplemental memorandum makes clear that petitioner has been regularly unwilling to cooperate in the extensive care Guantanamo authorities seek to provide. It would not be in the public interest to permit a wartime detainee such as petitioner to leverage that lack of cooperation into a claim for Court intervention into the medical care provided detainees at Guantanamo.

Accordingly, petitioner has again failed to demonstrate his entitlement to preliminary injunctive relief regarding the medical care he is receiving at Guantanamo.

## CONCLUSION

For the reasons stated above, as well as in respondents' opposition to petitioner's motion, respondents respectfully request that petitioner's motion for emergency medical treatment and access to petitioner's medical records be denied in all respects.

Dated: March 14, 2008             Respectfully submitted,

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

DOUGLAS N. LETTER
Terrorism Litigation Counsel

[*signature block continued on next page*]

    */s/ Terry M. Henry*
JOSEPH H. HUNT (D.C. Bar No. 431134)
VINCENT M. GARVEY (D.C. Bar No. 127191)
JUDRY L. SUBAR (D.C. Bar 347518)
TERRY M. HENRY
JAMES J. SCHWARTZ
JEAN LIN
ROBERT J. KATERBERG
ANDREW I. WARDEN
NICHOLAS A. OLDHAM
JAMES C. LUH
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W.
Washington, DC  20530
Tel:  (202) 514-4107
Fax:  (202) 616-8470

Attorneys for Respondents