IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ABDUL HAMID AL-GHIZZAWI**        )<br>    Detainee,        )<br>    Guantanamo Bay Naval Station        )<br>    Guantanamo Bay, Cuba;        )<br>        )<br>*Petitioner*,        )<br>        )<br>        )<br>        )<br>*v.*        )<br>        )<br>**GEORGE W. BUSH**, *et al.*,        )<br>        )<br>*Respondents.*        )<br>        ) | Misc. No. 08-442<br><br>(05-cv-02378<br>   Judge John B. Bates) |

## STATUS REPORT

Now comes the Petitioner, Abdul Hamid Al-Ghizzawi, by his counsel. On July 17th 2008 Counsel returned from her latest visit with her two clients at Guantanamo. Al-Ghizzawi, an extremely ill prisoner, is in critical shape. Although his body somehow continues to function despite his untreated Hepatitis B and Tuburculosis it is clear that the mental strain of the extreme isolation and the injustice to which he has been subjected for the last nineteen months in Camp 6 has now taken its toll (see, esp., paras. 6-12, below):

1. Petitioner Al-Ghizzawi, has been held for more than 6 ½ years at Guantanamo despite the fact that he was initially (and unanimously) found *not* to be an enemy combatant in his *first* CSRT. After the "non enemy" finding of panel 23, and breaking the rules set up for CSRT's, a "do-over" CSRT was promptly ordered by the Pentagon

and, as explained in a contemporaneous government email, an inculplery search was ordered to find reasons to continue to hold Al-Ghizzawi (and approximately 20 other men, mostly Uighers, who were also found to be "non-enemies"). As the email explained:

> This does not justify making a change in and or (sic) itself but is a filter by which to look …..By properly classifying them as EC, then there is an opportunity to (1) further exploit them here in [G] TMO and (2) when they are transferred to a third country, it will be controlled transfer in status.

A second, more compliant panel was convened (panel 32) a few weeks later and after reviewing the same evidence as panel 23 the new panel heeded the call of the email and found Al-Ghizzawi to be an enemy combatant so that they could "further exploit" him at Guantanamo.

2.   Al-Ghizzawi's case also brings forth the extraordinary additional fact that a member of his first CSRT panel, the panel that found Al-Ghizzawi to *not* be an enemy combatant included panel member Lt. Col. Stephan Abraham. Lt. Col. Abraham provided an affidavit to the Supreme Court in June 2007 in that Petitioner's successful Motion to Reconsider the denial of Certiorari in *Boumediene v. Bush,*---- S.Ct.---,, 2007 WL 1854132, 75 USLW 3705, 75 USLW 3707 (U.S. Jun 29, 2007) (NO. 06-1195). In his affidavit Lt. Col. Abraham described not only the failed CSRT process and the pressure put on the CSRT panels to find the prisoners "enemy combatants" but he also described in detail the only panel that he sat on (panel 23) and the paucity of evidence against that detainee, Al-

Ghizzawi, petitioner herein.

3.   Al-Ghizzawi, an innocent civilian who has never been an enemy of the United States, was also one of the prisoners who desperately wanted legal assistance because he believed that once an American court of justice saw the circumstances under which he was kidnapped and turned over to the American forces solely for bounty, he would be promptly returned to his wife and now seven year old daughter.  After the Supreme Court held that the prisoners were entitled to attorneys it took more than one year for Al-Ghizzawi to obtain an attorney.

4.   In the beginning Al-Ghizzawi was actively engaged in the legal process and had been a great help to his counsel. However, in December 2006 Al-Ghizzawi was moved to the solitary confinement of Camp 6. As a result of being placed in camp 6 Al-Ghizzawi's physical and mental deterioration has been acute.

5.   Due to the physical and mental deterioration of Al-Ghizzawi it has become difficult for Al-Ghizzawi to continue to help his attorney in a meaningful way because the harsh conditions make it difficult for him to concentrate on his legal efforts, or much else. However, it is imperative that counsel and Al-Ghizzawi work together to properly challenge his detention so that the courts can properly adjudicate his claims.

6.   During counsel's visit on July 15th 2008 Al-Ghizzawi told counsel that in the last few weeks he began having breathing problems, that he suffers from shortness of breath, that his throat closes up and he cannot breathe properly.  Whether these are "panic attacks" caused by the extreme isolation these nineteen months or, as advised by a

physician counsel has consulted, possibly symptoms consistent with "end-stage" liver disease, i.e., a likely terminal condition. Either way, Al-Ghizzawi needs help now. As set forth herein, applications to the District Court (Judge Bates) have been made, and denied, which are now the subject of appeal, for *inter alia*, immediate medical treatment and release of medical records. The United States Supreme Court has held that further delay in these proceedings can no longer be countenanced and surely the death of Al-Ghizzawi would be the ultimate delay of his habeas petition.

7.  Al-Ghizzawi, this mild mannered man whose "crime" was to be an Arab in Afghanistan when the U.S. offered substantial bounties without asking questions and without verifying the identity of men turned over, has now been put in a position of being forced to yell and pound on his windowless solitary confinement door to plead the military to open the little hatch in his cell door to allow some air (from the hallway not the outdoors) into his tiny cell. A plea that, by the way, has not been ignored but instead callously denied. Finally, out of desperation this past weekend, Al-Ghizzawi told counsel that he took his skin medicine (it wasn't helping his severe itching anyway) put it in his drinking water and threatened to drink the tainted liquid if he was not given some kind of medical care for his new breathing problem and his other severe health problems.

8.  Al-Ghizzawi told counsel that he does not want to die, that he wants to live and that he desperately wants to see his wife and young daughter again, but he knows the likelihood of surviving this cruelty becomes less likely as he sits in solitary confinement

and his illnesses progress, untreated.

9.  In response to his desperate attempt to get medical help this past week Al-Ghizzawi was sent to see a psychologist and after convincing the psychologist that he really wants to live Al-Ghizzawi is now being *punished* for his conduct in trying to draw attention to his health problems. The punishment makes the already unconscienable conditions of Camp 6 even more dire.

10. Counsel understands that the IG office of the Department of Defense is doing an investigation of the serious issues of medical neglect, incompetence and malfeasance at Guantanamo but unfortunately this investigation, which is just now underway, will be too late to help Al-Ghizzawi.

11. If there is to be any hope that Al-Ghizzawi will not die or be irremediably incapacitated as a result of the deliberate and cruel medical neglect at the hands of the United States military relief must be afforded to him now.

12. Counsel brings to this Court's attention, the U.S. Supreme Court ruling which affirmed this nation's continuing obligations under the Geneva Conventions in *Hamdan v. Rumsfeld* _ U.S. _, 126 S. Ct. 2749 (2006). Those same Conventions *require* the humane treatment of prisoners. Al-Ghizzawi has sat in the boredom and tedium of unconscionable solitary confinement for more than nineteen months. He is in a windowless cell and his access to fresh air and natural lighting is limited to those times when he is placed in a cage set out on gravel in the blistering heat of Cuba for approximately 2 hours during a 24 hour period (sometimes this *recreational time* is

provided in the middle of the night). At their meeting on July 15th 2008 Al-Ghizzawi reported to his counsel that he has only been outside a handful of times since February of this year because the military now requires the men being held in solitary confinement to pass through a new xray machine everytime they go in and out of the buidling and that he is afraid of the danger the radiation might pose to his already frail health. Al-Ghizzawi has not spoken to his wife or heard the voice of his young daughter for more than six and a half years. He can no longer read or write because of the deterioration of his eye sight. He has no one to talk to unless he crawls on the floor and shouts to another prisoner through a slot on the floor where the food is pushed in. With no one to talk to but himself this man, who was once actively engaged with counsel and grateful for the hope that his legal representation afforded him, now spends his days talking to himself and washing and rewashing his clothes in his toilet bowl. There is nothing even remotely humane about this treatment.

13. If Al-Ghizzawi is to provide meaningful assistance to his counsel and, quite literally, to survive (mentally and physically) to have his petition heard by this Court, he must be moved out of Camp 6 with all dispatch.

14. Counsel has received the factual return for Al-Ghizzawi and would like to have a habeas hearing for Al-Ghizzawi promptly. There are no docket 'clean-up' or identity issue presented in this case. Al-Ghizzawi has a DTA petition pending in the Court of Appeals and two appeals related to his medical condition. Counsel recently filed for an emergency injunction in the Court of Appeals regarding Al-Ghizzawi's frail medical

condition.

15. Al-Ghizzawi is a Libyan citizen who is married to an Afghani woman and, as mentioned above, has a seven year old daughter in Afghanistan whom he has not seen since she was a few months old. On July 16th, 2008 Al-Ghizzawi's counsel notified the government attorneys, pursuant to J. Hogan's Order regarding 30 day notices, that Al-Ghizzawi's counsel should be given 30 days notice of any proposed transfer. Two men (one of whom was also gravely ill) have thus far already been returned to Libya and have never been heard from again. Al-Ghizzawi is more than justifiably afraid of what might happen to him if he is returned to Libya, a country he fled many years before he was turned over to the Americans for a bounty and then arbitrarily held at Guantanamo.

Dated this 18th day of July, 2008.

                  Respectfully submitted,

                                /s/ H. Candace Gorman
                              Atttorney for Petitioner

CERTIFICATE OF SERVICE

I hereby certify that on July 18, 2008 I caused the foregoing Status Report of Petitioner Abdul Hamid Al-Ghizzawi to be filed on the ECF system, for delivery to the below-listed counsel of record in the above-captioned matter:

Andrew I. Warden
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue NW
Washington, D.C. 20530

Terry Marcus Henry
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue NW
Washington, D.C. 20530

        Respectfully submitted,


        /s/ H. Candace Gorman

        H. Candace Gorman (IL Bar #6184278)
        Law Office of H. Candace Gorman
        220 S. Halsted – Suite 200
        Chicago, IL 60661
        Tel: (312) 427-2313
        Fax: (312) 427-9552